## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| A'GACI, L.L.C.,[1] | ) | Case No.: 19-51919 |
|  | ) |  |
| *Debtor*. | ) |  |
|  | ) |  |

## DEBTOR'S MOTION SEEKING ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) GRANTING RELATED RELIEF, AND (VII) SCHEDULING A FINAL HEARING

**THIS MOTION SEEKS ENTRY OF AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE. A HEARING WILL BE HELD ON THIS MATTER FOR AUGUST [__], 2019, AT _:00 _M (CT) BEFORE THE HONORABLE RONALD B. KING, 615 E. HOUSTON STREET, ROOM 383, SAN ANTONIO, TEXAS 78205. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The last four digits of the Debtor's federal tax identification number are 9604.

9371931

The above-captioned debtor and debtor in possession (the "Debtor")[2] respectfully submit this motion for the relief set forth herein. In support of this Motion, the Debtor submits the *Declaration of Tom Lynch in Support of Debtor's Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Authorizing the Debtor to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Lynch Declaration"), filed contemporaneously herewith and the First Day Declaration. In further support of this motion, the Debtor respectfully states the following:

## Preliminary Statement

1. The Debtor has an immediate need to access incremental liquidity in the form of postpetition financing to preserve the value of the Debtor's estates and maximize recoveries for stakeholders. Accordingly, the Debtor seeks approval of a $10 million senior secured asset-based loan provided by the Prepetition Lenders (as defined herein). Because the DIP Facility (as defined herein) is being provided by the Prepetition Lenders, the Debtor is avoiding a potentially value-destructive priming fight with a third-party lender.

2. If approved, the Debtor will use the proceeds of the DIP Facility to, among other things: (a) fund the administration of the Debtor's chapter 11 case; (b) fund the Debtor's store closing sales; and (c) repay amounts outstanding under the Debtor's Prepetition Facility.

---

[2] A detailed description of the Debtor and its business, and the facts and circumstances supporting the Debtor's chapter 11 case, are set forth in greater detail in the *Declaration of Tom Lynch, Chief Restructuring Officer of A'GACI, L.L.C.., in Support of Debtor's Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtor's voluntary petition for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on August 7, 2019 (the "Petition Date"). Capitalized terms used, but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration or Interim Order (as defined herein), as applicable.

9371931

Obtaining an immediate injection of cash is critical to the Debtor's ability to fund the store closing sales. Without the liquidity provided by the DIP Facility and access to the Prepetition Secured Creditors' Cash Collateral (as each term is defined herein), the Debtor will be unable to effectuate the store closing sales, preventing the Debtor from maximizing the value of its estate for all stakeholders.

3. For these reasons, and for the reasons set forth below and in the Lynch Declaration and the First Day Declaration, the Debtor firmly believes that incurrence of the DIP Facility will maximize value for the Debtor's stakeholders and is in the exercise of the Debtor's sound business judgment. Accordingly, the Debtor respectfully requests that the Court approve the entry of the Interim Order and the Final Order.

### Relief Requested

4. The Debtor seeks entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order," and, together with the Interim Order, the "DIP Orders"):[3]

   a. authorizing the Debtor to obtain senior secured, superpriority postpetition financing (the "DIP Facility," consisting of a senior secured superpriority revolving credit facility in an aggregate principal amount of $10,000,000) pursuant to the terms and conditions of that certain *Debtor-In-Possession Credit Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the Debtor and Second Avenue Capital Partners, LLC, as Administrative Agent and Collateral Agent (in such capacity, the "DIP Agent") and as a lender under the DIP Facility (in such capacity, the "DIP Lenders"), substantially in the form of **Exhibit B**, attached hereto;[4]

---

[3]  The Debtor will file the form of Final Order prior to the Final Hearing (as defined herein).

[4]  Upon entry of the Final Order, any remaining unpaid Prepetition Obligations (as defined herein) and all accrued and unpaid interest thereon and fees and expenses shall "roll up" and become obligations under the DIP Facility and shall constitute DIP Obligations (as defined herein).

9371931

b.    authorizing the Debtor to execute and deliver the DIP Credit Agreement and any other agreements, instruments, pledge agreements, guarantees, control agreements and other Loan Documents (as defined in the DIP Credit Agreement) and documents related thereto (including, without limitation, any security agreements, intellectual property security agreements, control agreements, or notes) (as amended, restated, supplemented, waived, and/or modified from time to time, and collectively, with the DIP Credit Agreement, the "DIP Loan Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

c.    granting to the DIP Agent, for the benefit of itself and the DIP Lenders and other "Secured Parties" (as defined in the DIP Credit Agreement) on account of the DIP Facility and all obligations owing thereunder and under, or secured by, the DIP Loan Documents (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "DIP Obligations") allowed superpriority administrative expense claim status in the Case and any Successor Cases (as defined herein), which superpriority administrative expense claims shall be subject to the priorities as set forth herein;

d.    granting to the DIP Agent, for its benefit and the benefit of the DIP Lenders and each other applicable Secured Party (as defined in the DIP Credit Agreement) under the applicable DIP Loan Documents, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including all property constituting "cash collateral" as defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), which liens shall be subject to the priorities set forth herein;

e.    authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents as such become earned, due and payable, including, letter of credit fees (including issuance and other related charges), commitment fees, success fees, audit fees, appraisal fees, valuation fees, liquidator fees, structuring fees, administrative agent's fees, unused facility fees, and the fees and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, all to the extent provided in, and in accordance with, the DIP Loan Documents;

f.    authorizing the Debtor to use the Prepetition Collateral, including the Cash Collateral of the Prepetition Secured Creditors under the Prepetition Credit Documents, and providing adequate protection to the Prepetition Secured Creditors as set forth herein for any diminution in value of their respective interests in the Prepetition Collateral, including Cash Collateral, resulting from the imposition of the automatic stay, the Debtor's use, sale, or lease of the Prepetition Collateral, including Cash Collateral, and the priming of their respective interests in the Prepetition Collateral, including Cash

9371931

Collateral, including by the Carve Out (collectively, and solely to the extent of such diminution in value, "Diminution in Value");

g.     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the Interim Order;

h.     scheduling a final hearing (the "Final Hearing") within thirty (30) days of the Petition Date to consider the relief requested in the DIP Motion on a final basis and approving the form of notice with respect to the Final Hearing; and

i.     granting related relief.

## Jurisdiction and Venue

5.     The United States Bankruptcy Court for the Western District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the United States District Court for the Western District of Texas's *Order of Reference of Bankruptcy Cases and Proceedings* dated October 4, 2013.  The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Western District of Texas (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, and 9014.

9371931

<u>**Concise Statements Pursuant to Bankruptcy Rule 4001(b)**</u>[5]

8.     The below chart contains a summary of the material terms of the proposed DIP

Facility, together with references to the applicable sections of the relevant source documents, as

required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B).

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| **Borrower**<br>Bankruptcy Rule 4001(c)(1)(B) | A'gaci, L.L.C.<br>*See* DIP Credit Agreement, Art. 1, Preamble. |
| **Guarantor**<br>Bankruptcy Rule 4001(c)(1)(B) | David Won, as Limited Recourse Guarantor.<br>*See* DIP Credit Agreement, Art. 1. |
| **DIP Financing Lenders**<br>Bankruptcy Rule 4001(c)(1)(B) | Second Avenue Capital Partners, LLC, as Agent and as a Lender.<br><br>*See* DIP Credit Agreement Preamble. |
| **Term**<br>Bankruptcy Rule 4001(b)(l)(B)(iii), 4001(c)(1)(B) | The earliest of: (a) August [ ], 2020; (b) if the Final Financing Order is not entered within twenty-five (25) calendar days after the Petition Date, immediately thereafter, (c) the effective date of a Chapter 11 plan of reorganization, (d) the closing of a sale of all or substantially all of the assets of the Loan Parties pursuant to Section 363 of the Bankruptcy Code and (e) the date upon which all or substantially all of the Loan Parties' working capital assets have been sold or otherwise disposed of, such that the Borrowing Base is equal to or less than twenty percent (20%) of the Revolving Credit Commitments (as in effect on the Closing Date).<br><br>*See* DIP Credit Agreement § Art. 1. |
| **Commitment**<br>Bankruptcy Rule 4001(c)(1)(B) | <u>Commitments</u>.  Aggregate Revolving Commitments of $10,000,000.<br><br>*See* DIP Credit Agreement § Art. 1. |
| **Conditions of Borrowing**<br>Bankruptcy Rule 4001(c)(1)(B) | <u>Conditions of Initial Revolving Credit Borrowing</u>.<br><br>The Agent's receipt (unless waived) of the following in form and substance satisfactory to the Agent:<br><br>fully executed counterparts of the DIP Credit Agreement;<br><br>a Note executed by each Borrower in favor of each Lender requesting a Note; |

---

[5]     The summaries contained in this motion are qualified in their entirety by the provisions of the documents referenced, including the DIP Credit Agreement and the Interim DIP Order. To the extent anything in this motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in this summary chart but not otherwise defined have the meanings ascribed to them in the DIP Loan Documents or the Interim DIP Order, as applicable.

