**The relief described hereinbelow is SO ORDERED.**

**Signed August 09, 2019.**



**Ronald B. King**
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| A'GACI, L.L.C., | § | Case No. 19-51919-RBK |
| | § | |
| Debtor. | § | |
| | § | |

**INTERIM ORDER GRANTING THE DEBTOR'S EMERGENCY
MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTOR TO ASSUME THE CONSULTING
AGREEMENT; (II) APPROVING PROCEDURES FOR STORE CLOSING
SALES; (III) APPROVING THE SALE OF STORE CLOSURE
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES; (IV) WAIVING COMPLIANCE WITH
APPLICABLE STATE LAWS AND APPROVING
DISPUTE RESOLUTION PROCEDURES; AND
<u>(V) GRANTING RELATED RELIEF</u>**

Upon the motion (the "Motion")[1] of the Debtor for the entry of an order (the "Interim Order"), (i) authorizing the Debtor to assume the Consulting Agreement; (ii) approving the Sale Guidelines; (iii) approving the Sale of Store Closure Assets free and clear of all liens, claims and encumbrances; (iv) waiving compliance with Applicable State Laws and approving Dispute Resolution Procedures; and (v) granting related relief; and the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at any hearing before the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, (ii) venue is proper in this District pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) the notice of the Motion and the Hearing was sufficient under the circumstances, and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); after due deliberation determined that the relief requested in the Motion is necessary and essential for the Debtor's reorganization and such relief is in the best interests of the Debtor, its estate and its creditors; and upon the record herein; and after due deliberation thereon; and good and sufficient cause have been shown; it is hereby:

FOUND AND DETERMINED THAT: [2]

1. The Debtor has advanced sound business reasons for seeking to assume the "Consulting Agreement," attached hereto as Schedule 1, and adopt the "Sale Guidelines," attached hereto as Schedule 2, on an interim basis subject to the Final Hearing, as set forth in the Motion and at the Hearing, and entering into the Consulting Agreement is a reasonable exercise of the Debtor's business judgment and in the best interests of the Debtor and its estate.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Consulting Agreement.

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate. See Fed. R. Bankr. P. 7052.

2.     Conducting the Store Closings in accordance with the Sale Guidelines will provide an efficient means for the Debtor to dispose of the Store Closure Assets.

3.     The Consulting Agreement was negotiated, proposed, and entered into by the Consultant and the Debtor without collusion, in good faith and from arm's length bargaining positions.

4.     The assumption of the Consulting Agreement is a sound exercise of the Debtor's business judgment.

5.     The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtor and its estate and the Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

6.     The Store Closings and the Sales are in the best interest of the Debtor's estate.

7.     The entry of this Interim Order is in the best interest of the Debtor and its estate, creditors, interest holders, and all other parties in interest; and now therefore;

**IT IS HEREBY ORDERED THAT:**

8.     The Motion is GRANTED ON AN INTERIM BASIS as provided herein.

9.     The final hearing (the "Final Hearing") on the Motion shall be held on August 28, 2019, at 2:00 p.m., prevailing Central Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. prevailing Central Time on August 23, 2019, and served on the following parties: (i) the Debtors, A'GACI, L.L.C., 4958 Stout Drive, San Antonio, Texas 78219, Attn: David Won; (ii) proposed counsel to the Debtor, Eric Terry Law, PLLC, 3511 Broadway, San Antonio, Texas 78209, Attn:  Eric Terry, Esq. (iii) the Office of the United States Trustee for the Western District of Texas; (iv) counsel to the official committee of unsecured creditors (if any) appointed in this Chapter 11 Case; (v) all state attorneys general in which the Store Closure Assets are Located; (vi) municipalities in which the Store Closure Assets

are located; (vii) all of the Debtor's landlords at the locations of the Stores; (viii) all applicable state and consumer protection agencies; (ix) the representative of the Consultant, Robert Raskin, SB360 Capital Partners, 1010 Northern Blvd, Great Neck, NY 11021 and counsel to the Consultant, Deborah Williamson and Patrick Huffstickler, Dykema Gossett, PLLC, 112 E. Pecan St. #1800, San Antonio, Texas 78205 and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). Any party wishing to appear by phone in connection with the Final Hearing should contact the Court's setting clerk at deanna_castleberry@txwb.uscourts.gov to arrange for such telephonic appearance.

10.     The Debtor is authorized and empowered to take any and all further actions as may be reasonably necessary or appropriate to give effect to this Interim Order.

11.     To the extent of any conflict between this Interim Order, the Sale Guidelines, and the Consulting Agreement, the terms of this Interim Order shall control over all other documents and the Sale Guidelines shall control over the Consulting Agreement.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall take effect immediately upon its entry.

**A.      Authority To Assume the Consulting Agreement**

13.     The Consulting Agreement is hereby assumed pursuant to section 365 of the Bankruptcy Code on an interim basis. The Debtor is authorized to act and perform in accordance with the terms of the Consulting Agreement, including making payments required by the Consulting Agreement to the Consultant without the need for any application of the Consultant or a further order of the Court.

14.     Subject to the restrictions set forth in this Interim Order and the Sale Guidelines, the Debtor and the Consultant hereby are authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreement and the Sales; and each of the transactions

contemplated by the Consulting Agreement, and any actions taken by the Debtor and the Consultant necessary or desirable to implement the Consulting Agreement and/or the Sales prior to the date of this Interim Order, hereby are approved and ratified.

**B.    Authority To Engage in Store Closing Sales**

15.    The Debtor is authorized, pursuant to 105(a) and 363(b)(1) of the Bankruptcy Code, to immediately continue and conduct Sales at the Stores in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

16.    The Sale Guidelines are approved in their entirety on an interim basis.

17.    The Debtor is authorized to discontinue operations at the Stores in accordance with this Interim Order and the Sale Guidelines.

18.    All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtor holds an interest that are or may be subject to the Consulting Agreement or this Interim Order are hereby directed to surrender possession of such Merchandise or FF&E to the Debtor or the Consultant.

19.    Neither the Debtor nor the Consultant nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closings and to take the related actions authorized herein.

**C.    Conduct of the Sales**

20.    All newspapers and other advertising media in which the Sales may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtor and the Consultant to conduct the Sales and the sale of Merchandise and FF&E pursuant to the Consulting Agreement, including, without limitation, to conduct and advertise the sale of

the Merchandise and FF&E in the manner contemplated by and in accordance with this Interim Order, the Sale Guidelines, and the Consulting Agreement.

21.     The Debtor and Consultant are hereby authorized to take such actions as may be necessary and appropriate to implement the Consulting Agreement and to conduct the sale without necessity of further order of this Court as provided in the Consulting Agreement or the Sale Guidelines, including, but not limited to, advertising the sale as a "going out of business", "store closing sale", "sale on everything", "everything must go", or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Closing Location entrance does not require entry into the enclosed mall common area), use of sign-walkers, and street signage.

22.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise and FF&E, to the extent that, prior to the Final Hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Consultant are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled no later than the earlier of (a) the Final Hearing or (b) within two business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

23.     Except as expressly provided in the Consulting Agreement, the sale of the Merchandise and FF&E shall be conducted by the Debtor and the Consultant notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sales, the rejection of leases, abandonment of assets, or

"going dark" provisions. The Consultant and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Consultant and any such landlords, provided that nothing in such Side Letters affects the provisions of this Order. In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control. Both the Sale Guidelines and any Side Letters shall at all times be subject to, and controlled by, the provisions of this Order.

24.     Except as expressly provided for herein or in the Sale Guidelines, no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of sign-walkers) of such sales, and all such parties and persons of every nature and description, including, but  not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sales and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Consultant, or the landlords at the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Merchandise or FF&E or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

25.     In accordance with and subject to the terms and conditions of the Consulting Agreement, the Consultant shall have the right to use the Stores and all related Closing Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Interim Order.

26.     All sales of Store Closure Assets shall be "as is" and final.

27.     The Consultant shall not be liable for sales taxes except as expressly provided in the Consulting Agreement and the payment of any and all sales taxes is the responsibility of the Debtor.  The Debtor is directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtor is only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  The Consultant shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Consulting Agreement.  This Interim Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

28.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell and all sales of Merchandise or FF&E (each as defined in the Consulting Agreement) pursuant to the Sales, whether by the Consultant or the Debtors, shall be free and clear of any and all Encumbrances; provided, however, that any such Encumbrances shall attach to the proceeds of the Sales with the same validity, in the amount, with the same priority as,

and to the same extent that any such liens, claims, and encumbrances have with respect to the Merchandise and FF&E, subject to any claims and defenses that the Debtors may possess with respect thereto and the Consultant's fees and expenses (as provided in the Consulting Agreement).

