IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO.   19-51919-RBK |
| A'GACI, L.L.C., | § | |
| | § | CHAPTER 11 |
| Debtor | § | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 105
AND 363 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE SALE OF
CERTAIN INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS AND
<u>(II) GRANTING RELATED RELIEF</u>**

The above-captioned debtor and debtor in possession, the "<u>Debtor</u>") in this chapter 11 case hereby submits this motion (this "<u>Motion</u>") for the entry of an order (the "<u>Order</u>"), substantially in the form of order filed with this Motion, pursuant to sections 105(a) and 363 of title 11 of the Bankruptcy Code and rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure  (the "<u>Bankruptcy  Rules</u>"), (i) authorizing the sale (the "<u>Sale</u>") of certain intellectual property (the "<u>Intellectual Property</u>"), on an "as is, where is" basis, free and clear of all liens, claims, encumbrances, and interests, to the entity or entities (each, a "<u>Purchaser</u>") that submit the highest or otherwise best offer for the Intellectual Property as determined by the Debtor in its business judgment pursuant to the solicitation and auction process described below and (ii) granting related relief. In support of this Motion, the Debtor respectfully represents as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      The United States Bankruptcy Court for the Western District of Texas (the "<u>Court</u>") has jurisdiction over this chapter 11 case, the Debtor, property of the Debtor's estate and this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code, along with Bankruptcy Rules 2002, 6004, and 9014.

## BACKGROUND

### I. The Store Closing Sales.

4. The Debtor commenced this chapter 11 case once it concluded that the alternative sources of financing on which they were working were no longer viable. Accordingly, the Debtor determined that the best way to maximize value for the benefit of all interested parties was a prompt and orderly wind-down of its business through the implementation of store-closing sales (collectively, the "Store Closing Sales") and related liquidation initiatives. The conclusion to liquidate was reached following a lengthy process in which the Debtors considered and explored all reasonable strategic alternatives.

### II. The Sale of Intellectual Property.

5. In connection with their retail operations, the Debtor has developed and utilized the Intellectual Property, which consists of trademarks, domain names, including agacistore.com, and social media assets.

6. As referenced above, the Debtor commenced the store closing sales at all of its retail locations on or about August 8, 2019. The Debtor ceased selling inventory on its websites shortly before the Petition Date and currently does not intend to restart online sales. Nevertheless, the Debtor continues to maintain an online presence.

7. On August 19, 2019, the Debtor entered into an agreement with Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank") to market and sell the Debtor's Intellectual Property assets. Since that time, Hilco Streambank, with the assistance and oversight of the

Debtor's management and advisors, has been actively engaged in the process of marketing the Debtor's Intellectual Property assets for sale. After consultation with Hilco Streambank and its other advisors, the Debtor has determined that in order to maximize value, the Sale of its Intellectual Property needs to occur on an expedited timeline.

8.      Although the Debtor is no longer selling merchandise online, the Debtor believes that to maximize the value of the Debtor's Intellectual Property, it is in the best interest of the Debtor and parties in interest to sell the Intellectual Property while the Debtor still maintains an online presence. By contrast, the Debtor and its advisors believe that if the Debtor was to conduct the Sale process while not maintaining the e-commerce site, the Sale process would not realize the maximum value for that Intellectual Property. Finally, the Debtor anticipates that the Store Closing Sales will be completed on or before August 31, 2019, at which point many of the Debtor's employees will no longer be with the company. Thus, the Debtor must immediately commence the Sale process with respect to the Intellectual Property to ensure that name recognition in the marketplace remains.

9.      Accordingly, the Debtor believes it is prudent at this time and in the best interests of its estate and creditors to implement the sale procedures (the "Sale Procedures") summarized below and, accordingly, intend to employ the Sale Procedures prior to a hearing on this Motion.

**III.    The Proposed Sale Procedures.**

10.      The Debtor proposes to sell the Intellectual Property assets either in whole or part through one or more sale transactions pursuant to the terms of a purchase agreement (or agreements) or bill of sale and assignment documents to be negotiated by and between the Debtor and proposed purchaser(s) and executed  upon completion of one or more auctions for the Intellectual Property (each, an "Auction").  In conjunction with the Auction(s), the

Debtor proposes to implement the Sale Procedures described below in an effort to maximize the realizable value of the Intellectual Property for the benefit of the Debtor's estate, creditors, and other interested parties. The Sale Procedures contemplate an Auction process pursuant to which bids for the Intellectual Property will be subject to higher or better offers. The Debtor is not seeking approval of Court-sanctioned bidding procedures in advance but, rather, proposes conducting the Auction(s) in connection with the proposed Sale Procedures prior to the hearing on this Motion (the "Sale Hearing"), so as to derive maximum value for such assets. The Debtor will present evidence with respect to the sale process and the winning bid(s) at the Sale Hearing.[1] As described more fully below, only bidders who timely submit Qualified Bids (as defined below) may be eligible to participate in the Auction(s).