9371931

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | such certificates of resolutions or other action, incumbency certificates and/or other certificates of Responsible Officers of each Loan Party and Limited Recourse Guarantor as the Agent may require evidencing (A) the authority of such party to enter into the DIP Credit Agreement and the other Loan Documents to which such party is a party or is to become a party, and (B) the identity, authority and capacity of each Responsible Officer thereof authorized to act as a Responsible Officer in connection with the DIP Credit Agreement and the other Loan Documents to which such party is a party or is to become a party; |
| | copies of each Loan Party's Organization Documents and such other documents and certifications as the Agent may reasonably require to evidence that each Loan Party is duly organized or formed, and that each Loan Party is validly existing, in good standing and qualified to engage in business in each jurisdiction where its ownership, lease or operation of properties or the conduct of its business requires such qualification, except to the extent that failure to so qualify in such jurisdiction could not reasonably be expected to have a Material Adverse Effect; |
| | a certificate signed by a Responsible Officer of the Borrower certifying (A) that the conditions specified in Sections 4.02(a) and 4.02(b) have been satisfied, (B) that, except with respect to the filing of the Chapter 11 Case and those matters resulting from the Events and Circumstances, there has been no event or circumstance since January 31, 2019 that has had or could be reasonably expected to have, either individually or in the aggregate, a Material Adverse Effect, and (C) either that (1) no consents, licenses or approvals are required in connection with the execution, delivery and performance by each Loan Party and the validity against each Loan Party of the Loan Documents to which it is a party, or (2) subject to the entry by the Bankruptcy Court of the Interim Financing Order (as the same may be amended, supplemented or otherwise modified by the Final Financing Order),that all such consents, licenses and approvals have been obtained and are in full force and effect; |
| | evidence that all insurance required to be maintained pursuant to the Loan Documents in favor of the Agent required under the Loan Documents have been obtained and are in effect; |
| | the Security Documents and certificates evidencing any stock being pledged thereunder, together with undated stock powers executed in blank, each duly executed by the applicable Loan Parties; |
| | the Validity and Liquidation Support Agreement, duly executed by the applicable parties thereto; |
| | the Perfection Certificate, duly executed by the Loan Parties; |
| | all other Loan Documents, each duly executed by the applicable Loan Parties and Limited Recourse Guarantors; |

7

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | results of searches or other evidence reasonably satisfactory to the Agent (in each case dated as of a date reasonably satisfactory to the Agent) indicating the absence of Liens on the assets of the Loan Parties, except for Permitted Encumbrances and Liens for which termination statements and releases, satisfactions and discharges of any mortgages, and releases or subordination agreements satisfactory to the Agent are being tendered concurrently with such extension of credit or other arrangements satisfactory to the Agent for the delivery of such termination statements and releases, satisfactions and discharges have been made; <br><br> (A) all documents and instruments, including Uniform Commercial Code financing statements, required by Law or reasonably requested by the Agent to be filed, registered or recorded to create or perfect the first priority Liens intended to be created under the Loan Documents and all such documents and instruments shall have been so filed, registered or recorded to the satisfaction of the Agent, (B) Credit Card Notifications and Blocked Account Agreements required pursuant to Section 6.13 of the DIP Credit Agreement, and (C) all Collateral Access Agreements as required by the Agent; and <br><br> such other assurances, certificates, documents, consents or opinions as the Agent or its counsel reasonably may require; <br><br> after giving effect to (i) the first funding of the Committed Revolving Loans, and (ii) any charges to the Loan Account made in connection with the establishment of the credit facility contemplated by the DIP Credit Agreement, Availability shall be not less than $900,000; <br><br> the Agent shall have received a Borrowing Base Certificate dated the Closing Date, relating to the week most recently ended prior to the Closing Date, and executed by a Responsible Officer of the Borrower; <br><br> the Agent shall be reasonably satisfied that any financial statements delivered to it fairly present the business and financial condition of the Loan Parties; <br><br> the Permitted Sale contemplated by the Consulting Agreement shall have commenced; <br><br> the Agent shall have received and be satisfied with the Borrower's Approved Budget and such other information (financial or otherwise) reasonably requested by the Agent; <br><br> the Agent shall be satisfied that each Loan Party maintains and is in compliance with a policy for the treatment, handling, and storage of customer information and personally identifiable information in accordance with applicable Laws, and shall have received a true, accurate, and complete copy of the current version of such policy; <br><br> there shall not be pending any litigation or other proceeding, the result of which, either individually or in the aggregate, could reasonably be expected to have a Material Adverse Effect or prevent or restrain the consummation of |

9371931

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | the Loan Documents and which is not stayed by the filing of the Chapter 11 Case; |
| | the consummation of the transactions contemplated by the Loan Documents shall not violate any applicable Law or any Organization Document; |
| | all fees and expenses required to be paid to the Agent on or before the Closing Date shall have been paid in full, and all fees and expenses required to be paid to the Lenders on or before the Closing Date shall have been paid in full; |
| | the Borrower shall have paid all fees, charges and disbursements of counsel to the Agent to the extent invoiced prior to or on the Closing Date, plus such additional amounts of such fees, charges and disbursements as shall constitute the Agent's reasonable estimate of such fees, charges and disbursements incurred or to be incurred by the Agent through the Closing Date (provided that such estimate shall not thereafter preclude a final settling of accounts between the Borrower and the Agent); |
| | the Agent and the Lenders shall have completed satisfactory background checks of the Loan Parties' owners, shareholders and management and shall have received all documentation and other information required by regulatory authorities under applicable "know your customer" and anti-money laundering rules and regulations, including without limitation the USA PATRIOT Act; |
| | (i) the Bankruptcy Court shall have entered the Interim Financing Order, the Cash Management Order and the Wage Order, (ii) none of such orders shall have been stayed, vacated or reversed (in whole or in part), and (iii) the Cash Management Order, the Interim Financing Order and the Wage Order shall not have been amended or modified other than with the consent of the Agent in its Permitted Discretion; |
| | the Loan Parties shall have filed with the Bankruptcy Court, which shall be in form and substance acceptable to the Agent, a motion under Section 363 of the Bankruptcy Code to approve the assumption of the Consulting Agreement; |
| | the Loan Parties shall have retained SierraConstellation Partners, LLC (or another qualified party reasonably acceptable to the Agent) to act as the financial advisor and filed with the Bankruptcy Court, in form and substance acceptable to the Agent, a motion under Section 363 of the Bankruptcy Code to approve such retainer; and |
| | the Agent and, as applicable, each Lender, shall have completed all required due diligence, including, but not limited to, a review of any requested documentation related to the Business of the Borrower, and in person meetings with the Borrower's management team and lead investors. |

9

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | Conditions Precedent to All Revolving Credit Borrowings. |
| | The representations and warranties of each other Loan Party contained in Article V of the DIP Credit Agreement or in any other Loan Document, or which are contained in any document furnished at any time under or in connection therewith, shall be true and correct in all respects on and as of the date of such Revolving Credit Borrowing, except to the extent that such representations and warranties specifically refer to an earlier date, in which case they shall be true and correct as of such earlier date; |
| | no Default or Event of Default shall exist, or would result from such proposed Revolving Credit Borrowing or from the application of the proceeds thereof; |
| | the Agent shall have received a Committed Loan Notice and a Borrowing Base Certificate in accordance with the requirements of the DIP Credit Agreement; |
| | no event or circumstance which could reasonably be expected to result in a Material Adverse Effect shall have occurred or would result from the Revolving Credit Borrowing, except for matters arising from the Events and Circumstances; |
| | no Overadvance shall result from such Revolving Credit Borrowing; |
| | neither the Interim Financing Order nor the Final Financing order, as applicable, shall have been (i) stayed, vacated or reversed (in whole or in part), or (iii) amended or modified other than with the consent of the Agent in its Permitted Discretion; and |
| | each Revolving Credit Borrowing shall be for purposes and in amounts consistent with the Approved Budget (subject to the Permitted Variance). |
| | *See* DIP Credit Agreement §§ 4.01, 4.02 |
| **Interest Rates** Bankruptcy Rule 4001(c)(1)(B) | Rates and Payment of Interest. |
| | Revolving Loans shall bear interest on the outstanding principal amount thereof at a rate per annum equal to LIBO Rate plus the Applicable Margin. "Applicable Margin" means ten and one-half percent (10.5%). |
| | If any amount payable under any Loan Document is not paid when due (without regard to any applicable grace periods), whether at stated maturity, by acceleration or otherwise, such amount shall thereafter bear interest at a fluctuating interest rate per annum at all times equal to the Default Rate to the fullest extent permitted by applicable Laws. If any other Event of Default exists, then the Agent may, and upon the request of the Required Lenders shall, notify the Borrower that all outstanding Obligations shall thereafter bear interest at a fluctuating interest rate per annum at all times equal to the Default Rate to the fullest extent permitted by applicable Laws. "Default |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | Rate" means an interest rate equal the interest rate otherwise applicable to such portion of the Obligations plus two percent (2.0%) per annum.<br><br>*See* DIP Credit Agreement §§ 1.01, 2.08 |
| **Use of DIP Financing Facility and Cash Collateral Bankruptcy Rule** 4001(b)(l)(B)(ii) | Use of Proceeds. Use the proceeds of the Revolving Credit Borrowings, to the extent permitted under applicable Law, the Approved Budget (subject to the Permitted Variance), and the Loan Documents, (a) on the Closing Date, for the payment of transaction expenses in connection with the DIP Credit Agreement, and (b) after the Closing Date, (i) to finance the payoff of the Pre-Petition Obligations in accordance with Section 2.05, (ii) to finance general corporate purposes of the Loan Parties and the acquisition of working capital assets of the Borrower, including capital expenditures and the purchase of inventory and equipment, in each case in accordance with the Approved Budget or as otherwise approved by the Lenders, and (iii) to fund the Professional Fee Escrow Account and to pay other fees, expenses, and costs incurred in connection with the Chapter 11 Case, as well as the payment of any adequate protection payments approved in the Financing Orders as approved by the Bankruptcy Court and the Agent.<br><br>*See* DIP Credit Agreement §6.11 |
| **Adequate Protection Bankruptcy Rules** 4001(b)(l)(B)(iv), 4001(c)(1)(B)(ii) | Adequate Protection Liens. The Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) is granted valid and perfected replacement and additional security interests in, and liens on all of the Debtor's right, title and interest in, to and under all DIP Collateral (the "Adequate Protection Liens"). The Adequate Protection Liens granted to the Prepetition Agent shall secure only the Prepetition Obligations (including, without limitation, the Surviving Obligations) to the extent of any diminution in value of the Prepetition Collateral due to, among other things, priming liens, the use of the Prepetition Collateral, borrowings under the DIP Facility, or the Carve Out. The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the Permitted Prior Liens, and (iii) the Carve Out.<br><br>Adequate Protection Superpriority Claim. The Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) is granted an allowed administrative claim against the Debtor's estate under sections 503 and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claim") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition Collateral. The Adequate Protection Superpriority Claim shall be junior to the Carve Out, the DIP Liens, the DIP Superpriority Claim, and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code. Upon entry of the Final Order, the Adequate Protection Superpriority Claims shall be payable from and have recourse to the Avoidance Actions. |