29. To the extent that the Debtors propose to sell or abandon FF&E which may contain personal and/or confidential information about the Debtor's employees and/or customers (the "Confidential Information"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

30. The Debtors and/or the Consultant (as the case may be) are authorized and empowered to transfer Merchandise and FF&E among the Stores. The Consultant is authorized to sell the Debtor's FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Consulting Agreement. Following abandonment, any person (including, without limitation, the landlords) asserting rights, liens, claims, encumbrances, and/or interests in such abandoned property under non-bankruptcy law may freely exercise such rights, liens, claims, encumbrances, and/or interests in the abandoned property, without further notice or order from this Court, without any liability to the Debtor, and without waiver of any claim such person may have against the Debtor.

31. Notwithstanding this or any other provision of this Order, nothing shall prevent or be construed to prevent the Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates from providing additional services to and/or bidding on the Debtors' assets not subject to the Consulting Agreement pursuant to an agency agreement or otherwise ("Additional Assets"). The Consultant (individually, as part of a joint venture, or otherwise) or any of its affiliates are hereby authorized to bid on, guarantee, or otherwise acquire such Additional Assets, or offer to provide additional services, notwithstanding anything to the contrary in the Bankruptcy

Code or other applicable law, provided that such services guarantee, transaction, or acquisition is approved by separate order of this Court.

**D.      Dispute Resolution Procedures with Governmental Units**

32.      Nothing in this Order, the Consulting Agreement, or the Sale Guidelines, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Order. Nothing contained in this Order, the Consulting Agreement, or the Sale Guidelines shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings and the Sales shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Order, the Consulting Agreement, or the Sale Guidelines, shall alter or affect obligations to comply with all applicable federal safety laws and regulations. Nothing in this Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(47) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' rights to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Order. Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law,

or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

33.     To the extent that the sale of Store Closure Assets is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets, the dispute resolution procedures in this section shall apply.

  i. Provided that the Sales are conducted in accordance with the terms of the Interim Order, or the Final Order, as applicable, and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor and the Consultant will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of the Interim Order, or the Final Order, as applicable, and the Sale Guidelines without the necessity of further showing compliance with any Liquidation Sale Laws.

  ii. Within three business days after entry of the Interim Order, the Debtor will serve by first-class mail, copies of the Interim Order, the proposed Final Order, the Consulting Agreement, and the Sale Guidelines on the following: (a) the Attorney General's office for each state where the Sales are being held; (b) the county consumer protection agency or similar agency for each county where the Sales are being held; (c) the division of consumer protection for each state where the Sales are being held; (d) the chief legal counsel for the local jurisdiction; (e) the landlords for the Stores; and (f) Robert Raskin, SB360 Capital Partners, 1010 Northern Blvd, Great Neck, NY 11021 (collectively, the "Dispute Notice Parties").

  iii. To the extent that there is a dispute arising from or relating to the Sales, the Interim Order, or the proposed Final Order, as applicable, the Consulting Agreement, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the Bankruptcy Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "Dispute

Notice") explaining the nature of the dispute to: (a) Eric Terry Law, PLLC, 3511 Broadway, San Antonio, Texas 78209, Attn: Eric Terry, Esq.,(b) counsel to the official committee of unsecured creditors, if one is appointed, and (c) the United States Trustee for the Western District of Texas; (d) Robert Raskin, SB360 Capital Partners, 1010 Northern Blvd, Great Neck, NY 11021; and (e) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110, Attn: John F. Ventola. If the Debtor and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the notice, the Governmental Unit may file a motion with the Bankruptcy Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

iv. In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order, or the Final Order, as applicable, shall preclude the Debtor, a landlord, or any other interested party from asserting (A) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (B) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtor pursuant to the Interim Order or the Final Order, violates such Liquidation Sale Laws. Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of any Interim Order or Final Order or to limit or interfere with the Debtor's or the Consultant's ability to conduct or to continue to conduct the Sales pursuant to the Interim Order or the Final Order, absent further order of the Bankruptcy Court. Upon the entry of the Interim Order or the Final Order, as applicable, the Bankruptcy Court grants authority for the Debtor and the Consultant to conduct the Sales pursuant to the terms of the Interim Order or the Final Order, as applicable, the Consulting Agreement, and/or the Sale Guidelines and to take all actions reasonably related thereto or arising in connection therewith. The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

v. If, at any time, a dispute arises between the Debtor and/or the Consultant and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (iv) and (v) above by serving a notice to the other party and proceeding thereunder in accordance with those paragraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

34. Subject to paragraphs 32 and 33 above, each and every federal, state, or local

agency, departmental, or Governmental Unit with regulatory authority over the Sales and all

newspapers and other advertising media in which the Sales are advertised shall consider this Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors or the Consultant be required to post any bond, to conduct the Sales.

35.     Provided that the Sales are conducted in accordance with the terms of this Order, the Consulting Agreement, and the Sale Guidelines, and in light of the provisions in the laws that exempt court-ordered sales from their provisions, the Debtors and Consultant shall be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Sales in accordance with the terms of this Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Sale Laws.

36.     Within three business days of this Interim Order, the Debtor shall serve copies of this Interim Order, the Consulting Agreement, and the Sale Guidelines via email, facsimile, or regular mail, on: (i) the Debtors, A'GACI, L.L.C., 4958 Stout Drive, San Antonio, Texas 78219, Attn: David Won; (ii) proposed counsel to the Debtor, Eric Terry Law, PLLC, 3511 Broadway, San Antonio, Texas 78209, Attn:  Eric Terry, Esq.; (iii) the Office of the United States Trustee for the Western District of Texas; (iv) counsel to the official committee of unsecured creditors (if any) appointed in this Chapter 11 Case; (v) all state attorneys general in which the Store Closure Assets are Located; (vi) municipalities in which the Store Closure Assets are located; (vii) all of the Debtor's landlords at the locations of the Stores; (viii) all applicable state and consumer protection agencies; (ix) all parties who are known by the Debtor to assert liens against the Store Closure Assets; (x) all of the Debtors' landlords at the locations of the Stores; and (xi) any party that has requested notice pursuant to Bankruptcy Rule 2002.

**E.     Other Provisions.**

37.     The Consulting Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of

this Court during the interim period, provided, however, that any such modification, amendment, or supplement shall be disclosed to the Court in connection with the Final Hearing for the Court's review and determination.

38.     The Consultant shall not be liable for any claims against the Debtor, and the Debtor shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreement.

39.     To the extent the Debtor is subject to any state "fast pay" laws in connection with the Store Closings, the Debtor shall be presumed to be in compliance with such laws to the extent, in applicable states, such payroll payments are made by the later of: (a) the Debtor's next regularly scheduled payroll; and (b) seven calendar days following the termination date of the relevant employee, and in all such cases consistent with, and subject to, any previous orders of this Court regarding payment of same.

40.     Notwithstanding Bankruptcy Rules 6003(b) and 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

41.     The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order.

42.     This Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Interim Order or the Consulting Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtor, the landlords and/or the Consultant for protection from interference with the Sales, (iii) any other disputes related to the Sales, and (iv) to protect the Debtor and/or the Consultant against

any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtor, the Consultant, the landlords or the Sales until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

43.     Notwithstanding anything else in this Order to the contrary, any payments authorized to be made by this Order shall be subject to the terms, conditions, limitations, and restrictions set forth in that certain *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing the Debtor to Obtain Postpetition Financing, (II) Authorizing the Debtor to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* and any further debtor-in-possession financing order entered by this Court in this case (collectively, the "DIP Financing Order"), including, without limitation, the requirement that any payments authorized by this Order may only be made as permitted under the Budget approved in connection with such DIP Financing Order.

###

**Submitted by:**

Eric Terry Law, PLLC,
3511 Broadway
San Antonio, Texas 78209
Attn:  Eric Terry, Esq.
**State Bar No. 00794729**

**PROPOSED ATTORNEYS FOR DEBTOR**

<u>**Schedule 1**</u>

**Consulting Agreement**

# CONSULTING AGREEMENT

This Consulting Agreement, dated as of July 26, 2019 (this "Agreement") is made by and between A'GACI, L.L.C. a limited liability company organized under the laws of the state of Texas, with a principal place of business at 4958 Stout Drive, San Antonio Texas 78219 (the "Company") and a contractual joint venture between SB360 Capital Partners, LLC, a limited liability corporation organized under the laws of the state of Delaware with a principal place of business located at 1010 Northern Boulevard, Great Neck, New York 11021 and  Hilco Merchant Resources, LLC  a limited liability corporation organized under the laws of the state of Delaware with a principal place of business located at 5 Revere Drive, Suite 206, Northbrook, Illinois, 60062  (collectively the "Consultant").