11. Specifically, the Debtor will implement the following Sale Procedures, on substantially the terms set forth below, for the Sale of the Intellectual Property and conduct the Auction(s) in accordance therewith:

a) **Bid Deadline. September 23, 2019, at 12:00 p.m. (prevailing Central Standard Time).[2]**

b) Qualified Bid. The Debtor will require a qualified bid (a "Qualified Bid") to meet the following requirements: (i) enclose an assignment agreement and related documents that specifically identifies the Intellectual Property proposed to be purchased, which may be all or a portion of the Intellectual Property, and the proposed consideration (ii) confirm that the offer shall remain open and irrevocable until the closing of a Sale to the Successful Bidder or the Next Highest Bidder (as defined herein); (iii) be accompanied by a certified or bank check or wire transfer in an amount equal to 10 percent of the purchase price identified in the Purchase Agreement as a minimum good-faith deposit (the "Minimum Deposit"), which Minimum Deposit

---

[1] In the event that the Debtors do secure a binding stalking horse agreement at any time during the sale process, the Debtors will, in consultation with the Committee, promptly seek Court approval of appropriate bid protections and advise all interested parties of the terms of such stalking horse bid, appropriate bid protections and advise all interested parties of the terms of such stalking horse bid.

[2] Interested parties wishing to bid on the Intellectual Property should contact David Peress (dperess@hilcoglobal.com) and Richelle Kalnit (rkalnit@hilcoglobal.com) at Hilco Streambank.

shall be used to fund a portion of the purchase price provided for in the bid; (iv) not be conditioned on obtaining financing or the outcome of any due diligence by the bidder; and (v) fully disclose the identity of each entity that will be bidding for the Intellectual Property or otherwise participating in connection with such bid, and the complete terms of any such participation.

c) <u>Auction(s)</u>. If the Debtor receives more than one Qualified Bid for the Intellectual Property (or certain subset of the Intellectual Property), the Auction(s) with respect to the Sale will through a telephone conference (notice to be separately provided) on **September 24, 2019**, at 10:00 a.m. (prevailing Central Time), or such later time and place as the Debtor may provide so long as such change is communicated reasonably in advance by the Debtor to all bidders, and other invitees.

d) <u>Auction Rules</u>. If one or more Auctions are held, the following rules for the Auction's conduct will be observed: (i) only a bidder who has submitted a Qualified Bid by the Bid Deadline (a "<u>Qualified Bidder</u>") will be eligible to participate at the Auction; (ii) a minimum Qualified Bid amount for the Intellectual Property may be announced and/or posted prior to the Auction. Such minimum Qualified Bid amounts may be established based upon a variety of factors, including, but not limited to, the highest bids received prior to the Auction; (iii) at the Auction, Qualified Bidders will be permitted to increase their bids, and bidding at the Auction will continue until such time as the highest or otherwise best offer is determined in accordance with these Sale Procedures or until such Auction is adjourned by the Debtors. Reasonable notice of the time and place for the resumption of the Auction will be given to all Qualified Bidders and counsel to any statutory committee appointed in these chapter 11 cases;

e) immediately prior to concluding the Auction, the Debtor shall review each Qualified Bid on the basis of its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Debtor's estates and creditors; (b) determine and identify the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Successful Bidder</u>"); (c) determine and identify the next highest or otherwise best Qualified Bid after the Successful Bid (the "<u>Next Highest Bid</u>") and the Qualified Bidder submitting such bid (the "<u>Next Highest Bidder</u>"); and (d) have the right to reject any and all bids; and (e) within one business day of the completion of the Auction, the Successful Bidder shall complete and execute all agreements, instruments, or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

f) <u>Acceptance of Successful Bid</u>. If an Auction is held, the Debtor shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid on the record at the Auction and (ii) definitive

documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Court of the Successful Bid and the entry of an Order approving the Sale and such Successful Bid.