9371931

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | Prepetition Agent Adequate Protection Payments. The Debtor shall pay to the Prepetition Agent the amounts required under the Payoff Letter upon the entry of the Final Order and as otherwise set forth herein. The Prepetition Agent and the other Prepetition Secured Creditors shall receive (A) payment of the Prepetition Obligations from the proceeds of the DIP Collateral as set forth in paragraph 20 below and (B) payments in the amount of interest (which shall be payable at the default rate under the Prepetition Credit Agreement), fees, costs, expenses (including, without limitations, attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnities and other amounts with respect to the Prepetition Obligations when due in accordance with the Prepetition Credit Documents (collectively, the "Prepetition Agent Adequate Protection Payments"). <br><br> *See* Interim Order ¶¶ I, 13, 14. |
| **Fees** <br> Bankruptcy Rule 4001(c)(1)(B) | Closing Fee. On the Closing Date, the Borrower shall pay to the Agent, for the ratable benefit of Lenders holding the Revolving Commitments based on their Applicable Percentages, a closing fee of approximately $200,000, which shall be non-refundable and fully earned on the Closing Date. <br><br> Unused Line Fee. If the average daily unpaid balance of the sum of Total Revolver Outstandings (the "Usage Amount") for any month does not equal the Aggregate Revolving Commitments, then the Borrower shall pay to the Agent, for the ratable benefit of Lenders holding the Revolving Commitments based on their Applicable Percentages, an unused line fee at a rate equal to three quarters of one percent (0.75%) per annum on the amount by which the Aggregate Revolving Commitments exceeds such Usage Amount (the "Facility Fee"). Such Facility Fee shall be payable to the Agent in arrears on the first day of each month with respect to the previous month. <br><br> Administration Fee. The Borrower shall pay to the Agent, for the ratable benefit of Lenders holding the Revolving Commitments based on their Applicable Percentages, an administrative fee equal to $6,500 per month, payable in advance (i) on the Closing Date for the month of August, and (ii) on the first Business Day of each month thereafter through the Termination Date (the "Administration Fee"). The Administration Fee shall be deemed earned in full on the date when each such payment is due and payable under the DIP Credit Agreement and shall not be subject to rebate or proration upon termination of the DIP Credit Agreement for any reason. <br><br> *See* DIP Credit Agreement § 2.09. |
| **Budget** <br> Bankruptcy Rule 4001 (c)(1)(B) | Approved Budget. The thirteen (13) week budget prepared by the Borrower and furnished to the Agent on the Closing Date, as the same may or shall, as applicable, be updated, modified and/or supplemented thereafter from time to time as provided in Section 6.01(a), which the Borrower shall use its best efforts to prepare on a book basis (not incorporating any check "float") and shall include a weekly cash budget, including information on a cumulative basis by category (except with respect to professional fees and expenses, |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | which shall be on a line item basis) as to, among other things (w) projected credit card collections, inventory proceeds and furniture, fixtures and equipment proceeds, (x) projected disbursements (including ordinary course operating expenses, bankruptcy-related expenses (including professional fees and expenses), capital expenditures, asset sales and fees and expenses of the Agent and the Lenders (including counsel therefor) and any other fees and expenses relating to the Loan Documents), (y) projected inventory levels and inventory receipts, and (z) a calculation of the Borrowing Base, Total Revolver Outstandings, Pre-Petition Obligations and Availability, which budget and any update thereof shall be acceptable to the Agent in its Permitted Discretion.<br><br>The Approved Budget may be updated, modified or supplemented (with the written consent of the Agent and/or at the reasonable request of the Agent) from time to time, and each such updated, modified or supplemented budget shall be approved by, and in form and substance reasonably satisfactory to, the Agent and no such updated, modified or supplemented budget shall be effective until so approved and once so approved shall be deemed an Approved Budget; provided, that during the tenth (10th) week of the initial Approved Budget (and the tenth (10th) week of each successive Approved Budget thereafter), the Borrower shall submit a budget for the next successive thirteen week period to the Agent, which budget shall be in form and substance reasonably acceptable to the Agent, and approved by the Agent at least ten (10) Business Days prior to the expiration of such Approved Budget. Each Approved Budget delivered to the Agent shall be accompanied by such supporting documentation as requested by the Agent.<br><br>*See* DIP Credit Agreement §§ 1.01; 6.01. |
| **Variance Covenant**<br>Bankruptcy Rule 4001(c)(l)(B) | <u>Budget Compliance and Variance</u>. On or before Wednesday of each week, the Borrower shall deliver to the Agent an Approved Budget Variance Report; and on each Approved Budget and each Approved Budget Variance Report shall each be prepared in good faith on the basis of the assumptions stated therein, which assumptions were fair in light of the conditions existing at the time of delivery of such forecasts, and represented, at the time of such delivery, the Loan Parties' good faith estimate of its future financial performance.<br><br><u>Approved Budget Variance Report</u>. A weekly report in form and substance acceptable to the Agent in its Permitted Discretion provided by the Borrower to the Agent in accordance with <u>Section 6.01(c)</u>: (i) showing on a cumulative and weekly basis by category (or line item, as applicable) actual receipts for both inventory and credit card collections and furniture, fixtures and equipment proceeds, actual disbursement amounts, cash on hand, calculation of the Borrowing Base, Total Revolver Outstandings, Pre-Petition Obligations and Availability as of Saturday of each week on a cumulative and weekly basis, noting therein all variances, on a cumulative or line item basis, as applicable, from amounts set forth for such period in the Approved Budget, and shall include explanations for all material variances, and |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | (ii) certified by a Responsible Officer of the Borrower.<br><br>*See* DIP Credit Agreement §§ 1.01; 6.01. |
| **Events of Default**<br>Bankruptcy Rule<br>4001(c)(l)(B) | Events of Default.  Any of the following shall constitute an Event of Default:<br><br>Non-Payment.   The Borrower or any other Loan Party or any Limited Recourse Guarantor fails to pay when and as required to be paid under the DIP Credit Agreement, (i) any amount of principal of any Committed Revolving Loan, or (ii) any interest on any Committed Revolving Loan, or any fee due under the DIP Credit Agreement, or (iii) any other amount payable under the DIP Credit Agreement or under any other Loan Document or the Financing Orders.<br><br>Specific Covenants.  (i) Any Loan Party fails to perform or observe any term, covenant or agreement contained in any of Section 6.01, 6.02, 6.03, 6.05, 6.07, 6.10, 6.11, 6.12, 6.13, 6.14, 6.19, 6.20, 6.21, 6.22, 6.23, 6.24, 6.25, 6.26, 6.27, 6.28, 6.29, 6.30, 6.31 or Article VII; or (ii) any Guarantor or Limited Recourse Guarantor fails to perform or observe any payment or other material term, covenant or agreement contained in the Facility Guaranty; or (iii) any of the Loan Parties fails to perform or observe any term, covenant or agreement contained in the Security Documents to which it is a party.<br><br>Other Defaults.  Any Loan Party or Limited Recourse Guarantor fails to perform or observe any other covenant or agreement (not specified in subsection (a) or (b) above) contained in any Loan Document on its part to be performed or observed and such failure continues for fifteen (15) days.<br><br>Representations and Warranties.  Any representation, warranty, certification or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party or any Limited Recourse Guarantor in the DIP Credit Agreement, in any other Loan Document, or in any document delivered in connection therewith (including, without limitation, any Borrowing Base Certificate) shall be incorrect or misleading in any material respect when made or deemed made.<br><br>Cross-Default.  Any Loan Party or any Subsidiary thereof (A) fails to make any payment when due (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any Post-Petition or unstayed Material Indebtedness (including undrawn committed or available amounts and including amounts owing to all creditors under any combined or syndicated credit arrangement), or (B) fails to observe or perform any other agreement or condition relating to any such Post-Petition or unstayed Material Indebtedness or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event occurs, the effect of which default or other event is to cause, or to permit the holder or holders of such Post-Petition or unstayed Material Indebtedness or the beneficiary or beneficiaries of any Guarantee thereof (or a trustee or agent on behalf of such holder or holders or beneficiary or beneficiaries) to cause, with the giving of notice if required, and the passage of any applicable cure |