## R E C I T A L S:

WHEREAS, the Company desires to retain Consultant to provide consulting services to Company with respect to the disposition of the Merchandise and FF&E (each as defined below) and related products and services, in the context of a "Total Inventory Blowout", "Everything On Sale" or, to the extent not prohibited under the applicable Underlying Store Lease, or by applicable state or local law, "Store Closing", or similar themed sale (the "Sale").  The Sale shall not be promoted as "going out of business", or where prohibited by the Underlying Store Lease or applicable state or local law, "Store Closing" sales at (i) Company's retail store locations identified on Exhibit 1A attached hereto (each individually, a "Store", and collectively, the "Stores") and (ii) the Company's distribution center(s) identified on Exhibit 1B attached hereto (each individually a "Distribution Center", and collective, the "Distribution Centers", and together with the Stores, each a "Closing Location" and collectively, the "Closing Locations").

WHEREAS, Consultant is willing to serve as the Company's consultant for the purpose of providing such consulting services, upon the terms and conditions and in the manner set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## 1.    Definitions

For the purposes of this Agreement, the terms listed below shall have the respective meanings indicated:

"Central Services" shall mean those central administrative services provided by Company that are necessary or appropriate for the conduct and support of the Sale, including, but not limited to, use and/or access to Company's: (i) inventory control system, (ii) payroll system, (iii) accounting system, (iv) office facilities (including use of reasonably sized offices located at Company's central office facility to effect the Sale), (v) central administrative services and personnel to process and perform sales audit, banking, accounting, sale and expense reconciliation, and other normal course administrative services customarily provided to or for the benefit of operating the Closing Locations, (vi) necessary email messages targeted to the

customers of the Stores, which email messages will be designed by Consultant (and approved by Company) and sent by Company or Company's existing service provider and (vii) such other central office services reasonably necessary or appropriate for the Sale.

"Consultant Incurred Expenses" shall mean the aggregate amount of (i) Supervisor Costs; (ii) reasonable and documented travel expenses for members of Consultant's executive team in an aggregate amount not to exceed $15,000.00; and (iii) Consultant's reasonable and documented legal fees incurred in connection with the negotiation of this Agreement in an aggregate amount not to exceed $5,000.00; in each case in accordance with the Budget (as defined below).

"Gross Retail Recovery Percentage" shall mean the Gross Sales recovered as a percentage of Retail Value of Merchandise in the Sale

"Gross Rings" shall have the meaning set forth in Section 3.2(c).

"Gross Sales" shall mean all proceeds derived from the sale of Merchandise during the Sale Term (excluding amounts paid for sales, excise, or gross receipts taxes); plus (i) all proceeds of fire, flood or other insurance covering the Merchandise, and (ii) the amount of any gift cards or merchandise credits redeemed at the Stores during the Sale Term; provided, however, that it is expressly understood and agreed, that Gross Sales shall not include sales made by or on behalf of Company prior to the Sale Commencement Date or after the Sale Termination Date, regardless of when the applicable Merchandise is delivered to or picked up by the customer(s).

"Lender Agent" shall mean Second Avenue Capital Partners, LLC, as administrative agent and collateral agent for itself and the other Lenders[1].

"Lenders" means those lenders under that certain Credit Agreement, dated as of August 2, 2018 (as amended, restated, supplemented or otherwise modified from time to time and in effect on the date hereof), by and among, among others, the Company, such lenders and the Lender Agent.

"Merchandise" shall mean all inventory that is owned by Company and located at, or in transit to the Stores and the Distribution Center(s) as of the Sale Commencement Date; provided, however, the Company and the Consultant agree that "Merchandise" shall expressly exclude: (1) goods which belong to sublessees, licensees or concessionaires of Company; (2) goods held by the Company on memo or consignment, unless otherwise agreed to by Company (in consultation with Lender Agent) and Consultant; and (3) FF&E.

"Retail Value" shall mean with respect to each item of Merchandise, the retail price against which the applicable Sale discount was applied as such item of Merchandise was sold, as reflected in Gross Rings.

---

[1] SB360 Capital Partners, LLC is an affiliate of Lender Agent.

"Sale Commencement Date" shall mean the first business day after execution and delivery of this Agreement, but in no event later than August 1, 2019 (or such other date as shall be agreed by the Company and the Consultant in consultation with Lender Agent).

"Sale Expenses" shall mean, with respect to the Sale of Merchandise from the Closing Locations, the following operating expenses incurred in connection with and attributable to the Sale subject to the limitations set forth in the Budget; including the following: (i) advertising expenses (including direct media costs, agency fees and production costs) (collectively, "Advertising Costs"), and interior and exterior signage and sign walkers ("Signage Costs") used in connection with the Sale; (ii) payroll (including any store-level commissions) and related employee benefits and payroll taxes ("Payroll Costs"); (iii) security costs associated with the Sale; (iv) credit card processing fees for Merchandise; (v) Store-level employee bonuses mutually approved by Company (in consultation with the Lender Agent) and Consultant prior to the execution of this Agreement; (vi) occupancy and occupancy-related costs relative to the Closing Locations; (vii) insurance amounts; (viii) telephone charges; (ix) licensing and permitting fees and expenses, and (xii) costs of transferring Merchandise between Closing Locations.

"Sale Guidelines" shall mean the Sale Guidelines annexed hereto as Exhibit 3 which shall serve as the guidelines under which the Sale shall be conducted.

"Sale Term" shall mean the period of time beginning with the Sale Commencement Date and ending on the Sale Termination Date.

"Sale Termination Date" shall mean a date no later than August 31, 2019 (unless extended upon mutual agreement of Company (in consultation with the Lender Agent) and Consultant; or such earlier date(s) as determined by the Company (in consultation with the Lender Agent) and the Consultant.

"Services" shall mean the services to be performed by Consultant pursuant to Section 2.2 of this Agreement.

"Store Employees" shall mean those employees of the Company retained by Company to conduct the Sale following consultation with Consultant; provided however that Company shall exercise commercially reasonable best efforts to ensure that there are sufficient Store Employees to reasonably conduct the Sale (as to number, and sales and management quality, with reference to Company's historic practices and periods); provided, further that in the event Company nevertheless is unable to ensure that there are sufficient Store Employees to reasonably conduct the Sale (as to number, and sales and management quality, with reference to Company's historic practices and periods), Company shall not be deemed in breach of this Agreement and Consultant shall reasonably and equitably increase the Budget (with the consent of Lender Agent) to reflect the Consultant's need to obtain qualified temporary employees and/or additional supervisors to adequately staff the Stores.

"Supervisor(s)" shall mean the individual(s) whom Consultant shall engage to provide Services in the Stores to Company in connection with the Sale in accordance with Section 2.3 below.

"Supervisor Costs" shall mean the following customary costs and expenses incurred by Consultant with respect to Supervisors in accordance with the Budget,: (i) the weekly compensation paid during the Sale Term per Supervisor (which in each case represents Consultant's actual costs); (ii) reasonable and document travel expenses of the Supervisors between Closing Locations during the term of the Sale, and to and from the Sale locations at the commencement and conclusion of the Sale (and reasonable travel to and from the Supervisors' homes during the Sale Term as is typical and customary in the liquidation industry given the nature of the Merchandise, the length of the Sale, and the actual results of the Sale); and (iii) reasonable Supervisor deferred compensation.

"Underlying Store Leases" shall mean all leases, occupancy agreements, reciprocal easement, license, or similar agreements pursuant to which Company has the right to occupy or utilize the Closing Locations.

## 2.    Consulting Services

2.1    Company hereby retains Consultant and Consultant hereby agrees to serve as the exclusive independent consultant to the Company in connection with the conduct of the Sale as set forth herein.   With respect to the Sale, Consultant shall serve as the sole and exclusive consultant to the Company relative to the conduct of the Sale at the Closing Locations throughout the Sale Term.