g) <u>Notice of Successful Bid(s)</u>. As soon as reasonably practicable following the conclusion of the Auction(s), the Debtor shall file a Notice of Successful Bid(s). The Notice of Successful Bid(s) shall identify the identity of the Successful Bidder(s), the amount of the Successful Bid(s), and shall include a substantially final version of the Purchase Agreement.

h) <u>Sale Hearing</u>. **September 25, 2019 at 9:00 a.m. (prevailing Central Standard Time) or at another time set by this Court. Regardless, the sale hearing date and time shall be separately noticed.**

(i) <u>Reservation of Rights</u>. The Debtor reserves the right to seek approval of the Sale of portions of the Intellectual Property through separate Purchase Agreements with different purchasers in the event that the combination of such Sales is determined by the Debtor to obtain the highest value for the Intellectual Property. The Debtor further reserves the right as it may reasonably determine to be in the best interests of its estate to: determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or otherwise best proposal and which is the next highest or otherwise best proposal, (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Sale Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtor and its estate; (v) remove some or all of the Intellectual Property from the Auction(s); (vi) enter into one or more stalking horse agreements; (vii) waive terms and conditions set forth in these Sale Procedures with respect to all potential bidders; (viii) impose additional terms and conditions with respect to all potential bidders; (ix) extend the deadlines set forth herein; (x) adjourn or cancel the Auction(s) and/or Sale Hearing in open court without further notice; and (xi) modify the Sale Procedures as they may determine to be in the best interests of their estates or to withdraw this Motion at any time with or without prejudice.

(ii) <u>Closing</u>. The Debtor anticipates closing the sale of the Intellectual Property no later than September 30, 2019.

12. The Debtor believes that the process contemplated hereby will foster a competitive bidding atmosphere that will generate significant value for its estate.

**<u>RELIEF REQUESTED</u>**

13. By this Motion, the Debtor seeks entry of an order (i) authorizing the Sale of the

Debtors' Intellectual Property free and clear of liens, claims, encumbrances, and interests, pursuant to one or more Purchase Agreements executed by and between the Debtors and the Purchaser(s) and (ii) granting related relief.

## **BASIS FOR RELIEF REQUESTED**

14. For the reasons explained below and throughout this Motion, the Debtor's decision to sell the Intellectual Property is a sound exercise of the Debtor's business judgment. Indeed, the Debtor is confident that the aforementioned process will generate the highest value for the Intellectual Property because (a) the Debtor and Hilco Streambank are actively marketing, and will continue to market, the Intellectual Property to all known and likely potential purchasers, (b) the Auction(s) will foster a competitive bidding process through which the highest or otherwise best offer will be generated, and (c) the Sale Procedures offer maximum flexibility and security to the Debtor in conjunction with selling the Intellectual Property in an expeditious and value-maximizing manner.

## I. **Sales of the Intellectual Property Should Be Approved.**

15. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 105(a) of the Bankruptcy Code provides: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Rule 6004(f)(1) states that, "all sales not in the ordinary course of business may be by private sale or by public auction." With respect to the notice required in connection with a sale, Bankruptcy Rule 2002(c)(1) states:

> the notice of a proposed use, sale or lease of property . . . shall include the time and place of any public sale, the terms and conditions of any private sale and the deadline for filing objections. The notice of a proposed use, sale or lease of property, including real estate, is

sufficient if it generally describes the property.

16. To approve the use, sale, or lease of property outside the ordinary course of business, the Court must find "some articulated business justification" for the proposed action. *See In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145–47 (3d Cir. 1986) (implicitly adopting the "articulated business justification" and good-faith tests of *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (concluding that the Third Circuit had adopted a "sound business purpose" test in *Abbotts Dairies); Titusville Country Club v. PennBank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Indus. Valley Refrigeration & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 19 (Bankr. E.D. Pa. 1987).

17. Generally, courts have applied four factors in determining whether a sale of a debtor's assets should be approved: (a) whether a sound business reason exists for the proposed transaction; (b) whether fair and reasonable consideration is provided; (c) whether the transaction has been proposed and negotiated in good faith; and (d) whether adequate and reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth the "sound business purpose" test); *Abbotts Dairies*, 788 F.2d at 145–57 (implicitly adopting the articulated business justification test and adding the "good faith" requirement); *Del. & Hudson Ry.*, 124 B.R. at 176 ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre- confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").[3]

---

[3] Even if the proposed Sale is deemed to be private, rather than public, this fundamental analysis does not change. *See, e.g., In re Ancor Exploration Co.,* 30 B.R. 802, 808 (Bankr. N.D. Okla. 1983) ("[T]he bankruptcy court should have wide latitude in approving even a private sale of all or substantially all of the estate assets not in the ordinary course of business under § 363(b)."). The bankruptcy court "has ample discretion to administer the estate, including