9371931

| Bankruptcy Code | Summary of Material Terms |
|---|---|
|  | period, such Indebtedness to be demanded or to become due or to be repurchased, prepaid, defeased or redeemed (automatically or otherwise), or an offer to repurchase, prepay, defease or redeem such Indebtedness to be made, prior to its stated maturity, or such Guarantee to become payable or cash collateral in respect thereof to be demanded; or (C) there exists a default or an event of default under any material contract.<br><br>Maturity Date.  The Maturity Date occurs.<br><br>Judgments.    There is entered against any Loan Party or any Subsidiary thereof (i) one or more judgments or orders for the payment of money in an aggregate amount (as to all such judgments and orders) exceeding $200,000 (to the extent not covered by independent third-party insurance as to which the insurer is rated at least "A" by A.M. Best Company, has been notified of the potential claim and does not dispute coverage), or (ii) any one or more non-monetary judgments that have, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect and, in either case, (A) enforcement proceedings are commenced by any creditor upon such judgment or order, or (B) there is a period of ten (10) consecutive days during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, is not in effect.<br><br>ERISA.    (i) An ERISA Event occurs with respect to a Pension Plan or Multiemployer Plan which has resulted or could reasonably be expected to result in liability of any Loan Party or any ERISA Affiliate under Title IV of ERISA to the Pension Plan, Multiemployer Plan or the PBGC in an aggregate amount in excess of $100,000 or which would reasonably likely result in a Material Adverse Effect, or (ii) a Loan Party or any ERISA Affiliate fails to pay when due, after the expiration of any applicable grace period, any installment payment with respect to its withdrawal liability under Section 4201 of ERISA under a Multiemployer Plan in an aggregate amount in excess of $100,000 or which would reasonably likely result in a Material Adverse Effect.<br><br>Invalidity of Loan Documents.  (i)  Any provision of any Loan Document, at any time after its execution and delivery and for any reason other than as expressly permitted pursuant to the Loan Documents or satisfaction in full of all of the Obligations and the Pre-Petition Obligations, ceases to be in full force and effect; or any Loan Party, Limited Recourse Guarantor or any other Person contests in any manner the validity or enforceability of any provision of any Loan Document; or any Loan Party or Limited Recourse Guarantor denies that it has any or further liability or obligation under any provision of any Loan Document, or purports to revoke, terminate or rescind any provision of any Loan Document or seeks to avoid, limit or otherwise adversely affect any Lien purported to be created under any Security Document; or (ii) any Lien purported to be created under any Security Document shall cease to be, or shall be asserted by any Loan Party or any other Person not to be, a valid and perfected Lien on any Collateral, with the priority required by the applicable Security Document. |

9371931

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | Change of Collateral.  There occurs any Change of Control. |
| | Loss of Collateral.  There occurs any uninsured loss to any material portion of the Collateral. |
| | Breach of Consulting Agreement.  The Loan Parties breach any of the material terms or conditions of the Consulting Agreement or cease conducting the Permitted Sale contemplated thereunder in accordance therewith or file a motion with the Bankruptcy Court to reject, or otherwise seek authority not to perform under, the Consulting Agreement, in all cases, without the prior written consent of the Agent. |
| | Indictment.  The indictment of any legal proceeding against any Loan Party or any Subsidiary thereof, under any federal or state criminal statute, which indictment is not vacated within 60 days; or |
| | Guaranty.  The termination or attempted termination of any Facility Guaranty except as expressly permitted under any Loan Document; or |
| | Subordination.  (i)  The subordination provisions of any Subordination Agreement or other documents evidencing or governing any Subordinated Indebtedness (the "Subordination Provisions") shall, in whole or in part, terminate, cease to be effective or cease to be legally valid, binding and enforceable against any holder of the applicable Subordinated Indebtedness; or (ii) the Borrower or any other Loan Party shall, directly or indirectly, disavow or contest in any manner (A) the effectiveness, validity or enforceability of any of the Subordination Provisions, (B) that the Subordination Provisions exist for the benefit of the Credit Parties, or (C) that all payments of principal of or premium and interest on the applicable Subordinated Indebtedness, or realized from the liquidation of any property of any Loan Party, shall be subject to any of the Subordination Provisions. |
| | Chapter 11 Case.  The occurrence of any of the following in the Chapter 11 Case: |
| | the Borrower, without the Agent's prior written consent, files a motion with the Bankruptcy Court seeking the authority to liquidate all or substantially all of the Borrower's assets or capital stock unless the transactions that are the subject of the motion will result in payment in full in cash of the Pre-Petition Obligations and the Obligations on the closing of such sale; |
| | other than in connection with the payment in full or refinancing of the Pre-Petition Obligations and the Obligations, the bringing or supporting of a motion, taking of any action or the filing of any plan or disclosure statement attendant thereto by or on behalf of any Loan Party in the Chapter 11 Case: (A) to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code not otherwise permitted pursuant to the DIP Credit Agreement; (B) to grant any Lien other than Permitted Encumbrances upon or affecting any Collateral; (C) except as provided in the Interim Financing Order or Final Financing Order, as the case may be, to use cash collateral |

16

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | under Section 363(c) of the Bankruptcy Code without the prior written consent of the Agent; (D) that seeks to prohibit Agent or Lenders from credit bidding on any or all of the Loan Parties' assets during the pendency of the Chapter 11 Case; or (E) any other action or actions adverse to the interest of the Agent or the Lenders in their capacities as such or their rights and remedies under the DIP Credit Agreement or its interest in the Collateral; |
| | (A) other than in connection with the payment in full or refinancing of the Pre-Petition Obligations and the Obligations on the effective date of such plan, the filing of any plan of reorganization or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, by any Loan Party or any other Person to which the Agent does not consent or otherwise agree to treatment of the respective claims of the Agent and the Lenders, (B) the entry of any order terminating the Loan Parties' exclusive right to file a plan of reorganization without the consent of the Agent, or (C) the expiration of the Loan Parties' exclusive right to file a plan of reorganization without the consent of the Agent; |
| | the entry of an order in the Chapter 11 Case confirming a plan that (A) is not acceptable to the Agent in its Permitted Discretion (it being agreed that a plan that satisfies the Obligations and the Pre-Petition Obligations (if any) in full in cash on the effective date thereof is acceptable to the Agent) or (B) does not contain a provision for termination of the Revolving Commitments and repayment in full in cash of all of the Pre-Petition Obligations and the Obligations under the DIP Credit Agreement on or before the effective date of such plan or plans; |
| | the entry of an order reversing, amending, supplementing, staying, vacating or otherwise modifying the Loan Documents, the Pre-Petition Credit Agreement or the Interim Financing Order, the Final Financing Order, the order approving the Consulting Motion or the Cash Management Order without the written consent of the Agent or the filing of a motion for reconsideration with respect to the Interim Financing Order or the Final Financing Order or the Interim Financing Order, the Final Financing Order, order approving the Consulting Motion or the Cash Management Order are otherwise not in full force and effect, in each case, without the consent of the Agent; |
| | the Final Financing Order is not entered prior to the expiration of the Interim Financing Order, and in any event within twenty-five (25) days after the Petition Date; |
| | except as set forth in any motions which have been delivered to and are acceptable to the Agent and as contemplated by the Approved Budget (subject to the Permitted Variance), the payment of, or application for authority to pay, any Pre-Petition Indebtedness or Pre-Petition claim without the Agent's prior written consent; |
| | the allowance of any claim or claims under Section 506(c) of the Bankruptcy Code or otherwise against the Agent, any other Credit Party or any of the |