2.2    On the terms and conditions set forth herein, commencing as of the Sale Commencement Date, the Consultant shall provide the Company with the following Services with respect to the conduct of the Sale:

(i)    provision of approximately 10 qualified Supervisors to supervise and assist Company in its conduct of the Sale as further described in Section 2.3 below, including such lead, regional, financial, and field Supervisors as needed (after consultation with Company and Lender Agent) to assist Company in conducting the Sale and oversee the Sale process.  All Supervisors shall have industry-specific experience conducting "Total Inventory Blowout", "Everything on Sale", or, to the extent not prohibited under the Underlying Store Lease, or by applicable state or local law,  "Store Closing", or similarly themed sales and shall act in a professional manner; provided that the determination of the number of Supervisors supplied for the Sale shall be determined jointly by the Company and the Consultant;

(ii)    provide the Company with such oversight, supervision and guidance with respect to the conduct of the Sale and the liquidation and disposal of the Merchandise and FF&E from the Closing Locations as may be required to maximize Gross Sales;

(iv)    recommend and implement appropriate point of purchase, point of sale and external advertising to effectively sell the Merchandise during the Sale Term, consistent with the theme of the Sale and the Sale Guidelines, it being understood that the Sale will be advertised as a "Total Inventory Blowout", "Store Closing" (subject to the provisions of Underlying Store

Lease(s) and applicable state and local law), "Everything on Sale" or similar handles throughout the term of the Sale, subject to applicable restrictions as may appear in any affected Underlying Store Lease or under applicable state and local law. Consultant will work with the Company and its landlords, as directed by the Company, during the Sale Term concerning the conduct of the Sale and with respect to any restrictions as may appear in the Underlying Store Leases affecting the conduct of the Sale;

(v)     advise the Company as to appropriate discounting of Merchandise, appropriate staffing levels for the Closing Locations, and appropriate deferred compensation and incentive programs for Store Employees;

(vi)    oversee the display of Merchandise in the Stores;

(vii)   assist Company in the formulation and implementation of a loss prevention security program designed to protect the Merchandise from theft or other shortages;

(viii)  assist Company with accounting functions for the Stores, including evaluation of sales of Merchandise by category, sales reporting and monitoring of expenses, in each case using Company's infrastructure;

(ix)    recommend and implement the transfer and balancing of Merchandise between and among the Closing Locations to maximize results during the Sale;

(x)     participate in weekly calls with representatives of the Company and Lender Agent; and

(x)     provide such other related services deemed necessary or prudent by the Company (in consultation with Lender Agent) and the Consultant under the circumstances giving rise to the Sale.

2.3     (a)     In connection with the Sale, Consultant shall directly or indirectly retain and engage the Supervisors. The Supervisors are engaged by Consultant and are not and shall not be deemed to be employees or agents of Company in any manner whatsoever; nor do the Supervisors have any relationship with Company by virtue of this Agreement or otherwise which creates any liability or responsibility on behalf of Company for the Supervisors. During the Sale Term, the Supervisors shall perform Services during normal Closing Location operating hours and for the period of time prior to the Closing Locations' opening and subsequent to the Closing Locations' closing, as required in connection with the Sale, in Consultant's discretion.

(b)     In consideration of Consultant's engagement of the Supervisors, Company agrees to reimburse Consultant, as a Sale Expense, for the actual Supervisor Costs paid by Consultant for services rendered by the Supervisors during the Sale Term. In connection with Consultant's conduct of the Sale and its engagement of the Supervisors in connection therewith, not later than two (2) business days following the parties' execution and delivery of this Agreement Consultant shall furnish Company with a copy of Consultant's proposed deferred compensation plan for the Supervisors. Company shall reimburse Consultant for all Supervisor Costs weekly, based upon invoices or other documentation reasonably satisfactory to Company (in consultation with the Lender Agent). Company shall not be obligated to pay Supervisor

Costs and/or Supervisor deferred compensation that have not been included in, or provided for, in the Budget.

2.4     Title to all Merchandise shall remain with Company at all times during the Sale Term until such Merchandise is sold.  Although Consultant shall undertake its obligations under this Agreement in a manner designed to achieve the desired results of the Sale and to maximize the benefits to Company, Company expressly acknowledges that Consultant is not guaranteeing the results of the Sale or insuring the Merchandise.  All sales of Merchandise in the Closing Locations shall be made on behalf of Company. Company further agrees that responsibility for the handling of any goods, inventory or other merchandise held by Company and located in the Closing Locations under any consignment, sale or return, or other similar agreement shall lie exclusively with Company, and Consultant shall have no responsibility with respect thereto.

**3.     <u>Expenses; Consultant's Fees</u>**

3.1     <u>Sale Expenses</u>. The Company, the Consultant and the Lender Agent have agreed on a pro forma budget relating to the Sale describing in reasonable detail its projected Sale Expenses (the "<u>Budget</u>") in the form and content annexed hereto and made a part hereof as <u>Exhibit 2</u> (which Budget shall only be modified by mutual agreement of the Company, the Consultant and the Lender Agent) which Budget is based on the due diligence information provided to the Consultant by the Company.  The parties shall agree to modify the Budget to reflect any errors in the due diligence information provided.  In connection with the Sale and subject to the limitations set forth in the Budget, the Company shall be responsible for the payment of all expenses incurred in connection with the Sale, including without limitation all Sale Expenses (and Consultant shall not be responsible for any such expenses or Sale Expenses except as expressly provided for in Section 9.1 below).  Consultant Incurred Expenses shall not exceed the aggregate amount for each category of Consultant Incurred Expenses set forth on the Budget without the prior written consent of the Company and Lender Agent.  The Company shall reimburse Consultant for any reasonable and documented Consultant Incurred Expense on a weekly basis in connection with the weekly Sale reconciliation provided for in Section 4.1 hereof upon presentation of invoices and statements for such expenses, which reimbursement or payment shall be in addition to any Base Consulting Fee, any Additional Incentive Compensation (if any), and/or FF&E Fee (each as defined below) earned and payable hereunder.

Concurrently with the execution hereof, the Company shall fund to Consultant forty thousand dollars ($40,000) (the "Prepayment") which shall be held by Consultant until the Final Settlement (and the Company shall not apply the Prepayment to, or otherwise offset any portion of the Prepayment against, any weekly reimbursement, payment of Expenses or other amount owing to Consultant under the Agreement prior  to the Final Settlement).  Without limiting any of Consultant's other rights, Consultant may apply the Prepayment to any unpaid obligation owing by the Company to Consultant under the Agreement. Any portion of the Prepayment not used to pay amounts explicitly contemplated by the Consulting Agreement shall be returned to the Company within three days following the Final Settlement.

3.2     <u>Consultant's Compensation</u>.

(a)     Base Consulting Fee. In consideration of Consultant's provision of the Services provided for hereunder, Company shall pay to Consultant, from Gross Sales, a Consulting Fee in an amount equal to one percent (1%) of the Gross Sales at all of the Closing Locations based upon Gross Rings (the "Base Consulting Fee") .

(b)     Additional Incentive Compensation:  In addition to the Base Consulting Fee, the Company shall pay to Consultant, an additional fee in an amount equal to one-half of one percent (0.5%) on all  Gross Sales at all of the Closing Locations from the Sale Commencement Date based upon Gross Rings (the "Additional Incentive Compensation") to the extent that the Gross Retail Recovery Percentage achieved during the Sale is equal to or greater than  sixty-four percent (64.0%) ("Gross Retail Recovery Threshold").

(c)     For purposes of calculating Gross Sales, the Company shall keep (i) a strict count of gross register receipts less applicable sales taxes, and (ii) cash reports of sales within each Closing Location ("Gross Rings").  Register receipts shall show for each item sold the Retail Value (as reflected on Company's books and records) for such item, and the markdown or other discount granted by Consultant in connection with such sale . The Company shall make all such records and reports available to Consultant and the Lender Agent during regular business hours upon reasonable notice.

3.3     Fixtures Disposition.  (a)  In addition to the consulting Services provided for herein with respect to the sale of Merchandise, with respect to furniture, fixtures and equipment owned by Company and located at the Stores (collectively, the "FF&E"), Consultant shall sell the FF&E in the Closing Locations for Company's benefit. Consultant shall advertise in the context of advertising for the Sale that items of FF&E at Closing Locations are available for sale, and shall contact and solicit known purchasers and dealers of furniture and trade fixtures.  In consideration of providing such services, Consultant shall retain seventeen and one-half percent (17.5%) of the gross receipts (net only of applicable sales taxes and budgeted sale expenses, if any, established by mutual agreement of the Company, the Consultant and the Lender Agent) from all sales or other dispositions of FF&E (the "FF&E Fee").  In addition, Company shall reimburse Consultant for Consultant's reasonable and documented out–of–pocket expenses incurred in connection with the sale or other disposition of the FF&E pursuant to a budget established by mutual agreement of the Company, the Consultant and the Lender Agent (the "FF&E Budget").

(b)     Consultant shall have no liability to Company or any third party for its failure to sell any or all of the FF&E, and shall have the right, in consultation with the Company and the Lender Agent, to abandon such unsold FF&E at the Closing Locations on the applicable Sale Termination Date, provided that such abandonment shall be done in a neat and orderly fashion.

# 4.     Sale Proceeds; Weekly Settlement

4.1     The Company shall collect all proceeds of from the sale of Merchandise and FF&E (including all Gross Sales) and deposit the same in deposit accounts established by Company for the deposit thereof consistent with Company's existing cash management system (which may be Company's existing Store-level deposit accounts) (the "Sale Accounts"). The Company shall, upon request, deliver to Consultant and Lender Agent account statements and

such other information relating sale of Merchandise and FF&E (including the Gross Sales and the Sale Accounts) reasonably requested by Consultant or Lender Agent.  On Wednesday of each week, commencing on the first Wednesday following the Sale Commencement Date, the Company (in consultation with the Lender Agent) and the Consultant shall reconcile the results of the Sale for the prior week, including, without limitation, Gross Sales, sales of FF&E, Sale Expenses, FF&E sale-related expenses, and all fees payable hereunder including the Base Consulting Fee, the Additional Incentive Compensation, if any, and the FF&E Fee, Company shall promptly pay all amounts due to Consultant for the previous week (subject to the limitations set forth in the Budget and the FF&E Budget).