18.      Here, the Sale of the Intellectual Property meets these requirements and, accordingly, the Debtor submits it should be approved. Moreover, it is essential that the Intellectual Property be sold promptly in order to avoid deterioration in its value and the incurrence of additional administrative expenses. The Debtor submits that implementation of the Sale Procedures and Auction process as outlined herein will generate maximum interest in the Intellectual Property, thereby yielding the highest or otherwise best bids for such assets. Accordingly, the Debtor submits that the proposed Sale will be the culmination of a thorough and exhaustive marketing process, and that the decision to sell the Intellectual Property to the Purchaser(s) is adequately informed, reasonable, and in the best interests of the Debtor, its estate, and other stakeholders.

### A.      The Sale Process Is a Sound Exercise of the Debtor's Business Judgment.

19.      There is more than ample business justification to sell the Intellectual Property as set forth herein, and as such, an order granting the relief requested is a matter within the discretion of the Court and would be consistent with the provisions of the Bankruptcy Code.  *See* 11 U.S.C. § 105(a). Subject to the Purchaser's willingness to provide fair and reasonable consideration, the Debtors' estates and creditors will benefit from the approval of the Sale without the added costs in terms of time and expenses associated with a Court-approved sale process.

20.      Due to the diminishing inventory and the cost of maintaining the e-commerce site, as well as the timeline contemplated for the Store Closing Sales, the Debtor will be forced to take down its e-commerce site in the near term, resulting in a significant loss of value to the Debtor's estate. Prior to such time, it is imperative that interested parties have an opportunity to evaluate

---

authority to conduct public or private sales of estate property." *In re WPRV-TV, Inc.,* 143 B.R. 315, 319 (D.P.R. 1991), *vacated on other grounds,* 165 B.R. 1 (D.P.R. 1992); *accord In re Canyon Partnership,* 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

the Intellectual Property while it is still viewable because a key component of the value to be derived at the Auction will necessarily reflect the assessment of these potential purchasers of the go-forward utility of the Debtor's Intellectual Property. The actual transfer of title to certain Intellectual Property such as trademarks and domain names, as well as the transmission of customer lists and related data, will occur upon Court approval of the Sale, and the value of the Intellectual Property will be substantially diminished if the Purchaser(s) are unable to take possession of the Intellectual Property until after it is no longer in commercial use for an extended period of time. Thus, the Debtor believes that the proposed Sale process is in the best interests of the Debtor, its estate, and creditors and should go forward as soon as is practicable.

21.     Simply put, in the Debtor's business judgment, selling the Intellectual Property through the aforementioned Sale process is the best option for maximizing the overall value of these assets for the benefit of all stakeholders.

### B.     The Proposed Sale Procedures Are Fair and Reasonable.

22.     The Sale Procedures are designed to maximize the value received for the Intellectual Property and will allow for a timely Auction process while providing bidders and consultants with ample time and information to submit a timely Qualified Bid. The Sale Procedures are designed to ensure that the Intellectual Property will be sold for the highest or otherwise best possible purchase price under the circumstances of this chapter 11 case. The Debtor shall continue to subject the value of the Intellectual Property to market testing, and by permitting prospective purchasers to bid on the Intellectual Property, the Debtor shall ensure that the ultimate Sale price is an accurate reflection of the Intellectual Property's true value. Similar procedures, pursuant to which liquidating chapter 11 debtors solicit bids and implement an auction process without first seeking court approval thereof, have been implemented in other

chapter 11 cases in this district and others. *See e.g. In re The Wet Seal LLC*, Case No. 17-10229 (CSS); *In re Anchor Blue Holding Corp*., Case No. 11-10110 (PJW) (Bankr. D. Del. 2010); In *re Kid Brands, Inc*., Case No. 14-22582 (Bankr. D.N.J. 2014). Accordingly, the Debtor and all parties in interest can be assured that the consideration received for the Intellectual Property will be fair and reasonable, and the third prong of the *Abbotts Dairies* standard is satisfied. As discussed below, the "good faith" prong of the *Abbotts Dairies* standard is also satisfied in this instance.