9371931

| Bankruptcy Code | Summary of Material Terms |
| --- | --- |
| | Collateral; |
| | the filing of a motion by a Loan Party or any of their respective Affiliates for, or the entry of an order directing, the appointment of an interim or permanent trustee in the Chapter 11 Case or the appointment of a receiver or an examiner in the Chapter 11 Case with expanded powers to operate or manage the financial affairs, the business, or reorganization of the Loan Parties; or, the sale without the Agent's consent, of all or substantially all of the Loan Parties' assets either through a sale under Section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Chapter 11 Case, or otherwise that does not provide for payment in full in cash of the Pre-Petition Obligations and the Obligations and termination of the Commitments on the effective date of such plan or the closing of such sale; |
| | the dismissal of the Chapter 11 Case, or the conversion of the Chapter 11 Case from Chapter 11 to Chapter 7 of the Bankruptcy Code, or any Loan Party files a motion or other pleading seeking the dismissal of the Chapter 11 Case under Section 1112 of the Bankruptcy Code or otherwise; |
| | the entry of an order by the Bankruptcy Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (1) to allow any creditor to execute upon or enforce a Lien on any Collateral having a value of $50,000 (or $100,000 in the aggregate) or more, or (2) with respect to any Lien or the granting of any Lien on any Collateral to any state or local environmental or regulatory agency or authority; |
| | the commencement of a suit or action against the Agent, any Lender or any other Credit Party (both under the DIP Credit Agreement and as such terms are defined in the Pre-Petition Credit Agreement) by or on behalf of any Loan Party, its bankruptcy estates, any of their Affiliates, or any statutory committee; |
| | the entry of an order in the Chapter 11 Case avoiding or permitting recovery of any portion of the payments made on account of the Indebtedness owing under the DIP Credit Agreement or the other Loan Documents or the Pre-Petition Credit Agreement; |
| | the failure of any Loan Party to perform any of its obligations under the Interim Financing Order, the Final Financing Order or the Cash Management Order or any of its material obligations under the any other order of the Bankruptcy Court; |
| | the failure of the Bankruptcy Court to, within sixty (60) days after the Petition Date (or such later date to which the Agent may otherwise agree), grant an order extending the time period of the Loan Parties to assume or reject unexpired leases of real property to a date that is 210 days from the Petition Date; or |
| | the entry of an order in the Chapter 11 Case granting any other super-priority administrative claim or Lien equal or superior to that granted to the Agent, |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | the Lenders and Pre-Petition Agent except as set forth in the Financing Orders.<br><br>*See* DIP Credit Agreement § 8.01. |
| **Indemnification**<br>Bankruptcy Rule<br>4001(c)(1)(B)(ix) | <u>Indemnification of Agent</u>. Without limiting the obligations of the Loan Parties under the DIP Credit Agreement, the Lenders agree to indemnify the Agent and any of its Related Parties, as the case may be, ratably according to their Applicable Percentages, from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever that may be imposed on, incurred by, or asserted against the Agent and its Related Parties in any way relating to or arising out of the DIP Credit Agreement or any other Loan Document or any action taken or omitted to be taken by the Agent and any of its Related Parties in connection therewith; provided, that no Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the Agent's or its Related Parties' gross negligence or willful misconduct as determined by a final and nonappealable judgment of a court of competent jurisdiction.<br><br>*See* DIP Credit Agreement § 9.14.<br><br><u>Indemnification by the Loan Parties</u>. The Loan Parties shall indemnify the Agent (and any sub-agent thereof), each other Credit Party, and each Related Party of any of the foregoing Persons (each such Person being called an "<u>Indemnitee</u>") against, and hold each Indemnitee harmless from, any and all losses, claims, causes of action, damages, liabilities, settlement payments, costs, and related expenses (including the fees, charges and disbursements of any counsel for any Indemnitee), incurred by any Indemnitee or asserted against any Indemnitee by any third party or by any Borrower or any other Loan Party arising out of, in connection with, or as a result of (i) the execution or delivery of the DIP Credit Agreement, any other Loan Document or any agreement or instrument contemplated thereby, the performance by the parties hereto of their respective obligations under the DIP Credit Agreement or any other Loan Document or the consummation of the transactions contemplated thereby, or, in the case of the Agent (and any sub-agents thereof) and their Related Parties only, the administration of the DIP Credit Agreement and the other Loan Documents, (ii) any Revolving Loan or the use or proposed use of the proceeds therefrom, (iii) any actual or alleged presence or release of Hazardous Materials on or from any property owned or operated by any Loan Party or any of its Subsidiaries, or any Environmental Liability related in any way to any Loan Party or any of its Subsidiaries, (iv) any claims of, or amounts paid by any Credit Party to, a Blocked Account Bank or other Person which has entered into a control agreement with any Credit Party under the DIP Credit Agreement, or (v) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory, whether brought by a third party or by any Borrower or any other Loan Party or any of the Loan Parties' directors, shareholders or creditors, and regardless |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | of whether any Indemnitee is a party thereto, in all cases, whether or not caused by or arising, in whole or in part, out of the comparative, contributory or sole negligence of the Indemnitee; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such losses, claims, damages, liabilities or related expenses (x) are determined by a court of competent jurisdiction by final and nonappealable judgment to have resulted from the gross negligence or willful misconduct of such Indemnitee, (y) result from a claim brought by any Borrower or any other Loan Party against an Indemnitee for breach in bad faith of such Indemnitee's obligations under the DIP Credit Agreement or under any other Loan Document, if such Borrower or Loan Party has obtained a final and nonappealable judgment in its favor on such claim as determined by a court of competent jurisdiction, or (z) any dispute between and among Indemnitees.<br><br>*See* DIP Credit Agreement § 10.04(b). |
| **Entities with Interests in Cash Collateral** Bankruptcy Rule 4001(b)(l)(B)(i) | The Prepetition Lenders<br><br>*See* Interim Order Preamble; ¶ E. |
| **Carve Out** Bankruptcy Rule 4001(c)(1)(B) | *See* Interim Order ¶ 33. |
| **Liens and Priorities** Bankruptcy Rule 4001(c)(l)(B)(i) | DIP Liens.  Effective immediately upon the entry of the Interim Order, pursuant to sections 361, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "DIP Liens") any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, including, without limitation, the following (the "DIP Collateral"): (a) all Accounts; (b) all Goods, including Equipment, Inventory and Fixtures; (c) all Documents, Instruments and Chattel Paper; (d) all Letters of Credit and Letter-of-Credit Rights; (e) all Securities Collateral; (f) all Investment Property; (g) all Intellectual Property Assets; (h) all Commercial Tort Claims; (i) all General Intangibles (including, without limitation, all Payment Intangibles); (j) all Deposit Accounts (including, without limitation, the Concentration Account); (k) all Supporting Obligations; (l) all money, cash or cash equivalents; (m) all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise; (n) all proceeds of leases of real property and all owned real property (but not the real property leases themselves); (o) all Prepetition Collateral; (p) all claims and causes of action and the proceeds thereof to avoid a transfer of property (or an interest in property) pursuant to Section 549 of the Bankruptcy Code; (q) effective upon the entry of the Final Order, all other claims and causes of action, and any proceeds thereof, to avoid a transfer of property (or an |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | interest in property) or an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "Avoidance Actions"); (r) to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor; (s) all books, records, and information relating to any of the foregoing and/or to the operation of the Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and (t) to the extent not otherwise included or specifically excluded, all other personal property of the Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing. The Prepetition Liens shall be deemed continuing liens for the benefit of the Prepetition Secured Creditors, the DIP Agent, and the DIP Lenders to secure the DIP Obligations, and any liens, claims, or interests subordinate to the Prepetition Liens as of the Petition Date shall likewise be deemed subordinate to the DIP Liens.<br><br>DIP Lien Priority. The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority, and superior to any security, mortgage, collateral interest, lien, or claim to any of the DIP Collateral, except that the DIP Liens shall be subject and subordinate to the Carve Out as set forth in the Interim Order and shall otherwise be junior only to Prepetition Permitted Liens. Other than as set forth in the Interim Order (including the Carve Out) or in the DIP Loan Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Case or any Successor Cases, upon the conversion of the Case to case under Chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of the Case or Successor Cases. The DIP Liens shall not be subject to section 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Lien. Notwithstanding any provisions of the Interim Order, or any final orders pertaining to the sale of the Debtor's assets, or any agreements validated by any such orders, any senior liens currently held by the Local Texas Tax Authorities shall neither be primed by, nor subordinated to, any liens granted thereby.<br><br>*See* Interim Order ¶¶ 6, 7. |
| **506(c) Waiver**<br>Bankruptcy Rule 4001(c)(l)(B)(x) | Section 506(c) Claims. Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP Collateral, the Prepetition Secured Creditors or the Prepetition Collateral |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.<br><br>*See* Interim Order ¶ 39. |
| **Section 552(b)**<br>Bankruptcy Rule<br>4001(c)(l)(B) | Section 552(b). The DIP Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. Subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.<br><br>*See* Interim Order ¶ 41. |
| **Stipulations to Prepetition Liens and Claims**<br>Bankruptcy Rule<br>4001(c)(1)(B)(iii)<br><br>**Waiver/Modification of Applicability of Nonbankruptcy Law Relating to Perfection or Enforceability of Liens**<br>Bankruptcy Rule<br>4001(c)(1)(B)(vii) | Debtor's Stipulations. After consultation with its professionals, and without prejudice to the rights of parties-in-interest as set forth in paragraphs 36 and 37 of the Interim Order, the Debtor, on its behalf and on behalf of its estate, admits, stipulates, acknowledges, and agrees to certain stipulations regarding the validity and extent of the Prepetition Lenders' claims and liens.<br><br>Perfection of DIP Liens and Adequate Protection Liens. The Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted under the Interim Order, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction<br><br>*See* Interim Order ¶¶ E, 19. |
| **Challenge Period**<br>Bankruptcy Rule<br>4001(c)(l)(B) | Effect of Stipulations on Third Parties.<br><br>*Generally.* The stipulations, findings, representations and releases contained in the Interim Order and the DIP Loan Documents with respect to the Prepetition Secured Creditors and the Prepetition Obligations shall be binding upon all parties-in-interest, any trustee appointed in the Case and any Statutory Committee (if appointed) (each, a "Challenge Party"), unless and solely to the extent that (i) the Debtor received from a Challenge Party notice of a potential Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. For purposes of this section: (a) "Challenge" means any claim or cause of action against any of the Prepetition Secured Creditors on behalf of the Debtor or the Debtor's creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (ii) the validity, allowability, priority, or amount of the Prepetition Obligations (including any fees included therein); (iii) the secured status of the Prepetition Obligations; (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from any of the respective |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | Prepetition Credit Documents; or (v) the releases set forth in the DIP Loan Documents; and (b) "Challenge Period" means (i) with respect to any party-in-interest other than the Statutory Committee for unsecured creditors (if appointed), the period from the Petition Date until the date that is seventy five (75) calendar days after the entry of the Interim Order and (ii) with respect to the Statutory Committee for unsecured creditors (if appointed), the period from the date such Statutory Committee is formed, if applicable, until the date that is sixty (60) calendar days thereafter.<br><br>*See* Interim Order ¶ 36. |
| **Waiver/Modification of the Automatic Stay**<br>Bankruptcy Rule 4001(c)(1)(B)(iv); Local Rule 4001(a)(1)(A) | Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; (b) permit the Debtor to perform such acts as the DIP Agent and the Prepetition Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Creditors under the DIP Loan Documents, the DIP Facility, and this Interim Order, as applicable; and (d) authorize the Debtor to pay, and the DIP Agent and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of this Interim Order.<br><br>Rights and Remedies Upon Event of Default. Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Agent may, in its sole discretion, (a) declare (any such declaration shall be referred to herein as a "Termination Declaration") any or all of the following: (i) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv) that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtor and its counsel, the U.S. Trustee, and lead counsel to any Statutory Committee (if appointed); or (b) send a reservation of rights notice to the Debtor, which notice may advise the Debtor that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent. The automatic stay is modified so that five (5) business days after the date a Termination Declaration is delivered (the "Remedies Notice Period"): (a) the DIP Agent shall be entitled to exercise all rights and remedies, in accordance with the DIP Loan Documents and the Interim Order, to satisfy the DIP Obligations, DIP Superpriority Claim, and DIP Liens, subject to the Carve Out; and (b) the Prepetition Agent shall be entitled to exercise all rights and remedies to satisfy the relevant Prepetition Obligations, Adequate Prepetition Superpriority Claims, and Prepetition Adequate Protection Liens, subject to the Carve Out, in a manner set forth in |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | the Interim Order. During the Remedies Notice Period, the Debtor and/or any Committee (if appointed) shall be entitled to seek an emergency hearing within the Remedies Notice Period. Unless the Court orders otherwise, the automatic stay, as to the DIP Agent, DIP Lenders, and the Prepetition Secured Creditors, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall be permitted to exercise all remedies set forth in the Interim Order, in the DIP Loan Documents, the Prepetition Credit Documents, and as otherwise available at law without further order of or application or motion to the Court consistent with paragraph 27 of the Interim Order.<br><br>*See* Interim Order ¶¶ 18, 27. |
| **Liens on Avoidance Actions** | *See* Interim Order ¶ 6. |
| **Milestones**<br>Bankruptcy Rule 4001(c)(1)(B) | Bankruptcy Related Affirmative Covenants. The Borrower shall complete, or shall cause to be completed, the following actions as and when required below, which motions and orders shall, in all cases, be upon terms and conditions acceptable to the Agent in its Permitted Discretion, provided that such deadlines below are subject to the Bankruptcy Court's availability, and if the Bankruptcy Court cannot accommodate the deadlines set forth below, the Borrower and Agent shall work together in good faith to amend the deadlines accordingly:<br><br>no later than three (3) days after the Petition Date, the Bankruptcy Court shall have entered an interim order approving the Consulting Motion;<br><br>no later than three (3) days after the Petition Date, the Bankruptcy Court shall have entered an order approving the Interim Financing Order;<br><br>no later than three (3) days after the Petition Date, the Bankruptcy Court shall have entered an interim order approving the Advisor Motion;<br><br>no later than twenty-thirty (25) days after the Petition Date, the Bankruptcy Court shall have entered a final order approving the Consulting Motion;<br><br>no later than twenty-thirty (25) days after the Petition Date, the Bankruptcy Court shall have entered a final order approving the Advisor Motion; and<br><br>no later than twenty-five (25) days after the Petition Date, the Bankruptcy Court shall have entered the Final Financing Order.<br><br>Lease Extensions. No later than thirty (30) days after the Petition Date, the Loan Parties shall have filed a motion seeking an order ("Lease Extension Order") of the Bankruptcy Court extending the time period of the Loan Parties to assume or reject leases to not less than 210 days from the Petition Date, and on or before forty-five (45) days after the Petition Date, the |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | Bankruptcy Court shall have entered the Lease Extension Order. |
| | *See* DIP Credit Agreement §§ 6.29; 6.30 |