4.2     No later than seven (7) business days following the end of the Sale Term, the Company (in consultation with the Lender Agent) and the Consultant shall complete a Final Settlement and settlement of all amounts contemplated by this Agreement ("Final Settlement"), including, without limitation, the determination and payment of any further fees due Consultant and all reimbursements and payments contemplated hereby (subject to the limitations set forth in the Budget and the FF&E Budget).

## 5.     Closing Location Employees

5.1     The Company and the Consultant shall cooperate to retain the employees of the Company, as designated by Consultant from time-to-time, to be utilized to conduct the Sale at the Stores during the Sale Term.  Such employees shall remain employees of the Company, and Consultant shall have no liability to such employees (including, without limitation, all the Store Employees and any of Company's former employees) of any kind or nature whatsoever, including, without limitation, with respect to severance pay, termination pay, vacation pay, pay in lieu of reasonable notice of termination, WARN Act payments, or any other costs, expenses, obligations, or liabilities arising from Company's or Company's employment of such Store Employees prior to, during, and subsequent to the Sale Term.  Other than advising Company that Consultant no longer desires to utilize the services of any employee in connection with the Sale, Consultant shall not have the right to change the terms of employment of any Store Employees.

## 6.     Representation And Warranties Of Consultant

6.1     Consultant hereby represents, warrants and covenants in favor of Company as follows:

(a)     Consultant has taken all necessary action required to authorize the execution, performance and delivery of this agreement, and to consummate the transactions contemplated hereby.

(b)     Upon execution by the parties hereto, this Agreement is a valid and binding obligation of Consultant enforceable in accordance with its terms.

(c)     No action or proceeding has been instituted or, to Consultant's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

(d)     Consultant will comply with and act in accordance with any and all applicable state and local laws, rules and regulations and other legal obligations of all governmental authorities and the terms/restrictions of the Underlying Store Leases, as directed by the Company.

## 7.     Representations And Warranties Of Company

7.1     Company hereby represents, warrants and covenants in favor of Consultant as follows:

(a)     Company has taken all necessary action required to authorize its execution, performance and delivery of this Agreement, and to consummate the transactions contemplated hereby.

(b)     Upon execution by the parties hereto, this Agreement is a valid and binding obligation of the Company enforceable in accordance with its terms, subject only to any applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally and the availability of equitable remedies.

(c)     No action or proceeding has been instituted or, to Company's knowledge, threatened, affecting the consummation of this Agreement or the transactions contemplated herein.

(d)     Company has maintained its pricing files in the ordinary course of business, and prices charged to the public for goods are the same in all material respects as set forth in such pricing files for the periods indicated therein, and all pricing files, records, and information received by Consultant are true and accurate in all material respects.

## 8.     Affirmative Duties Of Consultant

8.1     To the extent necessary, Consultant shall assist Company in obtaining all required permits and governmental consents required in order to conduct the Sale, and shall ensure that the Sale is conducted in accordance with all applicable laws, regulations and ordinances.

8.2     The Consultant shall indemnify and hold Company and its affiliates, and their respective officers, directors, employees, agents, lenders and independent contractors (collectively, "Company Indemnified Parties"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:

(i)     Consultant's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

(ii)     any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of Company (including, without limitation, any Store Employees) by Consultant or any of Consultant's representatives (including, without limitation, any Supervisor);

(iii)  any claims by any party engaged by Consultant as an employee or independent contractor (including, without limitation, any Supervisor) arising out of such employment or engagement; except where due to the negligence or willful misconduct of Company or Company Indemnified Parties or from a breach of the terms hereof by Company; and

(iv)  the negligence or willful misconduct of Consultant or any of its officers, directors, employees, agents or representatives, or any Supervisor.

## 9.  **Affirmative Duties Of Company**

9.1  Company shall be solely liable for, and shall pay when due (except as provided in this section 9.1) the following:  (i) all Store-level operating expenses, Central Service expenses, and related expenses (including, without limitation, Sale Expenses and FF&E sale-related expenses (subject to the FF&E Budget)), and FF&E expenses in excess of the amounts set forth on the FF&E Budget (unless otherwise agreed to by Company and Lender Agent in writing), which are necessary to conduct, or incurred in the conduct of, the Sale or Company's businesses, including, without limitation, all taxes, costs, expenses, accounts payable and other liabilities relating to the Sale, the Closing Locations, Store Employees, any other agents and representatives of Company, and/or Company's businesses; and (ii) Consultant's fees payable hereunder, including the Base Consulting Fee, any Additional Incentive Compensation (if any), and the FF&E Fee; any FF&E expenses in excess of the aggregate amount set forth on the FF&E Budget.

9.2  Company shall prepare and process all reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities; and Company shall pay the same when due. Consultant shall provide all assistance reasonably required or requested by Company in connection with the preparation and processing of any such reporting forms, certificates, reports and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities.

9.3  Without limiting any other term or provision of this Agreement, during the Sale Term, Company shall provide Consultant, with (i) Central Services; (ii) employees at the Closing Locations necessary or appropriate to implement and conduct the Sale, and (iii) peaceful use and occupancy of, and reasonable access (including reasonable before and after hours access and normal utilities/phone service) to, the Stores and Company's corporate offices for the purpose of preparing for, conducting, and completing the Sale as contemplated hereby.

9.4  The Company and the Consultant shall honor gift cards and merchandise credits at the Closing Locations in accordance with store-level operation procedures to be mutually agreed upon between Company, the Lender Agent, and the Consultant.  No gift cards shall be sold from the Closing Locations during the Sale Term.

9.5  Company shall collect all sales, excise, or gross receipts taxes and shall be solely responsible for reporting and paying the same to the appropriate taxing authorities in accordance

with applicable law; provided that Consultant shall provide all assistance reasonably required or requested by Company in connection with the preparation and processing of any such reports, forms, certificates, and other documentation required in connection with the payment of all applicable taxes to the appropriate taxing authorities.

9.6     During the first thirty (30) days of the Sale Term, the Company and the Consultant shall accept returns of inventory ("Returned Merchandise") sold and delivered to customers prior to the Sale Commencement Date in a manner consistent with Company's customary practices and policies in effect on the Sale Commencement Date.  All customer requests for cash refunds or merchandise credits with regard to sales completed prior to the Sale Commencement Date shall be processed exclusively through Company's point of sale system. All Returned Merchandise, to the extent it is not defective, shall be included as Merchandise.  No returns shall be accepted or allowed following the thirtieth (30th) day of the Sale Term. [ confirm company intends to accept returns for sale term]

9.7     Company shall indemnify and hold the Consultant and its affiliates, and their respective officers, directors, employees, agents and independent contractors (collectively, "Consultant Indemnified Parties"), harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from, or related to:

    (i)     Company's material breach or material failure of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

    (ii)    any failure of Company to pay to its employees any wages, salaries or benefits due to such employees during the Sale Term;

    (iii)   any consumer warranty or products liability claims relating to any Merchandise;

    (iii)   any liability or other claims asserted by customers, any of Company's employees, or any other person against any Consultant Indemnified Party (including, without limitation, claims by employees arising under collective bargaining agreements, worker's compensation or under the WARN Act); except where due to the negligence or willful misconduct of Consultant or from a breach of the terms hereof by Consultant;

    (v)     any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees, agents, or representatives of Consultant (including, without limitation, any Supervisors) by Company or any of Company's employees, agents, or representatives (including, without limitation, any Company employees); and

    (vi)    the negligence or willful misconduct of Company or any of its officers, directors, employees, agents or representatives.

9.8    In the event of a bankruptcy filing against or by the Company, Company, shall, as debtor and debtor in possession, immediately move to assume this agreement under section 365 of the United States Bankruptcy Code. As part of such motion, the Company shall request the United State Bankruptcy Court to approve the typical store closing order allowing the operation and advertising of "Store Closing", and "Total Liquidation" type sales and the use of in-store and exteriors signs and banners without the need to comply with permitting or other requirements required by any applicable state or local laws as well as any applicable landlord restrictions contained in Underlying Store Leases.

## 10.    **Insurance; Risk of Loss**

10.1    Company shall maintain throughout the Sale Term, (i) insurance with respect to the Merchandise at the Stores and any storage facility in amounts and on such terms and conditions as are consistent with Company's ordinary course operations and (ii) casualty and liability insurance policies (including, but not limited to, product liability, comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the operation of the Stores, and shall cause Consultant to be listed as an additional insured with respect to all such policies, and as loss payee for the property insurance. Company shall be responsible for the payment of all deductibles, self-insurance and other amounts payable in connection with any claim asserted under such policies, except for any claims arising directly from the negligence or willful misconduct of Consultant, or its employees, representatives, agents or Supervisors.