23.     The Debtor will analyze the Qualified Bids and pursue the Sale at the Sale Hearing only if the Debtor concludes that such Sale will maximize the value of the Intellectual Property. As explained above, the Debtor and Hilco Streambank will market the Intellectual Property in an appropriate and cost-efficient manner given the value of the Intellectual Property and the associated exigencies. In light of the marketing efforts and the nature of the assets, the Debtor believes that the Sale will provide fair and reasonable value for the Intellectual Property.

### C.     The Sale Is Proposed in Good Faith.

24.     The Sale is being proposed in good faith. The Sale will be the product of good-faith, arm's-length negotiations between the Debtor, on the one hand, and the Purchaser(s), on the other. The Debtor believes that the Sale of the Intellectual Property to the Purchaser(s) will not be the product of collusion or bad faith. No evidence exists to suggest that the Sale will be anything but the product of arm's-length negotiations between the Debtor and the Purchaser(s), conducted under the purview of one or more Auction(s).

25.     The Purchase Agreement(s) ultimately executed by and between the Debtor and the Purchaser(s) and subject to Court approval will be the culmination of a fair and open solicitation and negotiation process. The Sale Procedures are designed to ensure that no party is able to exert

undue influence over the process. Under the circumstances, the Debtor intends to ask the Court to find that the Successful Bidder (or Next Highest Bidder) be afforded the protections that section 363(m) of the Bankruptcy Code provides to a good-faith purchaser. Furthermore, the Sale Procedures are designed to prevent the Debtor or the Successful Bidder (or Next Highest Bidder) from engaging in any conduct that would cause or permit the Purchase Agreement(s), or the Sale of the Intellectual Property to the Successful Bidder (or Next Highest Bidder), to be avoided under section 363(n) of the Bankruptcy Code.

**D. Adequate and Reasonable Notice of the Sale Will Be Provided.**

26. The Debtor will provide adequate notice of this Motion to parties in interest, as required by the applicable procedural rules. *See* Fed. R. Bankr. P. 2002(c)(1) (notice must contain "the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections."); *see also Del. & Hudson Ry.*, 124 B.R. at 180 (the disclosures necessary in such a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

27. A number of potential Qualified Bidders have already received information regarding the Intellectual Property Sale process from Hilco Streambank. Those parties will be alerted to the Auction, have an opportunity to participate in the Auction, and can submit other or additional offers prior to the Bid Deadline. Consistent with their fiduciary duties to their estates, the Debtor will consider all such offers.

28. To summarize, in the Debtor's informed business judgment, the Debtor will continue to market the Intellectual Property, conduct one or more Auctions prior to the Sale Hearing with respect thereto, and complete the disposition of the Intellectual Property in a manner

best-tailored to generate value for the Debtor's estate while simultaneously limiting the deterioration in value of the Intellectual Property and the Debtor's exposure to burdensome and unnecessary administrative expenses. For these reasons, the Debtor's submit that the Court should approve the sale of the Intellectual Property to the Purchaser(s) selected by the Debtor pursuant to the Sale Procedures.

## II. The Sales Satisfies the Requirements of Section 363(f) of the Bankruptcy Code.

29.     Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell all or any part of its property free and clear of any and all liens, claims, or interests in such property if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim, or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (iv) the interest is the subject of a *bona fide* dispute; or (v) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met).

30.     Because the Debtor expects that it will satisfy the second and fifth of these requirements, if not others as well, approving the sale of the Intellectual Property free and clear of all adverse interests is warranted. Furthermore, courts have held that they have the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f). *See, e.g.*, *In re Trans World Airlines, Inc*., 2001 WL 1820325 at *3, 6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).

## Waiver of Stay under Bankruptcy Rule 6004(h)

31.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth throughout this Motion, an inability to sell the Intellectual Property while the Debtor's ecommerce site is visible would impair the Debtor's ability to maximize the value received for their Intellectual Property, to the detriment of the Debtor, its creditors, and estate.

32.     For this reason and those set forth above, the Debtor submits that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable.

## Notice

33.     The Debtor will provide notice of this motion to: (a) the Office of the United States Trustee for the Western District of Texas; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel to the secured lender and (d) any party that requests service pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter the Order, substantially in the form filed with this Motion, granting the relief requested herein and such other and further relief as is just and proper.

Respectfully submitted on September 4, 2019.