### Statement Regarding Significant Provisions[6]

9. The Interim Order contains certain of the provisions (the "Significant Provisions") identified on Exhibit B to the Complex Case Procedures as summarized in the Attorney Checklist Concerning Motion and Order Pertaining to Use of Cash Collateral attached hereto as Exhibit C.

10. The Interim Order: (a) binds the estate or any parties in interest with respect to the validity, perfection, or amount of a secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor (subject to the challenge rights set forth in the Interim Order); (b) subject to entry of the Final Order, waives the Debtor's rights under section 506(c) of the Bankruptcy Code; (c) subject to entry of the Final Order, grants the DIP Lenders liens on the proceeds of the Debtor's claims and causes of action under chapter 5 of the Bankruptcy Code; and (d) grants administrative adequate protection claims. The Significant Provisions were necessary to secure the Prepetition Lenders' consent to the use of Cash Collateral under the Interim Order and the priming of their liens under the DIP Loan Documents. The Significant Provisions were also necessary to induce the DIP Lenders to extend credit under the DIP Facility, which is a necessary component of the Debtor's case.

11. In light of the foregoing, the Debtor submits that the Significant Provisions are appropriate under the facts and circumstances of this chapter 11 case. Accordingly, the Significant Provisions in the Interim Order should be approved.

---

[6] A detailed description of the Debtor and its business, and the facts and circumstances supporting the Debtor's chapter 11 case, are set forth in greater detail in the First Day Declaration.

9371931

## I.     The Debtor's Prepetition Capital Structure.

12.     As of the Petition Date, the Debtor's capital structure consists of outstanding funded-debt obligations in the aggregate principal amount of not less than $6,099,123.62 (collectively, together with any interest, fees (including, without limitation, any early termination and prepayment fees and closing fees owing under the DIP Facility) funded under the Prepetition Facility. The Debtor is a party to that certain Credit Agreement, dated as of August 2, 2018, (as amended, the "Prepetition Facility") A'GACI, L.L.C., as Borrower, the guarantors party thereto, Second Avenue Capital Partners, LLC ("Second Avenue"), as lenders (in such capacity, the "Prepetition Lenders") and as Collateral Agent and Administrative Agent (in such capacity, the "Prepetition Agent"). The Prepetition Facility provides for a $10 million senior secured revolving credit facility (subject to a borrowing base composed primarily of inventory and credit card receivables) with a maturity date of August 2, 2021.

13.     The Prepetition Facility provides for loans bearing interest at 3-month LIBOR *plus* an applicable margin of 8.5%. Interest is paid monthly in arrears. Obligations under the Prepetition Facility are secured by a first priority lien on all of the assets of the Borrower and the guarantors.

14.     Additionally, the Debtor has entered into deposit account control agreements in favor of the Prepetition Agent with respect to its bank accounts. Thus, substantially all of the Debtor's cash is subject to a perfected first priority security interest in favor of the Prepetition Agent. Under the Prepetition Facility, the Debtor must remit substantially all cash receipts on a daily basis to a non-Debtor account maintained by the Prepetition Agent (the "Agent Account").

---

[7]     A detailed description of the Debtor and its business, and the facts and circumstances supporting the Debtor's chapter 11 case, are set forth in greater detail in the First Day Declaration.

9371931

Accordingly, each day, any excess cash is swept to the Agent Account and applied to prepay loans in accordance with the Prepetition Facility. As of the Petition Date, there is not less than $6,099,123.62 of outstanding principal and approximately zero availability under the Prepetition Facility.

## II.     The Need to Use Cash Collateral and For Access to Financing.

15.     The Debtor requires immediate access to liquidity to ensure that it is able to continue operating during this chapter 11 case and preserve the value of its estate for the benefit of all parties in interest. As of the Petition Date, the Debtor has limited cash on hand, which is insufficient to operate its enterprise and continue paying its debts as they come due. Without prompt postpetition financing and access to cash collateral, the Debtor will be unable to pay wages for its employees, pay the fees and expenses associated with the orderly liquidation of its inventory, preserve and maximize the value of its estate, and administer this chapter 11 case, causing immediate and irreparable harm to the value of the Debtor's estates to the detriment of all stakeholders. *See* Lynch Declaration ¶ 13.

16.     The Debtor, in consultation with its proposed restructuring advisor, SierraConstellation Partners, reviewed and analyzed the Debtor's projected cash needs and prepared a 13 week projection (as updated from time to time in accordance with the terms of the DIP Credit Agreement, the "Budget")[8] outlining the Debtor's postpetition cash needs in the initial period of this case. The Debtor believes that the Budget and its projections provide an accurate reflection of its funding requirements over the identified period, will allow the Debtor to meet its obligations—including the administrative expenses of the chapter 11 cases—and are reasonable and appropriate under the circumstances.

---

[8]     A copy of the Budget is attached to the Interim Order as **Exhibit 1**.

9371931

17.     The Debtor relied on these forecasts to determine the amount of postpetition financing required to administer its chapter 11 case.  The DIP Facility is critical to the Debtor's ability to smoothly operate postpetition, including by providing sufficient liquidity to fund the administrative cost of the chapter 11 case and the store closing sales.  As a result, the Debtor believes that the DIP Facility provides the Debtor sufficient liquidity to stabilize its operations and fund the orderly wind down of its businesses, and is therefore essential to the preservation of its assets during the pendency of this case.

18.     With virtually no cash on hand, the Debtor requires interim approval of the DIP Facility to obtain access to mission-critical financing.  *See* Lynch Declaration ¶ 16.  Absent the immediate relief requested by this motion, the Debtor faces a material risk of substantial, irreparable, and ongoing harm.  Access to Cash Collateral and the DIP Facility will ensure the Debtor has sufficient funds to preserve and maximize the value of its estate and to responsibly administer this chapter 11 case.

## III.    Alternative Sources of Financing Are Not Readily Available.

19.     The Debtor does not have alternative sources of financing readily available.  The Debtor's Prepetition Lenders assert that substantially all of the Debtor's assets are encumbered under their existing capital structure, which, along with the Debtor's uncertain financial condition and overall weakness in the apparel industry, restricts the availability of, and options for, postpetition financing.  *See* Lynch Declaration ¶ 17.  The Prepetition Lenders also made it clear that they would not consent to "priming" debtor-in-possession financing provided by a third party.  *See id.*  Additionally, as described below, the Debtor determined in its business judgment that there were no viable alternative lenders that would be willing to extend credit to the Debtor.  *See id.*  Accordingly, the Debtor does not believe third-party debtor-in-possession financing would be reasonably obtainable.  *See* Lynch Declaration ¶¶ 17-18.