10.2    Consultant shall maintain, throughout the Sale Term, liability insurance policies (including, but not limited to, comprehensive general liability and auto liability insurance) covering injuries to persons and property in or in connection with Consultant's provision of Services at the Closing Locations, and shall cause Company to be named an additional insured with respect to such policies.

10.3    Notwithstanding any other provision of this Agreement, the Company and the Consultant agree that Company shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Closing Locations before, during and after the Sale Term, except to the extent any such claim arises from the negligence, willful misconduct, or unlawful acts of the Consultant or any Supervisor engaged by Consultant under the terms of this Agreement.

## 11.    **Miscellaneous**

11.1    Any notice or other communication under this Agreement shall be in writing and may be delivered personally or sent by facsimile or by prepaid registered or certified mail, addressed as follows:

    (i)    In the case of Consultant:

SB360 CAPITAL PARTNERS, LLC
1010 Northern Blvd., Suite 340
Great Neck, NY  11021
Attn:    Robert Raskin
Email: Rraskin@sb360.com

HILCO MERCHANT RESOURCES, LLC
5 Revere Dr., Suite 206
Northbrook, IL  60062
Attn: Ian Fredericks
Email: ifredericks@hilcoglobal.com


(ii)      In the case of Company:

A'GACI, L.L.C.
4958 Stout Drive
San Antonio, TX 78219
Attn:   David Won
            Michelle Rocha
Email: David.Won@AGACIstore.com
            MichelleR@agacistore.com

With copies to:

SIERRACONSTELLATION PARTNERS, LLC
51 Melcher Street, Suite 719
Boston, MA  02210
Attn:   Tom Lynch
            Roger Gorog
            Philip Kaestle
Email: tlynch@scpllc.com
            rgorog@scpllc.com
            pkaestle@scpllc.com

LAW OFFICE OF RAYMOND W. BATTAGLIA
66 Granburg Circle
San Antonio, TX 78218
Attn:   Raymond W. Battaglia
Email: rbattaglialaw@outlook.com

MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP
437 Madison Avenue – 24th Floor
New York, NY 10022
Attn:   Maura I. Russell
Email: mrussell@mmwr.com

and

CHOATE, HALL & STEWART LLP
As Counsel to the Lender Agent
Two International Place
Boston, MA 02110
Attn: John F. Ventola
Email: jventola@choate.com

11.2     Governing Law.  This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Texas, without reference to any conflict of laws provisions.

11.3     Severability.  In the event any term or provision contained within this Agreement shall be deemed illegal or unenforceable, then such offending term or provision shall be considered deleted from this Agreement and the remaining terms shall continue to be in full force and effect.

11.4     Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect of the subject matter hereof and supersedes all prior negotiations and understandings, and can only be modified by a writing signed by the Company (with the consent of the Lender Agent) and the Consultant.

11.5     Assignment.  Neither Company nor Consultant shall assign this Agreement without the express written consent of the other.  This Agreement shall inure to the benefit of, and be binding upon, the parties and their respective successors and permitted assigns.  The Lender Agent and the Lenders shall be third party beneficiaries of this Agreement.

11.6     Counterparts.  This Agreement may be executed in several counterparts, each of which when so executed shall be deemed to be an original and such counterparts, together, shall constitute one and the same instrument.  Delivery by facsimile of this Agreement or an executed counterpart hereof shall be deemed a good and valid execution and delivery hereof or thereof.

11.7     Independent Contractor.  Nothing contained herein shall be deemed to create any relationship between the Company and the Consultant other than that of an independent contractor.  It is stipulated that the parties are not partners or joint venturers.

11.8     Termination.  This Agreement shall terminate upon the completion and approval of the Final Settlement (as provided in Section 4.2 above); provided, however, that either party may terminate this Agreement in the event that the other commits a material breach or material failure of its obligations hereunder.  If either party seeks to terminate this Agreement by reason of a claim of a material breach or material failure, such party shall provide the other party with not less than five (5) days' prior written notice stating with specificity the nature of the claimed material breach or material failure, and the party receiving such notice shall have five (5) business days in which to cure such material breach or material failure, failing which this Agreement shall be deemed terminated.  In the event this Agreement is terminated by Consultant on account of a material breach or material failure by Company, Consultant shall be entitled to

14

be paid any Base Consulting Fee, any Additional Incentive Compensation, and the FF&E Fee earned and accrued through the date of termination, together with reimbursement of any Sale Expenses or FF&E sale-related expenses incurred in conformity with the Budget and FF&E Budget, respectively, through the date of such termination.

11.9   <u>Confidentiality</u>.  All information of a business nature relating to the pricing, sales, promotions, marketing, assets, liabilities or other business affairs of Company, its customers, parent, subsidiary or other affiliated entities (for purposes of this provision, all such entities are included within each reference to "Company") is Company's confidential, trade secret information ("<u>Company Confidential Information</u>"), which is and shall remain the exclusive intellectual property of Company.  Consultant shall not divulge, furnish, make available or in any other manner disclose such information to any third party other than Consultant's officers, employees, representatives and agents.  Consultant shall take and shall cause its officers, employees, representatives and agents to take such action as shall be reasonably necessary or advisable to preserve and protect the confidentiality of Company Confidential Information. Consultant agrees to maintain strict confidentiality and agrees that it may use Company Confidential Information only as reasonably necessary to the performance of its obligations related to the Sale.  Notwithstanding the foregoing, Company hereby agrees that Consultant may identify Company as a Consultant customer for which Consultant has provided services for purposes of promoting its business.

11.10   <u>Force Majeure</u>.  If any casualty or act of God, war, or terrorism prevents or substantially inhibits the conduct of business in the ordinary course at any Closing Location(s), then the subject location(s) and the remaining Merchandise located thereat shall be eliminated from the Sale and considered to be deleted from this Agreement as of the date of such event, and Consultant and shall have no further rights or obligations hereunder with respect thereto; <u>provided</u>, <u>however</u>, that the proceeds of any insurance attributable to Merchandise or proceeds from business interruption insurance shall constitute proceeds of the Sale hereunder for purposes of calculating Gross Sales and the any Additional Incentive Compensation (if any).

**[SIGNATURES APPEAR ON NEXT PAGE]**

IN WITNESS WHEREOF, the Company and the Consultant have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**A'GACI, L.L.C**

By:_____
Name:
Its:


**SB360 CAPITAL PARTNERS, LLC**

By:_____
Name:   Aaron Miller
Its:   EVP


**HILCO MERCHANT RESOURCES, LLC**

By:_____
Name:   Sarah Baker
Its:      VP & AGC, Managing Member

**A'GACI**
Exhibit 1A
Store List

| Store List | | | | | |
|---|---|---|---|---|---|
| **Store #** | **Location** | **Lease Address** | **City** | **State** | **Zip** |
| 112 | Ingram Park Mall | 6301 NW Loop 410, Suite #L11 | San Antonio | Texas | 78238 |
| 168 | Mall De Las Aguilas | 455 Farm-To-Market Rd 375, Suite #108 | Eagle Pass | Texas | 78852 |
| 173 | Sunland Park Mall | 750 Sunland Park Drive, Suite #B-12 | El Paso | Texas | 79912 |
| 177 | Hulen Mall | 4800 S Hulen Street, Suite #2064 | Fort Worth | Texas | 76132 |
| 178 | Willowbrook Mall | 2000 Willowbrook Drive | Houston | Texas | 77070 |
| 186 | North Star Mall | 7400 San Pedro Avenue, Suite #242 | San Antonio | Texas | 78216 |
| 189 | South Park Mall | 2310 SW Military Drive, Suite #224 | San Antonio | Texas | 78224 |
| 191 | Mall Del Norte | 5300 N San Dario Avenue, Suite #164 | Laredo | Texas | 78041 |
| 197 | Rolling Oaks Mall | 6909 N Loop 1604 E, Suite #2081 | San Antonio | Texas | 78247 |
| 198 | Miami International Mall | 1455 NW 107th Avenue, Suite #350B | Miami | Florida | 33172 |
| 199 | Houston Galleria | 5085 Westheimer Road, Suite #940 | Houston | Texas | 77056 |
| 201 | San Marcos Premium Outlets | 3939 S IH 35, Suite #213 | San Marcos | Texas | 78666 |
| 202 | Rio Grande Valley Premium Outlets | 5009 E Expressway 83, Suite #200 | Mercedes | Texas | 78570 |
| 205 | Pearland Town Center | 11200 Broadway Street, Suite #320 | Pearland | Texas | 77584 |
| 206 | Stones River Mall | 1720 Old Fort Parkway, Suite #L180 | Murfreesboro | Tennessee | 37129 |
| 210 | Grapevine Mills | 3000 Grapevine Mills Parkway, Suite #230 | Grapevine | Texas | 76051 |
| 212 | Woodfield Mall | 5 Woodfield Mall, Suite #E312 | Schaumburg | Illinois | 60173 |
| 214 | Dolphin Mall | 11401 NW 12th Street, Suite #454 | Miami | Florida | 33172 |
| 215 | The Shops at Willow Bend | 6121 W Park Boulevard, Suite #A-206 | Plano | Texas | 75093 |
| 216 | Sunrise Mall | 2370 N Expressway, Suite #1038 | Brownsville | Texas | 78521 |
| 217 | Sawgrass Mills | 12801 W Sunrise Boulevard, Suite 827 | Sunrise | Florida | 33323 |
| 218 | Yorktown Shopping Center | 203 Yorktown Shopping Center | Lombard | Illinois | 60148 |
| 220 | Katy Mills Mall | 5000 Katy Mills Circle, Suite #563A | Katy | Texas | 77494 |
| 221 | Florida Mall | 8001 S Orange Blossom Trail, Suite #110 | Orlando | Florida | 32809 |
| 222 | Midland Park Mall | 4511 N Midkiff Road, Suite #B01B | Midland | Texas | 79705 |
| 223 | The Domain | 3220 Amy Donovan Plaza, Suite #104 | Austin | Texas | 78758 |
| 224 | Cielo Vista Mall | 8401 Gateway Boulevard W, Suite #G-11B | El Paso | Texas | 79925 |
| 225 | Barton Creek Square | 2901 S Capital of Texas Highway, Suite #N11-B | Austin | Texas | 78746 |
| 226 | Sunvalley | 250 Sun Valley Mall | Concord | California | 94520 |
| 227 | La Plaza-A'GACI | 2200 S 10th Street, Suite #M08 | McAllen | Texas | 78503 |
| 231 | South Plains Mall | 6002 Slide Road, Suite #D-02 | Lubbock | Texas | 79414 |
| 232 | The Avenues | 10300 Southside Boulevard, Suite #1070A | Jacksonville | Florida | 32256 |
| 233 | Mall of America | 60 E Broadway, Suite #E248 | Bloomington | Minnesota | 55425 |
| 234 | Deerbrook Mall | 20131 Highway 59 N, Suite #2240 | Humble | Texas | 77338 |
| 239 | Outlets at the Border | 4463 Camino De La Plaza, Suite #200 | San Diego | California | 92173 |
| 241 | Gran Plaza Outlets | 888 W 2nd Street, Building C Suite #100 | Calexico | California | 92231 |
| 242 | Citrus Park Mall | 8021 Citrus Park Town Center, Suite #7833 | Tampa | Florida | 33625 |
| 245 | CoolSprings Galleria | 1800 Galleria Boulevard, Suite #5050 | Franklin | Tennessee | 37067 |
| 246 | Broadway Square | 4601 S Broadway Avenue, Suite #F21A | Tyler | Texas | 75703 |
| 247 | Killeen Mall | 2100 S W.S. Young Drive, Suite #1164 | Killeen | Texas | 76543 |
| 248 | Plaza Del Norte | PR 2 & PR 493, Suite #B126 | Hatillo | Puerto Rico | 00659 |
| 249 | Del Amo | 21540 Hawthorne Blvd | Torrance | California | 90503 |
| 250 | Brandon | 856 Brandon Town Center Mall | Brandon | Florida | 33511 |
| 257 | Plaza Las Americas | 525 Av. Franklin Delano Roosevelt | San Juan | Puerto Rico | 918 |
| 259 | Plaza Del Caribe | 2050 Ponce Bypass | Ponce | Puerto Rico | 717 |
| 260 | Galleria at Sunset | 1300 W Sunset Rd | Henderson | Nevada | 89014 |
| 261 | The Parks at Arlington | 3811 S Cooper Street, Suite #1042 | Arlington | Texas | 76015 |
| 262 | West Oaks Mall | 1000 West Oaks Mall, Suite #204 | Houston | Texas | 77082 |
| 263 | Town East Mall | 2004 Town East Mall, Suite#2148 | Mesquite | Texas | 75150 |
| 266 | Lakeline | 11200 Lakeline Mall Drive | Cedar Park | Texas | 78613 |
| 268 | Town Square Las Vegas | 6543 Las Vegas Blvd. S Space C-128 | Las Vegas | Nevada | 89119 |
| 270 | Coral Square | 9505 West Atlantic Blvd. | Coral Springs | Florida | 33071 |
| 272 | Memorial Mall | 303 Memorial City Suite #809 | Houston | Texas | 77024 |
| 273 | Westshore Plaza | 250 Westshore Plaza, Space # C-10 | Tampa | Florida | 33609 |
| **Store Count** | | 54 | | | |

**A'GACI**

Exhibit 1B

DC List

DC List

| Location | Lease Address | City | State | Zip |
|---|---|---|---|---|
| San Antonio Corp HQ and DC | 4958 Stout Drive | San Antonio | Texas | 78219 |
| **DC Count** | | **1** | | |

**A'GACI**

Consultant Expense Budget

Exhibit E

| Supervision Expense | | |
|---|---|---|
| **Title** | **# of Personnel** | **Total Supervision Expense[1]** |
| Store Supervisors | 8 | $218,176 |
| Operations Lead | 1 | $30,754 |
| F&A | 1 | $30,754 |
| **Total** | **10** | **$279,684** |

| Advertising Expense | |
|---|---|
| **Type of Advertisement** | **Total Advertising Expense** |
| Interior Signs | $124,883 |
| Social Media | $50,000 |
| **Total** | **$174,883** |

| Other Expense | |
|---|---|
| **Type of Expenses** | **Total Other Expense** |
| Legal | $5,000 |
| Corporate Travel | $15,000 |
| **Total** | **$20,000** |

Notes:

1. Assumes a standard industry rate of 50%.

2. The expense budget contemplates a sale term of August 01, 2019 through August 31, 2019. The Expense Budget remains subject to modification in the event that this term is extended, or as otherwise agreed to by the parties.

3. Any legal expenses associated with issues raised by or disputes with landlords, including (without limitation) negotiations in respect of landlord side letters, or a Bankruptcy Proceeding, or any legal proceedings, shall be in addition to and not part of the budgeted legal expenses.

4. Company made direct payment for signage of $114,016.95 which will be off-set against the budgeted amount.

# EXHIBIT 2

## STORE CLOSING PROCEDURES[a]

1.      Subject to the applicable Store Closing Laws and the subject Underlying Store Leases, the Company and/or the Consultant shall advertise the sale as a "Total Inventory Blowout", "Everything On Sale" or, to the extent not prohibited under the applicable Underlying Store Lease, applicable federal, state and local laws and regulations (the "Store Closing Laws"), as a "Store Closing", or similar themed sale (the "Sale").  The Sale shall not be promoted as "going out of business".

2.      To the extent permitted by the Store Closing Laws, the Sale shall be conducted so that the Stores remain open during the normal hours of operation provided for in the respective leases for the Stores.  Company and/or Consultant shall not conduct an auction or fire sale and shall abide by mall hours and all mall guidelines concerning, among other things, maintenance, security, and trash removal.

3.      Subject to the applicable Store Closing Laws and the subject Underlying Store Leases, the Sale shall be conducted in accordance with applicable state and local "Blue Laws," and thus, where applicable, no Sales shall be conducted on a Sunday.

4.      Subject to the applicable Store Closing Laws and the subject Underlying Store Leases, the Company and/or the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Store's premises (such as parking lots or other retail locations within the same mall or center), except as permitted by the lease, previously permitted by the landlord or the mall management, or agreed to by the landlord, but may solicit customers in the Stores themselves.  Company and/or Consultant shall not use flashing lights or any type of amplified sound to advertise the Sale or solicit customers, except as permitted by the lease or agreed to by the landlord.

5.      At the conclusion of the Sale, Consultant shall vacate the Stores in "broom-clean" condition (with any unsold FF&E abandoned neatly in place), and shall leave the Stores in the same condition as on the commencement of the Sale, ordinary wear and tear excepted; <u>provided however</u> that Company does not undertake any greater obligation than that set forth in an applicable lease with respect to a Store.  Subject to the applicable Store Closing Laws and the subject Underlying Store Leases, Company and/or the Consultant may sell FF&E owned by Company and located in the Stores during the Sale.  Company or the Consultant, as the case may be, may advertise the sale of FF&E.   At the Additionally, the purchasers of any FF&E sold during the Sale shall only be permitted to remove the FF&E either through the back shipping areas or through other areas of the store after store business hours.

6.      All display and hanging signs used by the Consultant in connection with Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. The Consultant shall not use neon or day-glo signs.  Subject to the applicable Store Closing

---

[1]      Capitalized terms not otherwise defined herein shall have the meaning ascribed thereto in the Consulting Agreement.