/s/ Eric Terry
Eric Terry (TX Bar No. 00794729)
**ERIC TERRY LAW, PLLC**
3511 Broadway Street
San Antonio, Texas
78029
Telephone: (210) 468-8274
Facsimile: (210)319-5447
*Proposed Counsel to the Debtor and Debtor in Possession*

**EXHIBIT A**

**Proposed Order**

| | | |
|---|---|---|
| IN RE: | § | CASE NO.   19-51919-RBK |
| A'GACI, L.L.C., | § | |
| | § | CHAPTER 11 PROCEEDING |
| Debtor | § | |

**ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE, (I) AUTHORIZING THE SALE OF CERTAIN INTELLECTUAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[4] the above-captioned debtor and debtor in possession (the "Debtor") for entry of an order, pursuant to pursuant to 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and  rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Sale of the Intellectual Property on an "as is,  where is" basis, free and clear of all  liens,  claims, encumbrances,  and  interests,  to  the  purchaser  (the   "Purchaser")  identified in the Assignment Agreement, dated [_____], 2019, annexed  hereto as **Exhibit 1** [and ___] and (ii) granting related

---

[4] Capitalized terms not defined herein shall have the meanings provided to them in the Motion.

relief; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the entire record in this chapter 11 case; and after due deliberation thereon, and good and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157. This is a core matter pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution. Venue of this chapter 11 case and of the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief sought in the Motion are sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014.

D.      Due and adequate notice of the Motion, the proposed Sale, the Sale Hearing, and the subject matter thereof has been provided to all parties in interest herein, and no other or further notice is necessary. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

E.      The relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties in interest. The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the relief requested in the Motion.

F.      The Sale was negotiated and proposed in good faith, from arm's-length bargaining positions, and without collusion. The Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is entitled to the protection thereof. Neither the Debtor nor the Purchaser has engaged in any conduct that would cause or permit the sale of the Intellectual Property to the Purchaser to be avoided under section 363(n) of the Bankruptcy Code.

G.     The consideration provided by the Purchaser to the Debtor for the Intellectual Property (i) is fair and reasonable, (ii) is the highest or best offer for the Intellectual Property, (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession.

H.     The Debtor is authorized to sell the Intellectual Property to the Purchaser free and clear of all liens, claims, interests, and encumbrances of any kind or nature whatsoever, with such liens, claims, interests, and encumbrances transferring and attaching to the proceeds of the Sale with the same validity and priority as such interests had in the Intellectual Property immediately prior to the consummation of the Sale, because one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code have been satisfied. Those holders of liens, claims, interests, and encumbrances who did not object to the Motion or the relief requested therein, or who interposed and then withdrew their objections, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of liens, claims, interests, and encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their interests, if any, attach to the proceeds of the Sale of the Intellectual Property.


**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as set forth herein.

2.     All objections to the Motion or relief provided herein that have not been withdrawn, waived, or settled are hereby overruled and denied on the merits.

3.     Pursuant to sections 105 and 363 of the Bankruptcy Code and the terms of the Assignment Agreement annexed hereto as **Exhibit[s] 1** [and ], the Debtor is hereby authorized to sell, transfer, and convey the Intellectual Property to the Purchaser.

4.     The Intellectual Property sold pursuant to the Purchase Agreement to the Purchaser is being sold "AS IS-WHERE IS," without any representations or warranties from the Debtor as to the

quality or fitness of such assets for either their intended or any other purposes.

5.     The Intellectual Property shall be sold free and clear of all liens, mortgages, leases, or other rights or claims of right to use or occupancy, encumbrances, security interests, claims, charges, or other legal or equitable encumbrances and any other matter affecting title (collectively, "Liens"), with any Liens in such Intellectual Property, or the proceeds thereof, to

attach to the proceeds of such sale with the same validity, priority, and effect as they have against the Intellectual Property.

6.     Pursuant to section 363(b) of the Bankruptcy Code, the Debtor and the Purchaser, as well as their officers, employees, and agents, shall be, and hereby are, authorized to take any and all actions and/or execute any and all documents as may be necessary or desirable to consummate the transactions contemplated by the Purchase Agreement. Any actions taken by the Debtor and the Purchaser necessary or desirable to consummate such transaction prior to the entry of this Order are hereby ratified.

7.     The Court shall retain exclusive jurisdiction to resolve any dispute arising from or relating to the Sales or this Order.

###

**Submitted by:**

ERIC TERRY LAW, PLLC
Eric B. Terry
State Bar No. 00794729
3511 Broadway
San Antonio, TX 78209
210/468-8274 (Telephone)
210/319-5447 (Facsimile)
eric@ericterrylaw.com
***Proposed Attorney for Debtor***

# **EXHIBIT 1**

## **Assignment Agreement**

[to be provided]

23787979v.2