9371931

20.     While negotiating the DIP Facility with the Prepetition Lenders, the Debtor determined in its business judgment that there were no viable alternative lenders that would be willing to extend credit to the Debtor, especially after the Debtor's landlords began exercising their rights and remedies under the leases, or that would able to close on the timeline necessary for implementation.  *See* Lynch Declaration ¶ 18.  No party provided a proposal that was better both in terms of economics as well as the ability to implement.  *See id.*

21.     Indeed, any proposal by a lender outside the Debtor's prepetition capital structure would cost the Debtor substantially more than the DIP Facility and require priming of the Prepetition Lenders—likely resulting in expensive and distracting litigation at the critical start of this chapter 11 case.  *See id.*  Additionally, with any third-party proposal, the Debtor would incur the execution risk associated with a new lender transaction, including material timing and due diligence constraints, necessarily involving the payment of additional professional fees.  *See id.*  Therefore, it became clear to the Debtor that its existing lenders would provide the best source of postpetition financing.  *See id.*

## Basis for Relief

**I.     The Debtor Should Be Authorized to Obtain Postpetition Financing Through the DIP Loan Documents.**

### A.     Entry into the DIP Loan Documents Is an Exercise of the Debtor's Sound Business Judgment.

22.     The Court should authorize the Debtor, as an exercise of its sound business judgment, to enter into the DIP Loan Documents, obtain access to the DIP Facility, and continue using the Cash Collateral.  Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below.  Courts grant a debtor-in-possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit

9371931

does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g.*, *In re N. Bay Gen. Hosp., Inc.*, Case No. 08-20368 (Bankr. S.D. Tex. July 11, 2008); *see also In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

23.     Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

24.     Furthermore, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender.  *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing a debtor may have to enter into "hard bargains" to acquire funds for its reorganization).  The Court may also appropriately take into consideration non-economic benefits to the Debtor offered by a

9371931

proposed postpetition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non-economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a possible reorganization.* This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

The Debtor's determination to move forward with the DIP Facility is an exercise of its sound business judgment following an arm's-length process and careful evaluation of alternatives. Specifically, the Debtor and its advisors determined that postpetition financing will create certainty with respect to cash flows necessary for the administration of this chapter 11 case through the orderly wind down of the Debtor's businesses. The Debtor negotiated the DIP Credit Agreement and other DIP Loan Documents with the DIP Lenders in good faith, at arm's length, and with the assistance of their respective advisors, and the Debtor believes that it has obtained the best financing available. *See* Lynch Declaration ¶ 20. Accordingly, the Court should authorize the Debtor's entry into the DIP Loan Documents, as it is a reasonable exercise of the Debtor's business judgment.

### B. The Debtor Should Be Authorized to Grant Liens and Superpriority Claims.

25. The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens as set forth in the DIP Loan Documents pursuant to section 364(c) of the Bankruptcy Code. Specifically, the Debtor proposes to provide to the DIP Lenders continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected

9371931

postpetition security interests in and liens on the DIP Collateral (as defined in the Interim Order), which includes substantially all of the Debtor's assets. Because the DIP Lenders are also the Prepetition Lenders, the priority scheme of the Debtor's prepetition capital structure will remain largely unchanged. Under the DIP Loan Documents, the DIP Lenders will receive first priority liens, similar to their liens as they existed prior to the Petition Date. More specifically, the DIP Liens are "continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on [ ] any and all presently owned and hereafter acquired assets and real and personal property of the Debtor, including, without limitation," the DIP Collateral. Interim Order ¶ 6.

26. The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

    a.    the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim;

    b.    the credit transaction is necessary to preserve the assets of the estate; and

    c.    the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*See In re Ames Dep't Stores*, 115 B.R. 34, 37–40 (Bankr. S.D.N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393, 401–02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

9371931

27.     As described above and as set forth in the Lynch Declaration and the First Day Declaration, third-party lenders were unwilling to provide postpetition financing on an unsecured basis or otherwise junior to the Prepetition Lenders. *See* Lynch Declaration ¶ 21. Therefore, the Debtor, in consultation with its advisors, concluded that any workable financing likely would require the support of, or be provided by, the Debtor's existing lenders. *See id.* Absent the DIP Facility, which will provide certainty that the Debtor will have sufficient liquidity to administer the chapter 11 case, the value of the Debtor's estate would be significantly impaired to the detriment of all stakeholders. *See id.* Given the Debtor's circumstances, the Debtor believes that the terms of the DIP Facility, as set forth in the DIP Credit Agreement, are fair, reasonable, and adequate. *See id.* For all these reasons, the Debtor submits that it has met the standard for obtaining postpetition financing.

28.     In the event that a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, section 364(c) provides that a court "may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." As described above, the Debtor is unable to obtain unsecured credit. Therefore, approving a superpriority claims in favor of the DIP Lenders is reasonable and appropriate.

29.     Further, section 364(d) provides that a debtor may obtain credit secured by a senior or equal lien on property of the estate already subject to a lien, after notice and a hearing, where the debtor is "unable to obtain such credit otherwise" and "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal

lien is proposed to be granted." 11 U.S.C. § 364(d)(1). Consent by the secured creditors to priming obviates the need to show adequate protection. *See Anchor Savs. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 122 (N.D. Ga. 1989) ("[B]y tacitly consenting to the superpriority lien, those [undersecured] creditors relieved the debtor of having to demonstrate that they were adequately protected."). Accordingly, the Debtor may incur "priming" liens under the DIP Facility if either (a) the Prepetition Lenders have consented or (b) Prepetition Lenders' interests in collateral are adequately protected.

30. Here, the Prepetition Lenders have consented to the DIP Facility. Therefore, the relief requested pursuant to section 364(d)(1) of the Bankruptcy Code is appropriate.

### C.     No Comparable Alternative to the DIP Facility Is Reasonably Available.

31. A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also In re Snowshoe Co.*, 789 F.2d at 1088 (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that section 364 requirement was met); *In re Ames Dep't Stores*, 115 B.R. at 37–39

9371931

(debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b)).

32.     As noted above, the Debtor does not believe that alternative sources of financing are reasonably available given the realities imposed by the Debtor's existing capital structure and the Debtor's determination that no alternative financing proposal exists due to the facts and circumstances surrounding the Debtor's filing of this chapter 11 case. *See* Lynch Declaration, ¶ 22. Substantially all of the Debtor's existing assets, including Cash Collateral, are encumbered. *See* Lynch Declaration ¶ 17. Moreover, the Debtor is confident that no alternative proposal exists. There are no other options. *See* Lynch Declaration ¶ 22. Thus, the Debtor has determined that the DIP Facility provides the best opportunity available to the Debtor under the circumstances to fund this chapter 11 case. *See id.* Therefore, the Debtor submits that the requirement of section 364 of the Bankruptcy Code that alternative credit on more favorable terms be unavailable to the Debtor is satisfied.

### D.     The Proposed Repayment of Prepetition Indebtedness Should Be Approved.

33.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease property, other than in the ordinary course of business, with court approval. Such transactions should be approved when they are supported by a sound business purpose. *See In re Abbots Dairies, Inc.*, 788 F.2d 143 (3d Cir. 1986) (holding that a debtor's use of assets outside the ordinary course of business under section 363(b) should be approved if the debtor can demonstrate a sound business justification for the proposed transaction). The business judgment rule shields a debtor's management from judicial second-guessing. *In re Johns-Manville Corp.*, 60 B.R. 612, 615¶16 (Bankr. S.D.N.Y. 1986) ("[T]he [Bankruptcy] Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

9371931

34. Repayment of prepetition debt (often referred to as a "roll-up") is a common feature in debtor-in-possession financing arrangements. Courts in this jurisdiction have approved similar DIP features on the first day of the case. *See, e.g.*, *In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287 (Bankr. S.D. Tex. Mar. 18, 2016) (authorizing debtor-in-possession financing that included roll-up); *In re Hii Techs., Inc.*, No.15-60070 (Bankr. S.D. Tex. (Bankr. S.D. Tex. Sept. 24, 2015) (same); *In re Lab. Partners, Inc.*, No. 13-12769 (Bankr. D. Del. Nov. 26, 2013) (same); *In re S. Air Holdings, Inc.*, No. 12-12690 (Bankr. D. Del. Oct. 1, 2012) (same); *In re Appleseed's Intermediate Holdings LLC*, et al., No. 11-10160 (Bankr. D. Del. Jan. 20, 2011) (same); *In re Hayes Lemmerz Int'l, Inc.*, No. 09-11655 (Bankr. D. Del. May 14, 2009) (same).

35. Moreover, repayment of prepetition debt has been approved in several recent retail cases in this and other jurisdictions. *See In re The Gymboree Corp.*, No. 17-32986 (KLP) (Bankr. E.D. Va. July 11, 2017) (approving use of debtor-in-possession financing to pay down or "roll-up" prepetition debt); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Oct. 24, 2017) (same); *In re American Apparel, Inc.*, No. 15-12055 (Bankr. D. Del. October 6, 2017) (approving on an interim basis the repayment in full of all outstanding amounts under the prepetition revolving credit agreement); *In re The Gymboree Corp.*, No. 17¬32968 (Bankr. E.D. Va. June 12, 2017) (approving on an interim basis the conversion and "roll-up" of all outstanding prepetition revolving obligations and $70 million of prepetition term loan obligations); *In re rue21, inc.*, No. 17-22045 (Bankr. W.D. Pa. May 18, 2017) (approving on an interim basis the conversion and "roll-up" of all outstanding prepetition revolving obligations and $100 million of prepetition term loans); *In re BCBG Max Azria Holdings, LLC*, No. 17-10466 (Bankr. S.D.N.Y. March 28, 2017) (approving on a final basis the conversion and "roll-up" of $35 million of

9371931

prepetition term loan obligations); *In re BCBG Max Azria Holdings, LLC*, No. 17-10466 (Bankr. S.D.N.Y. March 2, 2017) (approving the conversion and "roll-up" of all outstanding prepetition revolving obligations on a rolling basis following entry of the interim order); *In re Aeropostale, Inc.*, No. 16-11275 (Bankr. S.D.N.Y. May 6, 2016) (approving on an interim basis the conversion and "roll-up" of all outstanding prepetition revolving obligations).

36. As set forth above, the DIP Credit Agreement provides that the full amount outstanding under the Prepetition Facility will "roll up" into the DIP Facility upon entry of the Final Order. Prior to entry of the Final Order, amounts outstanding under the Prepetition Facility will be paid down through collections received by the Debtor.

37. The repayment of the Prepetition Facility is a sound exercise of the Debtor's business judgment and is a material component of the structure of the DIP Facility and was required by the DIP Lenders as a condition to their commitment to provide postpetition financing. *See* First Day Declaration ¶ 23. The Debtor was unable to obtain debtor-in-possession financing on similar terms that did not provide for the repayment of prepetition amounts on these terms. *See* Lynch Declaration ¶ 23.