Laws and the subject Underlying Store Leases, Consultant shall be permitted to use interior banners in all of the Stores, and exterior banners at non-enclosed mall stores; provided, however, that such banners shall be located or hung so as to make clear that the Sale is being conducted only at the Store and shall not be wider than the storefront of the Store.  Consultant shall not advertise or market the Sale as a "going out of business" sale.

7.      Neither the Company nor the Consultant shall make any alterations to the storefront or exterior walls of any of the Stores (including the removal of store signs) (the posting of signs, as provided herein, shall not be deemed an alteration).

8.      The Company and/or Consultant shall keep the Store premises and the surrounding area clear and orderly consistent with present practices.

9.      The landlords of the Stores shall have reasonable access to the Store premises upon conclusion of the Sale solely for the purpose of dressing Store windows to minimize the appearance of a dark store.

10.     No property of any landlord of a Store shall be removed or sold during the Sale.

11.     The Company and/or the Consultant shall only utilize existing furniture, fixtures and equipment to conduct the Sale, unless a landlord otherwise consents.

12.     The Company and/or Consultant shall designate a party to be contacted by landlords should an issue arise concerning the conduct of the Sale.

13.     All state and federal laws relating to implied warranties of compatibility and the sale of merchandise containing Latent Defects (as defined in this paragraph) shall be complied with and are in no way superceded by Company's sale of said goods using such words or phrases as "as is" or "final sales ".

14.     During the Sale Term, the Consultant shall accept return of any Merchandise, whether purchased prior to or during the Sale Term, that contains a defect which the lay consumer could not reasonably determine was defective by visual inspection of the merchandise at the store prior to purchase (a "Latent Defect") for a full refund; provided that, (a) the consumer must return the merchandise within 30 days of the consumer's purchase, (b) the consumer must provide the receipt, and (c) the asserted defect must in fact be a Latent Defect.

15.     The Company's gift certificates and store credits shall be accepted at the Sale.

16.     No warranties will be offered to consumers during the Store Closing Sale.

17.     No Merchandise will be advertised, offered or sold to a consumer for more than the everyday "selling price" previously offered by the Company prior to the start of the store closing sales.

18.     The Company shall not transfer or sell to any Consultant or any other party any

consumer database information, including but not limited to consumer names, addresses, social security numbers, birth dates and/or credit card information ("Private Customer Data") to the extent not permitted by the Company's privacy policy and state or federal privacy and/or identify theft laws, regulations and rules (collectively, the "Applicable Privacy Laws"). If any consumer information is transferred to the Consultant by the Company, such information may be used by Consultant only in connection with the promotion and conduct of the Sale. Company shall require Consultant and all of Agency's employees or independent contractors, to take all reasonable steps to maintain the confidentiality of that information. Without limiting the scope of this section, the Company specifically agrees at the conclusion of the Store Closing Sale *to*: "wipe clean", so as to be non-recoverable, any and all data stored on any computers to be provided to the Liquidating Consultant and to obtain, in writing, verification that the Consultant has not to removed or otherwise benefited from the removal or transfer of any Private Customer Data and to provide confirmation of compliance with this paragraph to any State within 10 days of the State's request for such information.

## Schedule 2

## Sale Guidelines

1.      The Sales shall be conducted so that the Stores in which sales are to occur will remain open no longer than during the normal hours of operation provided for in the respective leases for the Stores.

2.      The Sales shall be conducted in accordance with applicable state and local "Blue Laws", where applicable, so that no Sales shall be conducted on Sunday unless the Merchant had been operating such Store on a Sunday.

3.      On "shopping center" property, Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Stores' premises, unless permitted by the lease or, if distribution is customary in the "shopping center" in which such Store is located; *provided* that Consultant may solicit customers in the Stores themselves. On "shopping center" property, Consultant shall not use any flashing lights or amplified sound to advertise the Sales or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

4.      At the conclusion of the Sales, Consultant shall vacate the Stores in broom clean condition, and shall leave the Stores in the same condition as on Sale Commencement Date, ordinary wear and tear excepted, in accordance with Section 2 of the Consulting Agreement; provided, however, that the Merchant and the Consultant hereby do not undertake any greater obligation than as set forth in an applicable lease with respect to a Store.  The Consultant and Merchant may abandon any furniture, fixtures and equipment (including, but not limited to, machinery, rolling stock, office equipment and personal property, and conveyor systems and racking) ("FF&E") not sold in the Sale at the Store Sales at the conclusion of the Sale. Sales, without cost or liability of any kind to Consultant. The Consultant shall notify the Merchant of its intention to abandon any FF&E at least two (2) days prior to the Termination Date. The Merchant will have the option to remove the FF&E, at its own cost prior to the termination date. Any abandoned FF&E left in a Store, Distribution Center or CO after a lease is rejected shall be deemed abandoned. Following abandonment, any person asserting rights, liens, claims, encumbrances, and/or interests (including, without limitation, the landlords) in the FF&E under non-bankruptcy law may freely exercise such rights, liens, claims, encumbrances, and/or interests in the FF&E, without further notice or order from the Court, without any liability to the Debtor, and without waiver of any claim such person may have against the Merchant. For the avoidance of doubt, as of the Sale Termination Date or the Vacate Date, as applicable, Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E located at a Store.

5.      Consultant may advertise the Sales as a "going out of business", "store closing", "sale on everything", "everything must go", "everything on sale" or similar-themed sale. All signs,

---

[1] Capitalized terms used but not defined in these Sale Guidelines shall have the meanings given to them in the Motion or Consulting Agreement as appropriate.

banners, ads and other advertising collateral, promotions, and campaigns will be approved by the Merchant, prior to purchase.

6.      Consultant shall be permitted to utilize display, hanging signs, and interior banners in connection with the Sales; *provided* that such display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner. The Merchant and Consultant shall not use neon or day-glo on its display, hanging signs, or interior banners. Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Sale Guidelines. In addition, the Merchant and Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall Stores and (ii) enclosed mall Stores to the extent the entrance to the applicable Store does not require entry into the enclosed mall common area; provided, however, that such banners shall be located or hung so as to make clear that the Sales are being conducted only at the affected Store, shall not be wider than the storefront of the Store, and shall not be larger than 4 feet x 40 feet. In addition, the Merchant and Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Approval Order. Nothing contained in these Sale Guidelines shall be construed to create or impose upon Consultant any additional restrictions not contained in the applicable lease agreement.

7.      Conspicuous signs shall be posted in the cash register areas of each of the affected Stores to effect that "all sales are final."

8.      Except with respect to the hanging of exterior banners, Consultant shall not make any alterations to the storefront or exterior walls of any Stores.

9.      Consultant shall not make any alterations to interior or exterior Store lighting. No property of the landlord of a Store shall be removed or sold during the Sales. The hanging of exterior banners or in-Store signage and banners shall not constitute an alteration to a Store.

10.     Consultant shall keep Store premises and surrounding areas clear and orderly consistent with present practices.

11.     Subject to the provisions of the Agreement, Consultant shall have the right to sell all Owned FF&E, approved by the Merchant. Consultant may advertise the sale of the Owned FF&E in a manner consistent with these guidelines. The purchasers of any Owned FF&E sold during the sale shall be permitted to remove the Owned FF&E either through the back shipping areas at any time, or through other areas after applicable business hours. For the avoidance of doubt, as of the Sale Termination Date or the Vacate Date, as applicable, Consultant may abandon, in place and without further responsibility, any FF&E.

12.     At the conclusion of the Sales at each Store, pending assumption or rejection of applicable leases, the landlords of the Stores shall have reasonable access to the Stores' premises as set forth in the applicable leases. The Merchant, Consultant and their agents and representatives shall continue to have access to the Stores as provided for in the Agreement.

13.    Rent that becomes due post-petition  shall be paid by the Merchant as required by the Bankruptcy Code until the rejection or assumption and assignment of each lease. Consultant shall have no responsibility to the landlords therefor.

14.    The rights of landlords against Merchant for any damages to a Store shall be reserved in accordance with the provisions of the applicable lease.

15.    If and to the extent that the landlord of any Store affected hereby contends that Consultant or Merchant is in breach of or default under these Sale Guidelines, such landlord shall email or deliver written notice by overnight delivery on the Merchant and Consultant as follows:

        If to Consultant:

        SB360 Capital Partners
        1010 Northern Blvd
        Great Neck, NY  11021
        Attn:  Robert Raskin

        If to Merchant:

        A'GACI, L.L.C.
        4958 Stout Drive
        San Antonio, Texas 78219
        Attn: David Won

        with copies (which shall not constitute notice) to:

        ERIC TERRY LAW, PLLC
        3511 Broadway
        San Antonio, Texas 78209
        Attn:  Eric Terry