38. Importantly, the Prepetition Lenders, with no less than $6,099,123.62 of first lien, first priority claims, are oversecured. Where, as the Prepetition Lenders are here, a prepetition secured creditor is oversecured, repaying such creditor that stands to receive payment in full with postpetition loans will not harm the Debtor's estate and other creditors.

39. The simple economic reality is that an orderly wind down of the Debtor's businesses comes at a price, which in this case the Debtor believes to be reasonable. *See* Lynch Declaration ¶ 24. The Prepetition Lenders are unlikely to continue to lend postpetition without some assurance regarding their prepetition claims. Absent the Prepetition Lenders' support, the

9371931

first month of the Debtor's chapter 11 case would likely devolve into a costly priming fight. In contrast, the roll up of the Prepetition Facility merely affects the timing, not the amount or certainty, of the Prepetition Lenders' recovery—the secured claims arising under the Prepetition Facility are required by section 1129 of the Bankruptcy Code to be satisfied in full before recoveries to junior creditors may be provided, absent consent of such secured parties (which consent the Debtor does not have here). Importantly, the proposed roll-up is subject to review by a creditors' committee (if appointed) or another party-in-interest with requisite standing if a committee is not appointed.

40. Given these circumstances, repayment of the Prepetition Facility upon entry of the Interim Order is reasonable, appropriate, and a sound exercise of the Debtor's business judgment.

## II. The Debtor Should Be Authorized to Use the Cash Collateral.

41. Section 363 of the Bankruptcy Code generally governs the use of estate property. Section 363(c)(2)(A) permits a debtor in possession to use cash collateral with the consent of the secured party. Here, the Prepetition Lenders consent to the Debtor's use of the Cash Collateral (as well as the Prepetition Collateral), subject to the terms and limitations set forth in the Interim Order.

42. Section 363(e) provides for adequate protection of interests in property when a debtor uses cash collateral. Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay. *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (en banc). While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech.*

9371931

*Corp.*, No. 12-12869 (KG), 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01[1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

43.     As described more fully above, and as set forth in the Interim Order, the Debtor proposes to provide the Prepetition Lenders with a variety of adequate protection to protect against the postpetition diminution in value of the Cash Collateral (as well as the Prepetition Collateral) resulting from the use of the Cash Collateral by the Debtor and the imposition of the automatic stay (collectively, the "Adequate Protection Obligations"):

    a.    valid and automatically perfected replacement liens and security interests in and upon the DIP Collateral;

    b.    superpriority administrative claims under section 507(b) of the Bankruptcy Code;

    c.    the payment of the professional fees and expenses of the Prepetition Agent; and

    d.    the payment of interest, fees, and principal due under the Prepetition Credit Documents.

44.     Therefore, the Debtor submits that the proposed Adequate Protection Obligations are sufficient to protect the Prepetition Lenders from any diminution in value to the Cash Collateral and Prepetition Collateral.  In light of the foregoing, the Debtor further submits, and the Prepetition Lenders agree, that the proposed Adequate Protection Obligations to be provided

for the benefit of the Prepetition Lenders are appropriate.[9] Thus, the Debtor's provision of the Adequate Protection Obligations is not only necessary to protect against any diminution in value but is fair and appropriate under the circumstances of this chapter 11 case to ensure the Debtor is able to continue using the Cash Collateral, subject to the terms and limitations set forth in the Interim Order, for the benefit of all parties in interest and their estates.

## III. The Scope of the Carve Out is Appropriate.

45.     The proposed Adequate Protection Obligations are subject to the Carve Out. Without the Carve Out, the Debtor and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in this chapter 11 case would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve Out does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency during the course of this chapter 11 case by ensuring that assets remain for the payment of the Clerk of the Court or U.S. Trustee fees and professional fees of the Debtor.

## IV. The Debtor Should Be Authorized to Pay the Fees Required by the DIP Agent and the DIP Lenders Under the DIP Loan Documents.

46.     Under the DIP Loan Documents, the Debtor has agreed, subject to Court approval, to pay certain fees to the DIP Agent and the DIP Lenders. In particular, the Debtor has agreed to pay aggregate fees in accordance with the DIP Loan Documents consisting of the

---

[9]     Pursuant to the DIP Orders, the Prepetition Lenders are permitted to seek additional adequate protection in accordance with the terms thereof.

9371931

following: (a) closing fees of approximately $200,000; (b) an unused line fee equal to 0.75% per annum of the undrawn commitments; and (c) an administration fee of $6,500 per month.

47.     It is understood and agreed by all parties, including the Debtor, that these fees are an integral component of the overall terms of the DIP Facility, and were required by the DIP Agent and the DIP Lenders as consideration for the extension of postpetition financing. *See* Lynch Declaration ¶ 31. Accordingly, the Court should authorize the Debtor to pay the fees provided under the DIP Loan Documents in connection with entering into those agreements.

## V.     The DIP Lenders Should Be Deemed Good-Faith Lenders Under Section 364(e).

48.     Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

49.     As explained herein, in the First Day Declaration, the DIP Loan Documents are the result of: (a) the Debtor's reasonable and informed determination that the DIP Lenders offered the most favorable terms on which to obtain vital postpetition financing, and (b) arms'-length, good-faith negotiations between the Debtor and the DIP Agent and DIP Lenders. The Debtor submits that the terms and conditions of the DIP Loan Documents are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Loan Documents other than as described herein. Accordingly,

9371931

the Court should find that the DIP Lenders are "good faith" lenders within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections afforded by that section.

**VI.    The Automatic Stay Should Be Modified on a Limited Basis.**

50.    The proposed Interim Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to allow the DIP Lenders to file any financing statements, security agreements, notices of liens, and other similar instruments and documents in order to validate and perfect the liens and security interests granted to them under the Interim Order.    The proposed Interim Order further provides that the automatic stay is modified as necessary to permit the Debtor to grant the DIP Liens to the DIP Lenders and to incur all liabilities and obligations set forth in the Interim Order.    Finally, the proposed Interim Order provides that, following the occurrence of an Event of Default, the automatic stay shall be vacated and modified to the extent necessary to permit the DIP Agent to exercise all rights and remedies in accordance with the DIP Loan Documents, or applicable law following a five (5) business day notice period, during which time the Debtor or a creditors' committee (if appointed) may seek injunctive relief.

51.    Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this chapter 11 case. *See, e.g.*, *In re Southcross Holdings LP*, No. 16-20111 (Bankr. S.D. Tex. Apr. 11, 2016) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Autoseis, Inc.*, No. 14-20130 (Bankr. S.D. Tex. Mar. 27, 2014) (same); *In re ATP Oil and Gas Corp.*, No. 12-36187 (Bankr. S.D. Tex. Aug. 17, 2012) (same); *In re MPF Holdings US LLC*, No. 08-36084 (Bankr. S.D. Tex. Feb. 18, 2009) (same); *see also In re Magnum Hunter Res. Corp.*, No. 15-12533 (Bankr. D. Del. Dec. 15, 2015) (terminating

automatic stay after event of default); *In re Peak Broad., LLC*, No. 12-10183 (Bankr. D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event); *In re TMP Directional Mktg., LLC,* No. 11-13835 (Bankr. D. Del. Jan. 17, 2012) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Broadway 401 LLC*, No. 10-10070 (KJC) (Bankr. D. Del. Feb. 16, 2010) (same); *In re Haights Cross Commc'ns, Inc.*, No. 10-10062 (BLS) (Bankr. D. Del. Feb. 8, 2010) (same).

## VII. Failure to Obtain Immediate Interim Access to the DIP Facility and Cash Collateral Would Cause Immediate and Irreparable Harm.

52.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

53.     For the reasons noted above, the Debtor has an immediate postpetition need to use Cash Collateral, including advances under the DIP Facility.  The Debtor cannot maintain the value of its estate during the pendency of the chapter 11 case without access to this liquidity.  *See* Lynch Declaration ¶ 33.  The Debtor will use cash to, among other things, fund the administration of the chapter 11 case and the store closing sales.  *See id.*  The Debtor believes that substantially all of its available cash constitutes the Prepetition Lenders' Cash Collateral. *See* Lynch Declaration ¶ 12.  The Debtor will therefore be unable to operate its business or otherwise fund the chapter 11 case without access to the Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest.  In

9371931

short, the Debtor's ability to administer the chapter 11 case through the use of Cash Collateral is vital to preserve and maximize the value of the Debtor's estates.

54.     The Debtor requests that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtor, from and after entry of the Interim Order until the Final Hearing, to receive initial funding under the DIP Facility.   This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to their estates and all parties in interest, pending the Final Hearing.

## Request for Final Hearing

55.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing within approximately 30 days after the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this motion.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

56.     To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

57.     The Debtor will provide notice of this motion to: (a) the Office of the U.S. Trustee for the Western District of Texas; (b) holders of the 20 largest unsecured claims against the Debtor (on a consolidated basis); (c) counsel to the DIP Agent and the Prepetition Agent; (d) the United States Attorney's Office for the Western District of Texas; (g) the Internal Revenue Service; (h) the United States Securities and Exchange Commission; (i) the state attorneys general for all states in which the Debtor conducts business; and (j) any party that requests

service pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

58.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

9371931

WHEREFORE, the Debtor respectfully requests that the Court enter the DIP Orders, granting relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated:  August 7, 2019
       San Antonio, Texas

/s/ Eric Terry
Eric Terry (TX Bar No. 00794729)
**ERIC TERRY LAW, PLLC**
3511 Broadway Street
San Antonio, Texas 78029
Telephone:    (210) 468-8274
Facsimile:    (210) 319-5447

*Proposed Counsel to the Debtor and Debtor in Possession*

# **EXHIBIT A**

**Proposed Interim Order**

**Exhibit 1**

**Budget**

## EXHIBIT B

**DIP Credit Agreement**