**The relief described hereinbelow is SO ORDERED.**

**Signed September 09, 2019.**



_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| A'GACI, L.L.C.,[1] | ) | Case No.: 19-51919 |
| | ) | |
| _Debtor._ | ) | Re Docket Nos. 5, 29 |
| | ) | |

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, AND (VI) GRANTING RELATED RELIEF

THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by A'GACI, L.L.C., a Texas limited liability company (the "**Borrower**"), as a debtor

---

[1] The last four digits of the Debtor's federal tax identification number are 9604.

and debtor in possession (the "**Debtor**") in the above-captioned chapter 11 case (the "**Case**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of a final order (this "**Final Order**") *inter alia*:

(i) authorizing the Debtor to obtain, as Borrower, secured, superpriority postpetition financing (the "**DIP Facility**"), consisting of a senior secured super-priority revolving credit facility, pursuant to the terms and conditions of that certain Debtor-In-Possession Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Credit Agreement**") by among the Debtor, the Lenders party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"), and Second Avenue Capital Partners, LLC, as Administrative Agent and Collateral Agent (the "**DIP Agent**") for the DIP Lenders, substantially in the form of **Exhibit A** to the Interim Order;

(ii) authorizing the Debtor to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including (without limitation) security agreements, deposit account control agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;[2]

(iii) granting allowed superpriority administrative expense claim status in the Case and any Successor Cases (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents to the DIP Agent (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "**DIP Obligations**"), subject to the priorities set forth herein;

(iv) authorizing the Debtor to use, in accordance with the Approved Budget (as defined below), "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, that the Debtor is holding or may obtain, pursuant to sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004;

(v) granting to the DIP Agent automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash Collateral (other than cash in

---

[2] Capitalized terms used but not defined have the meanings given to them in the DIP Loan Documents.

Excluded Accounts (as defined in the DIP Credit Agreement)), which liens shall be subject to the priorities set forth herein;

(vi)     authorizing and directing the Debtor to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, commitment or unused line fees, closing fees, maintenance fees and exit fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Agent, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents and the DIP Orders (as defined herein);

(vii)    authorizing and directing the Debtor to pay in full the remaining amounts of the Prepetition Obligations (as defined herein) upon entry of this Final Order and as set forth herein, subject to the rights of parties in interest described in paragraphs 36 and 37 of this Final Order;

(viii)   providing adequate protection to the Prepetition Secured Creditors (as defined herein) to the extent set forth herein;

(ix)     modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order; and

(x)      granting related relief.

The Court having considered the DIP Motion, the *Declaration of Thomas J. Lynch in Support of Debtor's Motion Seeking Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Granting Related Relief, and (VII) Scheduling a Final Hearing*, the *Declaration of Thomas J. Lynch in Support of the Debtor's Chapter 11 Petition and First Day Motions*, including the DIP Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the DIP Motion on August 8, 2019 (the "**Interim Hearing**"); and the Court having entered its

*Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Granting Related Relief, and (VII) Scheduling a Final Hearing*, the *Declaration of Thomas J. Lynch in Support of the Debtor's Chapter 11 Petition and First Day Motions* [Docket No. 29] (the "**Interim Order**," and, together with the Final Order, the "**DIP Orders**"), providing for approval of the DIP Motion on an interim basis; and the final hearing to consider the relief requested in the DIP Motion on a final basis having been held and concluded (the "**Final Hearing**"); and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014; and all objections, if any, to the final relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the final relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, and otherwise is fair and reasonable and in the best interests of the Debtor, its estate, and its creditors and equity holders, and is essential for the continued operation of the Debtor's businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE MOTION AND THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTOR, INCLUDING THE SUBMISSION OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      _Petition Date_.  On August 7, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas (the "**Court**") commencing this Case.

B.      _Debtor in Possession_.  The Debtor is continuing in the management and operation of its businesses and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

C.      _Jurisdiction and Venue_.  The Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings and over the persons and property affected hereby.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      _Committee Formation_.  On August 20, 2019, the Office of the United States Trustee for the Western District of Texas (the "**U.S. Trustee**") appointed a five-member official committee of unsecured creditors in the Case pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

E.      _Debtor's Stipulations_.  Without prejudice to the rights of parties in interest as set forth in paragraphs 36 and 37 herein, the Debtor (on behalf of and for itself) admits, stipulates, acknowledges and agrees that (collectively, paragraphs E(i) through E(v) below are referred to herein as the "**Debtor's Stipulations**"):

(i)      _Prepetition Credit Documents_.  As of the Petition Date, the Debtor had outstanding secured debt to Second Avenue Capital Partners, LLC (the "**Prepetition Facility**"), as administrative agent and collateral agent (in such capacity, the "**Prepetition Agent**") the lender parties thereto (collectively, together with the Prepetition Agent, the "**Prepetition**

Secured Creditors" and each a "**Prepetition Secured Creditor**"), pursuant to that certain Credit Agreement dated as of August 2, 2018, by and between the Debtor and the Prepetition Agent (as amended, modified and supplemented from time to time, the "**Prepetition Credit Agreement**" and together with all related documents, instruments, guaranties and agreements, the "**Prepetition Credit Documents**").

(ii)     *Prepetition Obligations*.     As of the Petition Date, the aggregate outstanding principal amount owed by the Debtor under the Prepetition Credit Documents was not less than $6,099,123.62 million (collectively, together with any interest, fees (including, without limitation, any early termination and prepayment fees and closing fees owing under the DIP Facility), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, including all "Obligations" as described in the Prepetition Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Obligations**").     As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtor granted first-priority security interests in and liens on substantially all of the assets of the Debtor, including, without limitation, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition Collateral**") to the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) (collectively, the "**Prepetition Liens**") to secure repayment of the Prepetition Obligations.     As of the Petition Date, the value of the Prepetition Collateral exceeds the amount of the Prepetition Obligations.

(iii)     *Validity, Perfection and Priority of Prepetition Liens and Obligations*. The Debtor (for itself and its estate only, and without limiting the rights of other parties in interest under paragraphs 36 and 37 of this Final Order), and the Prepetition Secured Creditors

acknowledge and agree that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) as of the Petition Date, the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral;[3] (d) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtor and its estate have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents; and (g) without the DIP Facility, the Debtor would not anticipate

---

[3]   For purposes of this Final Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by the Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtor, the DIP Agent, and the Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest. Any right or alleged right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Lien and is expressly subject to the Prepetition Liens and the DIP Liens.

sufficient liquidity from cash receipts to meet its obligations for the term contemplated under the Consulting Agreement (as defined herein).

(iv)  *Cash Collateral*.  All of the Debtor's cash, including the cash in its stores and deposit accounts (other than Excluded Accounts), wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(v)  *Default by the Debtor*.  The Debtor is in default under the Prepetition Credit Documents.

F.  *Continuation of Liens*.  The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens, and the Prepetition Collateral and DIP Collateral are and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility, the DIP Loan Documents and the Prepetition Credit Documents.

G.  *Findings Regarding Corporate Authority*.  The Debtor has all requisite corporate power and authority to execute and deliver the DIP Loan Documents to which it is a party and to perform its obligations thereunder.

H.  *Findings Regarding the Postpetition Financing*.

(i)  *Request for Postpetition Financing*.  The Debtor seeks authority to (a) continue performing under the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay the balance of the Prepetition Obligations as set forth herein, and (c) use Cash Collateral on the terms described herein to administer its Case and fund its operations.

(ii)  *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtor's need to continue using Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtor to administer and preserve the value of its

estate. The ability of the Debtor to finance its operations, maintain business relationships, pay its employees, protect the value of its assets and otherwise finance its operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders, and the possibility for a successful administration of this Case. The Debtor does not have sufficient available sources of working capital and financing to operate its businesses or to maintain its properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iii)    *No Credit Available on More Favorable Terms*.    Given its current financial condition, financing arrangements, and capital structure, the Debtor is unable to obtain financing from sources other than the DIP Agent on terms more favorable than the DIP Facility. The Debtor has been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor has also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtor and its estate that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtor and its estate that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent (1) perfected security interests in and liens on (each as provided herein) all of the Debtor's existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in the DIP Orders.

(iv)    *Use of Proceeds of the DIP Facility*.  As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use

Cash Collateral, the DIP Agent requires, and the Debtor has agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of the balance of the Prepetition Obligations (other than contingent indemnification obligations) and (b) in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as **Exhibit A** hereto, as the same may be modified from time to time consistent with the terms of the DIP Loan Documents and this Final Order, the "**Approved Budget**") , and subject to such variances as may be permitted thereby, solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Case, including professional fees to the extent permitted by the DIP Loan Documents and this Final Order, (iv) Prepetition Agent Adequate Protection Payments (as defined herein), and (v) as otherwise permitted under the DIP Loan Documents including, without limitation, to pay certain Prepetition Indebtedness (as defined in the DIP Credit Agreement) as approved by the Bankruptcy Court. The repayment of the Prepetition Obligations as set forth herein is necessary, as the Prepetition Agent has not otherwise consented to the use of Cash Collateral or the subordination of its liens to the DIP Liens, and the DIP Agent is not willing to provide the DIP Facility unless the Prepetition Obligations (other than contingent indemnification obligations) are paid in full upon the entry of this Final Order and as otherwise set forth herein. Such payments will not prejudice the Debtor or its estate, because payment of such amounts is subject to the rights of parties in interest under paragraphs 36 and 37 herein.

(v)     *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtor, the DIP Agent, and the Prepetition Secured Creditors have

agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 20 of this Final Order.

(vi) *Roll-up of Prepetition Obligations into DIP Obligations.* As of entry of this Final Order, any outstanding Prepetition Obligations shall be converted into DIP Obligations (the "DIP Roll-Up Loans"). The Prepetition Secured Creditors would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtor thereunder without the inclusion of the DIP Roll-Up Loans in the DIP Obligations. Because the DIP Roll-Up Loans are subject to the reservation of rights in paragraphs 36 and 37 below, they will not prejudice the right of any party in interest.

I. *Adequate Protection.* The Debtor shall pay to the Prepetition Agent the amounts required hereunder as and when such amounts become due as set forth herein. Without limiting the generality of the foregoing, the Prepetition Agent and the other Prepetition Secured Creditors shall receive (i) subject to the priorities set forth in paragraphs 13 and 14 below, the Adequate Protection Liens (as defined herein) to secure the Prepetition Obligations and Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Obligations (including, without limitation, any indemnification obligations), and (ii) additional adequate protection in the form of (A) payment of the Prepetition Obligations from the proceeds of the DIP Collateral as set forth in paragraph 20 below and (B) payments in the amount of interest (which shall be payable at the default rate under the Prepetition Credit Agreement), fees, costs, expenses (including, without limitations, attorneys' fees, consultants' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnities and other amounts with respect to the Prepetition Obligations when

due in accordance with the Prepetition Credit Documents (collectively, the "Prepetition Agent Adequate Protection Payments"). For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to the DIP Liens and the Carve Out, and the Adequate Protection Superpriority Claims are junior in all respects to the DIP Superpriority Claim (as defined herein).

J. *Sections 506(c) and 552(b)*. In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims, as applicable, to the Carve Out (as defined herein); (ii) the Prepetition Secured Creditors' agreement that their liens shall be subject to the Carve Out and subordinate to the DIP Liens; and (iii) the payment of expenses as set forth in the Approved Budget, in accordance with and subject to the terms and conditions of this Final Order and the DIP Loan Documents, (a) each of the Prepetition Secured Creditors is entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and (b) each of the DIP Agent, DIP Lenders, and Prepetition Secured Creditors is entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

K. *Good Faith of the DIP Agent, DIP Lenders, and Prepetition Secured Creditors*.

(i) *Willingness to Provide Financing*. The DIP Agent has indicated a willingness to provide financing to the Debtor subject to: (a) the entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Obligations; (c) satisfaction of the closing conditions set forth in the DIP Loan Documents; and (d) entry of findings by the Court that such financing is essential to the Debtor's estate, that the DIP Agent is extending credit to the Debtor pursuant to the DIP Loan Documents in good faith, that the DIP Agent, DIP Lenders, and Prepetition Secured Creditors have acted in good faith, and that the DIP Agent's, DIP Lenders',

and Prepetition Secured Creditors' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to the DIP Orders and the DIP Loan Documents will have the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the DIP Orders or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Sections 363(m) and 364(e)*.  The extension of credit under the DIP Facility reflects the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtor, the DIP Agent, DIP Lenders, and Prepetition Secured Creditors, with the assistance and counsel of their respective advisors, and the DIP Agent, DIP Lenders, and Prepetition Secured Creditors have acted in good faith.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code, and the DIP Agent, DIP Lenders, and Prepetition Secured Creditors are therefore entitled to the protection and benefits of sections 363(m) and 364(e) of the Bankruptcy Code and this Final Order.

L.     *Notice*.  Notice of the Final Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the District of Western District of Texas; (ii) the Internal Revenue Service; (iii) the parties included on the Debtor's consolidated list of thirty (30) largest unsecured creditors; (iv) counsel to each of the Prepetition

Secured Creditors and any other lienholders of record; (v) counsel to the Committee; and (vi) those parties who have filed a notice of appearance and request for service of pleadings in the Case pursuant to Bankruptcy Rule 2002. The Debtor has made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the final relief set forth in this Final Order, and no other or further notice is or shall be required.

M. *Immediate Entry*. Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, including the record established at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. <u>DIP Financing Approved on a Final Basis; Funding Obligations Terminated</u>. The DIP Motion is granted as set forth herein on a final basis, the DIP Financing (as defined herein) is authorized and approved on a final basis, and the use of Cash Collateral on a final basis is authorized, in each case subject to the terms and conditions set forth in the DIP Loan Documents and the DIP Orders. Upon payment of the Final Funding Obligations (as defined herein), the DIP Agent and the DIP Lenders shall have no further obligation to extend credit under the DIP Facility; *provided, however*, that, for the avoidance of doubt, such termination shall not impair the rights of the DIP Agent or any of the DIP Lenders or Prepetition Secured Creditors to collect any amounts that remain outstanding to such parties including, without limitation, on account of the Final Funding Obligations.

2. <u>Objections Overruled</u>. All objections to approval of the DIP Financing on a final basis, to the extent not withdrawn, waived, settled, or resolved, are hereby overruled; *provided,*

*however*, that the objection filed by the Committee [Docket No. 108] (the "**Committee Objection**") has been withdrawn in accordance with paragraph 53 hereof.

## DIP Facility Authorization

3.       _Authorization of the DIP Financing and DIP Loan Documents_.  Upon entry of the Interim Order, the Debtor was expressly and immediately authorized and empowered (i) to execute and deliver the DIP Loan Documents, (ii) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of the Interim Order, the DIP Loan Documents and the Approved Budget, (iii) to deliver all instruments and documents that may be necessary or required for performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by the Interim Order and the DIP Loan Documents, and (iv) subject to the rights of third parties pursuant to paragraphs 36 and 37 below and entry of this Final Order, to (x) grant releases in favor of the Prepetition Secured Creditors and each of their related parties and (y) repay in full in cash the remaining balance of the Prepetition Obligations, subject only to the ability of the Court to unwind the repayment of the Prepetition Obligations in the event there is a successful Challenge (as defined herein) to the validity, enforceability, extent, perfection and priority of the Prepetition Secured Creditors' claims or liens.  Upon entry of the Interim Order, the Debtor was authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, commitment or unused line fees, closing fees, maintenance fees and exit fees, the reasonable fees and disbursements of the DIP Agent's, the DIP Lenders', and the Prepetition Secured Creditors' attorneys, advisers, accountants, and other consultants and professional persons, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 29 below.  The foregoing authorizations and empowerment are hereby ratified and confirmed on

a final basis. In the event of any inconsistency between the terms and conditions of the Interim Order and this Final Order, from and after entry of this Final Order, the terms and conditions of this Final Order shall control. All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will continue to be deposited and applied as required by the DIP Orders and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents represented valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.

4. <u>Authorization to Borrow</u>. The Debtor's authority to borrow funds under the DIP Facility shall be governed by the terms of this Final Order and the DIP Loan Documents. Until occurrence of the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility, and the DIP Orders, and in order to prevent immediate and irreparable harm to the Debtor's estate, upon entry of the Interim Order, the Debtor was authorized to request extensions of revolving credit under the DIP Facility up to an aggregate principal amount of $10,000,000 (comprised of actual funds disbursed) at any one time outstanding (the "**DIP Financing**"). Notwithstanding anything to the contrary set forth in this Final Order or the DIP Loan Documents, upon payment of the Final Funding Obligations (as defined herein), the DIP Agent and the DIP Lenders shall have no further obligation to extend credit under the DIP Facility, and the Debtor shall have no authority to request to borrow funds under the DIP Facility; *provided, however*, that, for the avoidance of doubt, such termination shall not impair the rights of the DIP Agent or any of the DIP Lenders or Prepetition Secured Creditors to collect any amounts that remain outstanding to such parties including, without limitation, on account of the Final Funding Obligations.

5.     DIP Obligations.  The DIP Loan Documents and the DIP Orders shall constitute and evidence the validity and binding effect of the Debtor's DIP Obligations, which DIP Obligations shall be enforceable against the Debtor, its estate and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Case, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any the Case (collectively, any "**Successor Cases**").  Upon entry of the Interim Order, the DIP Obligations were deemed to include all loans and any other indebtedness, indemnities or obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to the DIP Agent under the DIP Loan Documents or the DIP Orders, including, without limitation, all principal, accrued interest, costs, fees, expenses, indemnities and other amounts owed pursuant to the DIP Loan Documents, and shall be obligations of the Debtor in all respects.  Without limiting the foregoing, the DIP Obligations shall also include cash management exposure to the extent described in, or secured by, the Prepetition Credit Documents and the DIP Loan Documents, including all Obligations (as defined in the DIP Credit Agreement).  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Date, except as provided in paragraph 22 herein. No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Loan Documents (including any DIP Obligations or DIP Liens, and including in connection with any adequate protection provided to the Prepetition Secured Creditors hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any

avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

6.      DIP Liens and DIP Collateral.

(a)      Effective immediately upon the entry of the Interim Order and continuing until the earlier of the expiration of the Challenge Period or the resolution of any timely Challenge brought pursuant to the terms of this Order, pursuant to sections 361, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) was granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**") the following presently owned and hereafter acquired assets and real and personal property of the Debtor(the "**DIP Collateral**"):

(i)      all Accounts[4];

(ii)      all Goods, including Equipment, Inventory and Fixtures;

(iii)      all Documents, Instruments and Chattel Paper;

(iv)      all Letters of Credit and Letter-of-Credit Rights;

(v)      all Securities Collateral;

(vi)      all Investment Property;

(vii)      all Intellectual Property Assets;

(viii)      all Commercial Tort Claims;

(ix)      all General Intangibles (including, without limitation, all Payment Intangibles);

---

[4]      All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents. All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(x)     all Deposit Accounts (including, without limitation, the Concentration Account);

(xi)    all Supporting Obligations;

(xii)   all money, cash or cash equivalents;

(xiii)  all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)   all proceeds of leases of real property and all owned real property;[5]

(xv)    all Prepetition Collateral;

(xvi)   all claims and causes of action and the proceeds thereof to avoid a transfer of property (or an interest in property) pursuant to Section 549 of the Bankruptcy Code (the "**Post-Petition Avoidance Actions**");[6]

(xvii)  to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of the Debtor;

(xviii) all books, records, and information relating to any of the foregoing and/or to the operation of the Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and

---

[5]  For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtor's leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

[6]  DIP Liens will not attach to causes of action pursuant to Chapter 5 of the Bankruptcy Code other than the Post-Petition Avoidance Actions (the "**Pre-Petition Avoidance Actions**").  The Pre-Petition Avoidance Actions and GUC Trust are explicitly excluded from DIP Collateral; *provided, however,* that, for the avoidance of doubt, any claim or action to turn over DIP Collateral or proceeds thereof, pursuant to Section 542 of the Bankruptcy Code or any equivalent, shall not be subject to the exclusion for Pre-Petition Avoidance Actions set forth in this Final Order.

(xix)  to the extent not otherwise included or specifically excluded, all other personal property of the Debtor, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to any of the foregoing.

(b)  The Prepetition Liens shall be deemed continuing liens for the benefit of the Prepetition Secured Creditors, the DIP Agent, and the DIP Lenders to secure the DIP Obligations, and any liens, claims, or interests subordinate to the Prepetition Liens as of the Petition Date shall likewise be deemed subordinate to the DIP Liens.

(c)  Effective upon the entry of the Interim Order, (i) all DIP Liens and the Carve Out were deemed to be and shall remain at all times senior to the Prepetition Liens, and all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements and freight forwarder agreements constituting Prepetition Credit Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtor which were filed by the Prepetition Agent, shall continue to perfect the Liens granted under the DIP Facility to the same extent (but subject to the priority under this Final Order) as the Prepetition Facility and shall remain in full force and effect without any further action by the Debtor, the DIP Agent, the Prepetition Agent or any other person, (ii) any

and all references in any such agreements or documents to the "Credit Agreement" were and shall hereafter be deemed to mean and refer to the DIP Credit Agreement and the Prepetition Credit Agreement, collectively, and (iii) any and all references in any such agreements or documents to the "Loan Documents" were and shall hereafter be deemed to mean and refer to the DIP Loan Documents and the Prepetition Credit Documents, collectively, in each case as amended, modified, supplemented or restated and in effect from time to time.

7.    <u>DIP Lien Priority</u>.

(a)    *DIP Liens*.  The DIP Liens shall be junior only to the (i) Carve Out, and (ii) the Prepetition Permitted Liens, and shall otherwise be senior in priority and superior to the Prepetition Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral; *provided that* DIP Liens shall not attach to the GUC Trust.

(b)    Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Cases.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Cases, upon the conversion of the Case to any case under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of the Case or any Successor Cases.  The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens. Notwithstanding any provisions of this Final Order, or any final orders pertaining to the sale of the Debtor's assets, or any agreements

validated by any such orders, any senior liens currently held by the Local Texas Tax Authorities[7] shall neither be primed by, nor subordinated to, any liens granted thereby.

(c)     *Prepetition Liens*.  For the avoidance of doubt, the Prepetition Liens shall be junior to the (i) Carve Out; (ii) DIP Liens; (iii) Adequate Protection Liens described in paragraph 13 below; (iv) Adequate Protection Superpriority Claims; and the (v) Prepetition Permitted Liens and shall not attach to the GUC Trust.

8.     <u>DIP Superpriority Claim</u>.

(a)     *DIP Agent Superpriority Claim*.  Upon entry of the Interim Order, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) was granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Case and any Successor Cases (collectively, the "**<u>DIP Superpriority Claim</u>**") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the DIP Liens, the Carve Out and Prepetition Permitted Liens, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.

(b)     *Priority of DIP Superpriority Claim.*  The DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations, the Carve Out and amounts secured by the Prepetition Permitted Liens.  The DIP Superpriority Claim shall be payable from or have recourse to Post-Petition Avoidance Actions, but shall not be payable from the Pre-Petition Avoidance Actions or the GUC Trust.

---

[7]     "Local Texas Tax Authorities" shall mean those entities listed on <u>Schedule 1</u> attached hereto.

(c)     *Application for Allowance of DIP Superpriority Claim*.  The DIP Agent shall be required to file an application for allowance of any alleged DIP Superpriority Claim and may only be paid as allowed by the Court.

9.      No Obligation to Extend Credit.  The DIP Agent and the DIP Lenders shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Agent in accordance with the terms of the DIP Credit Agreement.

10.     Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtor shall use advances of credit under the DIP Facility only for the purposes specifically set forth in the DIP Orders, the DIP Loan Documents, and the Approved Budget and shall be subject at all times to compliance with the Approved Budget (including, without limitation, to make Prepetition Agent Adequate Protection Payments).  For the avoidance of doubt, from and after entry of this Final Order, the Debtor shall be obligated to comply with the Approved Budget, including, without limitation, to use all proceeds received by the Debtor, from the sale of inventory or otherwise, in compliance with the terms of the Approved Budget.

11.     Roll-Up of Prepetition Obligations.  Subject to the consent of the Prepetition Secured Creditors, the DIP Roll-Up Loans shall be included in the DIP Obligations, and all Prepetition Obligations outstanding as of the date of entry of this Final Order, if any, shall be converted and "rolled-up" into DIP Roll-Up Loans, and such Prepetition Obligations shall constitute DIP Obligations.  The authorization of the DIP Roll-Up Loans shall be subject to the reservation of rights set forth in paragraphs 36 and 37 of this Final Order.

**<u>Authorization to Use Cash Collateral</u>**

12.     <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this
Final Order and the DIP Loan Documents, and in accordance with the Approved Budget, and
subject to such variances as may permitted under the DIP Credit Agreement, the Debtor is
authorized to use Cash Collateral until the Termination Date; <u>provided</u>, <u>however</u>, that during the
Remedies Notice Period (as defined herein) the Debtor may use Cash Collateral in accordance
with the terms and provisions of the Approved Budget solely to meet payroll obligations (other
than severance), make remittances of trust fund taxes collected by the Debtor during the
Remedies Notice Period, and for other expenses approved critical to the preservation of the
Debtor and its estate as agreed by the DIP Agent in its sole discretion.  Nothing in this Final
Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary
course of business (which shall be subject to further Orders of the Court), or the Debtor's use of
any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final
Order, the DIP Loan Documents, and in accordance with the Approved Budget.

13.     <u>Adequate Protection Payments and Adequate Protection Liens</u>.

(a)     *Prepetition Agent – Adequate Protection Payments*.   The Prepetition
Agent and the other Prepetition Secured Creditors shall receive adequate protection in the form
of the Prepetition Agent Adequate Protection Payments. As of the date of the entry of this Final
Order, no further Adequate Protection Payments shall be made without further Order of the
Court.

(b)     *Prepetition Agent – Adequate Protection Liens*.  Upon entry of the Interim
DIP Order, the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors)
was granted valid and perfected replacement and additional security interests in, and liens on all
of the Debtor's right, title and interest in, to and under all DIP Collateral (the "**<u>Adequate</u>**

**Protection Liens**") to the same extent and priority as existed in the Prepetition Collateral on the Petition Date.  The Adequate Protection Liens granted to the Prepetition Agent shall secure only the Prepetition Obligations (including, without limitation, any indemnification obligations) to the extent of any diminution in value of the Prepetition Collateral due to, among other things, priming liens, the use of the Prepetition Collateral, borrowings under the DIP Facility, or the Carve Out.  The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the Permitted Prior Liens, and (iii) the Carve Out.

(c)     *Treatment of Adequate Protection Liens.*  Other than as set forth herein or as further ordered by the Court after notice to the DIP Agent and the Prepetition Agent and a hearing, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Case or any Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Case or any Successor Cases, upon the conversion of the Case to a case under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of the Case or any Successor Cases.

14.     Adequate Protection Superpriority Claims.

(a)     *Superpriority Claim of Prepetition Agent.*  As further adequate protection of the interests of the Prepetition Agent with respect to the Prepetition Obligations (including, without limitation, any indemnification obligations), upon entry of the Interim Order, the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) was granted an allowed administrative claim against the Debtor's estate under sections 503 and 507(b) of the

Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition Collateral.

(b)     *Priority of Adequate Protection Superpriority Claims*.   The Adequate Protection Superpriority Claims shall be junior to the Carve Out, the DIP Liens, the DIP Superpriority Claim, and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code.   The Adequate Protection Superpriority Claims shall be payable from and have recourse to the Post-Petition Avoidance Actions, but shall not be payable from the Pre-Petition Avoidance Actions or the GUC Trust.

(c)     *Application for Allowance of Adequate Protection Superpriority Claim*. The Prepetition Agent shall be required to file an application for allowance of any alleged Adequate Protection Superpriority Claim and may only be paid as allowed by the Court.

15.     Adequate Protection Reservation.   Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Creditors hereunder is insufficient to compensate for any diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition Collateral during the Case or any Successor Cases.   The receipt by the Prepetition Secured Creditors of the adequate protection provided herein shall not be deemed an admission that the interests of the Prepetition Secured Creditors are adequately protected.   Further, this Final Order shall not prejudice or limit the rights of the Prepetition Secured Creditors to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

16.     _Amendments_.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without further Order of this Court and without notice or a hearing if such amendment, modification, or supplement is (A) non-material and (b) in accordance with the DIP Loan Documents.   In the case of a material amendment, modification, or supplement to the DIP Loan Documents that is adverse to the Debtor's estate, the Debtor shall provide notice (which may be provided through electronic mail or facsimile) to counsel to the Committee and the U.S. Trustee (collectively, the "Notice Parties"), each of whom shall have five (5) days from the date of such notice to object in writing to such amendment, modification or supplement.  If neither of the Notice Parties indicates that they have an objection to the amendment, modification or supplement, the Debtor may proceed to execute the amendment, modification or supplement, which shall become effective immediately upon execution.  If a Notice Party timely objects to such amendment, modification or supplement, and such objection is not consensually resolved by the Debtor, the DIP Agent, and the objecting Notice Party, approval of the Court (which may be sought on an expedited basis) will be necessary to effectuate the amendment, modification or supplement; _provided_, that such amendment, modification or supplement shall be without prejudice to the right of any party in interest to be heard.   Any material modification, amendment or supplement that becomes effective in accordance with this paragraph 16 shall be filed with the Court by the Debtor no later than three (3) business days after becoming effective (and may be filed with the Court by the DIP Agent if the Debtor fails to do so).

17.     _Approved Budget Maintenance_.  The use of borrowings under the DIP Facility and the use of Cash Collateral shall be limited in accordance with the Approved Budget, subject to the variances set forth in the DIP Credit Agreement.   The Approved Budget and any

modification to, or amendment or update of, the Approved Budget shall be in form and substance acceptable to the DIP Agent and approved by the DIP Agent in its sole discretion. The Debtor shall comply with and update the Approved Budget from time to time in accordance with the DIP Loan Documents (provided that any update shall be in form and substance acceptable to the DIP Agent and approved by the DIP Agent in its sole discretion), but in any event not less than on a weekly basis (with delivery to the DIP Agent on or before Wednesday of each week (or such day as otherwise agreed to by the DIP Agent) and to the U.S. Trustee and counsel for the Committee each week after delivery to the DIP Agent), and no such updated, modified, or supplemented budget shall be effective until so approved and once approved shall be deemed the "Approved Budget". Each budget delivered to the DIP Agent shall be accompanied by such supporting documentation as reasonably requested by the DIP Agent and shall be prepared in good faith based upon assumptions the Debtor believes to be reasonable.

18. <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of the DIP Orders, including, without limitation, to: (a) permit the Debtor to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; (b) permit the Debtor to perform such acts as the DIP Agent and the Prepetition Agent each may reasonably request to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Creditors under the DIP Loan Documents, the DIP Facility, and the DIP Orders, as applicable; and (d) authorize the Debtor to pay, and the DIP Agent and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of the DIP Orders.

19.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

(a)     *Automatic Perfection of Liens*.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein and under the Interim Order, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent or the Prepetition Secured Creditors to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each is authorized to file, as the DIP Agent and Prepetition Agent each in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens and the Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens or the Adequate Protection Liens.  The Debtor is authorized to execute and deliver promptly upon demand to the DIP Agent or the Prepetition Agent, as applicable, all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent or the Prepetition Agent may reasonably request.  The DIP Agent and the Prepetition Agent, each in its sole discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office

or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

20. <u>Application of Proceeds of DIP Collateral</u>.  As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtor has agreed that the proceeds of the DIP Collateral, and other payments received by the DIP Agent, including whether sold in the ordinary course, liquidated pursuant to any agreement with an Approved Liquidator (as defined in the DIP Credit Agreement), or otherwise, shall be applied as provided in the DIP Credit Agreement, or, to the extent the DIP Credit Agreement does not direct the application of such amounts, as follows: *first*, to payment of the Prepetition Obligations in accordance with the terms of the Prepetition Credit Documents until the Prepetition Obligations have been paid in full in cash, *second*, to payment of the costs and expenses of the DIP Agent and DIP Lenders, including Credit Party Expenses (as defined in the DIP Credit Agreement) payable and reimbursable by the Debtor under the DIP Credit Agreement and the other DIP Loan Documents; *third*, to payment of fees and interest with respect to the DIP Obligations, *fourth*, to payment of all other DIP Obligations in accordance with the DIP Loan Documents until all DIP Obligations have been paid in full in cash, and *fifth*, to the Debtor's operating account, or for the account of and paid to whomever may be lawfully entitled thereto.

21. <u>Proceeds of Subsequent Financing</u>.  If the Debtor, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in this Case or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the indefeasible repayment in full of all DIP Obligations and

Prepetition Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to the Debtor and its estate, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 20 herein.

22.     <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full in cash of all DIP Obligations and Prepetition Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtor shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system approved by the Cash Management Order.

23.     <u>Disposition of DIP Collateral; Rights of DIP Agent, DIP Lenders, and Prepetition Secured Creditors</u>.  Unless (i) the DIP Agent and the Prepetition Agent have provided their prior written consent, (ii) all DIP Obligations and all Prepetition Obligations have been indefeasiably paid in full, in cash, or (iii) otherwise authorized by the Court after notice to the DIP Agent and the Prepetition Agent:

(a)     The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral outside the ordinary course of business except as permitted by the DIP Loan Documents.  Nothing provided herein shall limit the right of the DIP Agent or the DIP Lenders to object to any proposed disposition of the DIP Collateral;

(b)     Without the prior written consent of the DIP Agent and the Prepetition Agent, there shall not be entered in the Case or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage,

or collateral interest or other Lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claim, the Prepetition Liens, the Adequate Protection Liens, and/or the Adequate Protection Superpriority Claim except as expressly set forth in this Final Order or the DIP Loan Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Loan Documents and this Final Order; (iii) the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness or consignment arrangement) to any creditor of the Debtor or any creditor's taking any setoff or recoupment against any of its prepetition indebtedness based upon any such return of goods pursuant to section 553 of the Bankruptcy Code or otherwise; or (iv) any modification of the DIP Agent's or DIP Lenders' rights under this Final Order or the DIP Loan Documents; and

(c)     The Debtor (and/or its professional advisors in the case of clauses (ii) through (iv) below) shall (i) maintain books, records, and accounts to the extent and as required by the DIP Loan Documents (and subject to the applicable grace periods set forth therein); (ii) cooperate with, consult with, and provide to the DIP Agent all such information and documents that the Debtor is obligated (including upon reasonable request by the DIP Agent) to provide under the DIP Loan Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit the DIP Agent, the DIP Lenders and their advisors to visit and inspect any of the Debtor's respective properties, to examine and make abstracts or copies from any of its books and records, to tour the Debtor's business premises and other properties, and to discuss, and provide advice with respect to, its affairs, finances, properties, business operations, and accounts with its officers, employees, independent public accountants, and other professional

advisors (other than legal counsel) as and to the extent required by the DIP Loan Documents and/or the Prepetition Documents; (iv) permit the DIP Agent, the DIP Lenders and their advisors to consult with the Debtor's management and advisors on matters concerning the Debtor's businesses, financial condition, operations, and assets in accordance with the DIP Loan Documents; and (v) upon reasonable advance notice, permit the DIP Agent to conduct, at their discretion and at the Debtor's cost and expense, field audits, collateral examinations, liquidation valuations, and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral in accordance with, and to the extent set forth in, the DIP Loan Documents.

24.     Credit Bidding.  In connection with any sale process authorized by the Court, the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors may credit bid some or all of their claims for their respective priority collateral (each a "Credit Bid") pursuant to section 363(k) and/or section 1129 of the Bankruptcy Code.  Each of the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall be considered a "Qualified Bidder" with respect to its rights to acquire all or any of the assets by Credit Bid.

25.     Termination Date.  On the Termination Date, at the option of the DIP Agent: (a) all applicable DIP Obligations shall be immediately due and payable, all commitments to extend credit under the DIP Facility will terminate, other than as required in paragraph 33 with respect to the Carve Out, all treasury and cash management, hedging obligations and bank product obligations constituting Obligations (as defined in the DIP Credit Agreement) shall be cash collateralized in a manner and amount acceptable to the DIP Agent, and none of such cash collateral shall be subject to or subordinate to the Carve Out; (b) all authority to use Cash Collateral shall cease, *provided, however*, that during the Remedies Notice Period (as defined herein), the Debtor may use Cash Collateral to pay payroll obligations (other than severance),

make remittances of trust fund taxes collected by the Debtor during the Remedies Notice Period, and for other expenses approved critical to the preservation of the Debtor and its estate as agreed by the DIP Agent in its sole discretion.; and (c) otherwise exercise rights and remedies under the DIP Loan Documents in accordance with this Final Order (including paragraph 27). After the expiration of the Remedies Notice Period, the Debtor may use Cash Collateral or any other cash in the ordinary course of its business or liquidation, after consultation with the Committee, without Court approval.

26. <u>Events of Default</u>. The occurrence of an "Event of Default" under the DIP Credit Agreement other than the Specified Events of Default pursuant to paragraph 53 herein (unless the DIP Agent, in its sole discretion, elects to waive such Event of Default) shall constitute an event of default under this Final Order (each, an "**Event of Default**").

27. <u>Rights and Remedies Upon Event of Default</u>.

(a) *DIP Facility Termination.* Immediately upon the occurrence and during the continuance of an Event of Default, notwithstanding the provisions of section 362 of the Bankruptcy Code, without any application, motion or notice to, hearing before, or order from the Court, but subject to the terms of this Final Order, the DIP Loan Documents and the Remedies Notice Period, the DIP Agent may, in its sole discretion, (a) declare (any such declaration shall be referred to herein as a "**Termination Declaration**") any or all of the following: (i) all DIP Obligations owing under the DIP Loan Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains under the DIP Facility, (iii) termination of the DIP Facility and the DIP Loan Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, and (iv)

that the application of the Carve Out has occurred through the delivery of the Carve Out Trigger Notice (as defined herein) to the Debtor and its counsel, the U.S. Trustee, and lead counsel to the Committee; or (b) send a reservation of rights notice to the Debtor, which notice may advise the Debtor that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent. With respect to the DIP Collateral, following the Termination Declaration but subject to the Remedies Notice Period, the DIP Agent, the DIP Lenders and the Prepetition Agent may exercise all rights and remedies available to them under the DIP Loan Documents or the Prepetition Credit Documents, as applicable, or applicable law against the DIP Collateral. Without limiting the foregoing, the DIP Agent, the DIP Lenders and the Prepetition Agent may, subject to the Remedies Notice Period, (i) upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing, and subject to the applicable notice provisions, if any, in this Final Order and any separate applicable agreement by and between such landlord, enter onto the premises of the Debtor for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtor's rights and privileges as lessee under such lease without interference from the landlords thereunder;[8] and/or (ii) exercise any rights and remedies provided to DIP Agent, the DIP Lenders or the Prepetition Agent under the DIP Loan Documents or the Prepetition Credit Documents, as applicable, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to the DIP Orders.

---

[8] Notwithstanding anything in this paragraph to the contrary, subject to (and without waiver of) the rights of the DIP Agent and/or the DIP Lenders under applicable nonbankruptcy law, the DIP Agent and/or the DIP Lenders can only enter upon a leased premises after an Event of Default and expiration of the Remedies Notice Period in accordance with (i) a separate agreement with the landlord at the applicable leased premises, or (ii) upon entry of an order of this Court obtained by motion of the DIP Agent and/or the applicable DIP Lenders on such notice to the landlord as shall be required by this Court.

(b)     *Notice of Termination*.  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtor, counsel to the Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").  Any automatic stay otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Agent is hereby modified so that five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Agent, the DIP Lenders and the Prepetition Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Credit Documents, as applicable, and this Final Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens and the Adequate Protection Liens and Adequate Protection Superpriority Claims of the Prepetition Agent, subject in each case to the Carve Out.  During the Remedies Notice Period, the Debtor and the Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing; provided, that in the event the Debtor seeks such an emergency hearing and the Court is unable to schedule such a hearing during the five (5) business day period described above, the Remedies Notice Period shall be tolled until the date on which the Court enters an order with respect to whether an Event of Default has occurred and/or is continuing.  Unless the Court determines otherwise, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent, the DIP Lenders and the Prepetition Agent shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, the Prepetition Credit Documents and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint

by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to (x) the DIP Agent with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents, or the DIP Orders and (y) the Prepetition Agent with respect thereto pursuant to the Prepetition Credit Agreement, the other Prepetition Credit Documents, or the DIP Orders.

28. <u>Good Faith Under Sections 363 and 364 of the Bankruptcy Code; No Modification or Stay of this Final Order</u>. Subject to paragraph 36, each of the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors have acted in good faith in connection with the DIP Orders and their reliance on the DIP Orders is in good faith. Based on the findings set forth in the DIP Orders and the records made during the Interim Hearing and the Final Hearing, and in accordance with sections 363(m) and 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of the Court, or any other court, the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall be and hereby are entitled to the protections provided in sections 363(m) and 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made, or lien, claim or priority authorized or created hereby, provided that the Final Order was not stayed by court order after due notice had been given to the DIP Agent at the time the advances were made or the liens, claims or priorities were authorized and/or created. Any liens or claims granted to the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors hereunder or under the Interim Order arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order

or the Interim Order, as applicable, including entitlement to all rights, remedies, privileges and benefits granted herein or under the Interim Order, provided that the Final Order was not stayed by court order after due notice had been given to the DIP Agent and each of the DIP Lenders and Prepetition Secured Creditors at the time the advances were made or the liens, claims or priorities were authorized and/or created.  All provisions of this paragraph are subject to the reservations in paragraph 36.

29.     <u>DIP and Other Expenses</u>.   The Debtor is authorized and directed to pay all reasonable and documented out-of-pocket expenses of (x) the DIP Agent and the DIP Lenders in connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents, and (y) the Prepetition Agent (including, without limitation, expenses incurred prior to the Petition Date) as provided in the Prepetition Credit Documents including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Debtor's receipt of summary copies of invoices for the payment thereof.  Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall not be required to comply with the U.S. Trustee fee guidelines.  Notwithstanding the foregoing, at the same time such summary copies of invoices (which shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of

any benefits of the attorney work product doctrine) are delivered to the Debtor, the professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall deliver a copy of their respective invoice summaries to counsel for the Committee and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtor, the U.S. Trustee or the Committee with respect to such invoice summaries within ten (10) days of the receipt thereof will be resolved by the Court or agreed among the parties. In the event of any objection that cannot otherwise be resolved consensually, the provisions of section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice summary will be paid promptly by the Debtor. Notwithstanding the foregoing, the Debtor was authorized and directed to pay on the Closing Date (as defined in the DIP Credit Agreement) all fees, costs and expenses of the DIP Agent, the DIP Lenders and the Prepetition Agent incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition Agent to first deliver a copy of its invoice summary as provided for herein.

30. <u>Indemnification</u>.

(a) The Debtor shall indemnify and hold harmless the DIP Agent and the DIP Lenders and each of their shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan

Documents, or the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with this Case, any plan, or any action or inaction by the Debtor, in each case except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, the DIP Agent and/or the DIP Lenders, as applicable, shall be entitled to select their own counsel and, in addition to the foregoing indemnity, the Debtor agrees to promptly advance and pay the reasonable fees and expenses of such counsel.

(b)　　Upon the earliest of (i) entry of this Final Order and the repayment in full in cash of the Prepetition Obligations, (ii) payment in full in cash of the DIP Obligations and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agent or (iii) conclusion of the Remedies Notice Period, the Debtor shall deposit $500,000 into an indemnity account (the "**Prepetition Loan Indemnity Account**") controlled by and subject to first priority liens of the DIP Agent, for the benefit of the DIP Lenders, and the Prepetition Agent, for the benefit of the Prepetition Secured Creditors. The Prepetition Loan Indemnity Account shall be released and the funds applied in accordance with paragraph 20 of this Final Order upon the indefeasible payment in full, in cash of the DIP Obligations and the Prepetition Obligations and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agent and the Prepetition Agent (as applicable), and the receipt by the DIP Agent, the Prepetition Agent, and each of the DIP Lenders and Prepetition

Secured Creditors of releases from the Debtor and its estate, with respect to any claims arising out of or related to the DIP Loan Documents or the Prepetition Credit Documents, acceptable to the DIP Agent, the Prepetition Agent, and each of the DIP Lenders and the Prepetition Secured Creditors, which acceptance shall not be unreasonably withheld. The Debtor shall consult with the Committee prior to providing the DIP Agent, Prepetition Agent, DIP Lenders, and Prepetition Secured Creditors with a release of any claims.

31. <u>Proofs of Claim</u>. Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in the Case or any Successor Cases shall not apply to the DIP Agent, DIP Lenders or the Prepetition Secured Creditors. Neither DIP Agent nor the Prepetition Agent will be required to file proofs of claim or requests for approval of administrative expenses in the Case or any Successor Cases, and the provisions of this Final Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim, the Prepetition Obligations and the Adequate Protection Superpriority Claim shall constitute timely filed proofs of claim and/or administrative expense requests; provided however, that the DIP Agent, DIP Lenders, and Prepetition Secured Creditors shall provide an itemized detailed accounting of each of their claims to the Committee and the Debtor on or before September 16, 2019.

32. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, or the Prepetition Secured Creditors under the Prepetition Credit Documents, the Debtor shall be, and hereby is, required to afford representatives, agents and/or employees of the DIP Agent, DIP Lenders, and Prepetition Secured Creditors reasonable access to the Debtor's premises and its books and records in accordance with the DIP Loan Documents and Prepetition Credit

Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtor authorizes its independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent, DIP Lenders, and Prepetition Secured Creditors all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

33.    Carve Out.

(a)    *Carve Out*.  As used in this Final Order, the "**Carve Out**" means, collectively, the following expenses: (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and Section 3717 of title 31 of the United States Code, (b) Allowed Professional Fees of professionals retained by the Debtor and the Committee (collectively, the "**Case Professionals**") incurred prior to the delivery of a Carve Out Trigger Notice (net of any retainers maintained by such Case Professionals), limited to the weekly budgeted amounts in respect of each applicable Case Professional set forth in the Approved Budget as of any applicable date of determination, which amounts shall be funded into the Professional Fee Escrow Account weekly pursuant to the Approved Budget and in accordance with the DIP Credit Agreement, and (c) $25,000 for Allowed Professional Fees of Case Professionals incurred following the delivery of a Carve Out Trigger Notice, which amount under clause (c) (the "**Final Carve Out Contribution**") was previously funded into the Professional Fee Escrow Account by the DIP Agent.  The Professional Fee Escrow Account shall be used to make disbursements to Case Professionals in the amounts and at the times authorized by the Bankruptcy Court and for no other purpose.  No portion of the Carve Out, nor any Cash Collateral or proceeds of the DIP Collateral or

Prepetition Collateral may be used in violation of the DIP Orders. Any amounts on deposit in the Professional Fee Escrow Account after the payment in full of all Allowed Professional Fees of Case Professionals pursuant to final fee applications and orders in the Case shall be returned to the DIP Agent, which amounts shall be applied to the Obligations in the order and manner required by the DIP Loan Documents. For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by the DIP Agent to the lead counsel for the Debtor, the U.S. Trustee, and the Committee, which notice may be delivered at any time by the DIP Agent (1) in connection with the repayment in full, in cash of the DIP Obligations and the Prepetition Obligations and all letters of credit related thereto having been cancelled, backed, or cash collateralized in accordance with the terms thereof, and all bank product obligations having been cash collateralized in a manner and amount acceptable to the DIP Agent and the Prepetition Agent (as applicable) or (2) at the option of the DIP Agent, in its sole discretion, following the occurrence and continuance of any Event of Default and, in any case, shall specify that it is a "Carve Out Trigger Notice" and may, at the option of the DIP Agent and the Prepetition Agent, each in their sole discretion, expressly state that no additional Committed Revolving Loans (as defined in the DIP Credit Agreement) may be requested to fund the Carve Out.

(b) *No Direct Obligation to Pay Professional Fees or Committee Expenses*. The DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals or any expenses of the members of the Committee incurred in connection with the Case or any Successor Cases, except as necessary to fund the Carve Out or the Professional Fee Escrow Account. Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors in any way to pay compensation to

or to reimburse expenses of any Case Professional (including any expenses of the members of the Committee), to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement, or as consent to the allowance of any particular professional fees or expense of any Case Professional. Nothing in this Final Order or otherwise shall be construed to increase the Carve Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Approved Budget. Subject to satisfaction of the Final Funding Obligations set forth herein, upon entry of this Final Order, the obligations of the DIP Agent and the DIP lenders to fund the Carve Out and the Professional Fee Escrow Account are hereby terminated.

(c)     *Payment of Carve Out*. Upon the occurrence of the Termination Date, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject to the payment of the unfunded amount of the Carve Out, if any, into the Professional Fee Escrow Account. The funding of the Carve Out was previously added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

34.     Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals Carve Out. Unless otherwise ordered by the Court after notice to the DIP Agent and a hearing, or consented to by the DIP Agent, the DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of the Prepetition Secured Creditors, the DIP Agent or the DIP Lenders or their rights and remedies under the DIP Loan Documents, the Prepetition Credit

Documents, or the DIP Orders, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations or the Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, or their respective collateral, (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors of any rights and remedies under the DIP Orders, the DIP Loan Documents, the Prepetition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP Collateral, by the Prepetition Agent with respect to its Adequate Protection Liens, or (iv) to pursue litigation against any Prepetition Secured Creditor; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtor; (e) objecting to, contesting, or interfering with, in any way, the DIP Agent's, the DIP Lenders', or the Prepetition Secured Creditors' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral, as applicable, once an Event of Default has occurred, except as provided for in the DIP Orders, or seeking to prevent the DIP Agent or Prepetition Agent from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the

Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations or the Prepetition Obligations remain outstanding in a manner inconsistent with the Approved Budget or this Final Order; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Agent or Prepetition Agent; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Obligations, the DIP Liens, the Prepetition Liens or any other rights or interests of the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors *provided, however*, that the Carve Out and such collateral proceeds and loans under the DIP Credit Agreement may be used for allowed fees and expenses, in an amount not to exceed $25,000 in the aggregate, incurred solely by the Committee, in investigating (but not prosecuting or challenging) the validity, enforceability, perfection, priority or extent of the Prepetition Liens, which investigation shall conclude no later than October 31, 2019.

35. <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees and expenses.

36. <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)     The stipulations, findings, representations and releases contained in the DIP Orders and the DIP Loan Documents with respect to the Prepetition Secured Creditors and the Prepetition Obligations shall be binding upon all parties-in-interest, any trustee appointed in the Case and the Committee (each, a "**Challenge Party**"), unless and solely to the extent that (i) the Debtor received from a Challenge Party notice of a potential Challenge (defined below) during the Challenge Period (defined below) or the Committee files a Challenge with the Court and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge. For purposes of this paragraph 36:  (a) "**Challenge**" means any claim or cause of action against any of the Prepetition Secured Creditors on behalf of the Debtor or the Debtor's creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtor's Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (ii) the validity, allowability, priority, or amount of the Prepetition Obligations (including any fees included therein); (iii) the secured status of the Prepetition Obligations; (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from any of the respective Prepetition Credit Documents; or (v) the releases set forth in the DIP Loan Documents; and (b)  "**Challenge Period**" means the period ending at 11:59 p.m. (Boston time) on October 31, 2019; *provided, however*, that such period may be extended by agreement of the Prepetition Secured Creditors or order of the Court upon a motion duly noticed to the Debtor and the DIP Agent.  The Committee is granted non-exclusive direct and/or derivative standing to bring any Challenges during the Challenge Period.

(b)     During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to

assert a Challenge, it must notify the Debtor, the DIP Agent and the Prepetition Secured Creditors during the Challenge Period of its demand or, in the case of the Committee, file a Challenge with the Court. Nothing herein shall be deemed to grant standing in favor of any Challenge Party other than the Committee absent further order of the Court.

(c)     Upon the expiration of the Challenge Period without the filing of a Challenge (the "**Challenge Period Termination Date**"): (A) any and all such Challenges and objections by any party (including, without limitation, the Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in the Case, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Secured Creditor's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in the Case and any Successor Cases; and (C) any and all claims or causes of action against the Debtor or any of the Prepetition Secured Creditors relating in any way to the Debtor or the Prepetition Credit Documents shall be forever waived and released by the Debtor's estate, all creditors, interest holders and other parties in interest in this Case and any Successor Cases.

37.     Reservation of Rights: Notwithstanding anything to the contrary contained in this Final Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 36 hereof), the Court may unwind the repayment of the Prepetition Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Obligations consisting of an unsecured claim or other amount not

allowable under sections 502 and 506 of the Bankruptcy Code. Notwithstanding the foregoing, a successful Challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens unless otherwise ordered by the Court after notice to the DIP Agent and a hearing.

38.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, the DIP Orders do not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

39.     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP Collateral, the Prepetition Secured Creditors or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

40.     <u>No Marshaling/Applications of Proceeds</u>.  Neither the DIP Agent, the DIP Lenders, nor any of the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

41.     <u>Section 552(b)</u>.  The DIP Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, or any of the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

42.     <u>Discharge Waiver</u>.  The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations (including

the DIP Roll-Up Loans) have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtor expressly stipulates, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been indefeasibly paid in full in cash on or before the effective date of a confirmed plan of reorganization. The Debtor shall not propose or support any plan or sale of all or substantially all of the Debtor's assets or entry of any confirmation order or sale order that is not conditioned upon the indefeasible payment in full in cash, on the effective date of such plan of all DIP Obligations (including the DIP Roll-Up Loans) and Adequate Protection Superpriority Claims.

43. <u>No Superior Rights of Reclamation</u>. Based on the continuation of the Prepetition Liens, the relation back of the DIP Liens, and the integrated nature of the DIP Facility and the Prepetition Credit Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

44. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Agent's or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtor (including the right to seek additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Creditors); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtor of post-petition interest or fees pursuant to section

506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of the Case or Successor Cases, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans. Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors are preserved.

45. <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors.

46. <u>Binding Effect of Final Order</u>. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtor, the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, all other creditors of the Debtor, the Committee and any other court appointed committee (if appointed), and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Case, any Successor Cases, or upon dismissal of the Case or any Successor Case.

47.     <u>No Modification of Final Order</u>.  Until and unless the DIP Obligations and the Prepetition Obligations have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility or the Prepetition Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtor irrevocably waives any right to seek any amendment, modification or extension of this Final Order without the prior written consent of each of the DIP Agent and Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and/or the Prepetition Agent.

48.     <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

49.     <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case or any Successor Cases; or (d) pursuant to which the Court abstains from hearing the Case or any Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders, and Prepetition Secured Creditors pursuant to the DIP Orders and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Case, in any Successor Cases, or following dismissal of the Case or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations and Prepetition Obligations have been indefeasibly paid in full in cash and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification

of the DIP Agent and the Prepetition Secured Creditors shall continue in the Case and in any Successor Cases, following dismissal of the Case or any Successor Cases, following termination of the DIP Loan Documents and/or the indefeasible repayment of the DIP Obligations and the Prepetition Obligations.

50.     <u>Treatment of Proceeds from Sale of Texas Assets</u>.  As adequate protection for the claims of the Local Texas Tax Authorities, upon entry of this Final Order, the DIP Agent and the DIP Lenders shall make advances under the DIP Facility, or shall permit the Debtor to use Cash Collateral from the proceeds of the sale of inventory, as applicable, in an amount of not less than $747,833.88 into a segregated account (the "**<u>Local Texas Tax Account</u>**").  The liens asserted by the Local Texas Tax Authorities (and all other liens junior to those of the Local Texas Tax Authorities) shall attach to the Local Texas Tax Account to the same extent and with the same priority as the liens the Local Texas Tax Authorities assert against such assets of the Debtor. The Local Texas Tax Account shall be maintained solely for the purpose of providing adequate protection for the Local Texas Tax Authorities prior to the distribution of any proceeds to any other creditor and shall constitute neither the allowance of the claims of the Local Texas Tax Authorities, nor a floor or cap on the amounts the Local Texas Tax Authorities may be entitled to receive.  All parties' rights to object to the priority, validity, amount and extent of the claims and liens asserted by the Local Texas Tax Authorities are fully preserved.  Unless otherwise ordered by the Court, funds in the Local Texas Tax Account shall be used solely to pay the allowed claims of the Local Texas Tax Authorities.  Such funds may be distributed upon agreement between the Local Texas Tax Authorities and the Debtor, with the prior written consent of the DIP Agent, or by subsequent order of the Court, duly noticed to the Local Texas Tax Authorities and the DIP Agent.

51. <u>Rights Reserved for Texas Comptroller of Public Accounts; Establishment of Sales Tax Escrow Account</u>.

(a) *Rights Reserved*. Notwithstanding any other provisions included in the DIP Orders, but subject to paragraphs 36 and 37 of this Final Order, the relief granted herein is without prejudice to any rights of the Texas Comptroller of Public Accounts (the "**Comptroller**") with respect to funds which do not constitute property of the estate but which may qualify as sales tax trust funds. The Comptroller is not precluded from pursuing such funds by this Final Order, nor is any party in interest precluded from contesting any action of the Comptroller to recover alleged trust funds. Nothing in this Final Order shall relieve the Debtor from complying with 28 U.S.C. §§ 959 and 960 with respect to the Comptroller's trust fund taxes. Notwithstanding any other provisions in the DIP Orders, the Comptroller's tax liens attach to any proceeds from the sale of any of the Debtor's assets to the same extent and with the same priority as the liens held by the Comptroller as of the Petition Date.

(b) *Sales Tax Escrow Account*. Notwithstanding any other provisions included in this Final Order, upon entry of this Final Order, the Debtor shall: (i) establish an escrow account at an approved depository institution into which the Debtor shall deposit Texas sales taxes as provided for herein (the "**Sales Tax Escrow Account**"); (ii) deposit, at least weekly, into the Sales Tax Escrow Account all Texas sales tax received by the Debtor after the date of this Final Order, beginning no more than seven (7) days of the entry of this Final Order; (iii) provide the Comptroller's counsel a copy of the weekly deposit slip confirming deposit of trust fund taxes into the Sales Tax Escrow Account, when requested; (iv) provide the Comptroller's counsel the monthly bank statement for the Sales Tax Escrow Account, when requested; (v) provide access to Debtor's books and records, on reasonable notice of at least 48

hours to Debtor's counsel, so that Comptroller's representative(s) may review or audit such records; and (vi) timely file all post-petition Texas tax returns and remit all post-petition state taxes on or before their due date.

52. <u>Consulting Agreement</u>. Subject to paragraphs 36 and 37 of this Final Order, the liens and security interests granted pursuant to the Consulting Agreement dated as of July 26, 2019 by and between the Debtor and a contractual joint venture comprised of Hilco Merchant Resources, LLC and SB360 Capital Partners, LLC (the "<u>Consulting Agreement</u>") are valid, enforceable, perfected, non-avoidable, and have the priority set forth in the Consulting Agreement. Nothing in this Final Order or the DIP Loan Documents shall prime the liens and security interests granted on the "Additional Agent Goods" (as defined in the Consulting Agreement) pursuant to the Consulting Agreement. Notwithstanding anything to the contrary herein, the DIP Agent (subject to the order authorizing the assumption of the Consulting Agreement) and the DIP Lenders shall have no obligation (other than to make proceeds available in accordance with the terms of the DIP Loan Documents) to fund any payments to be made under the Consulting Agreement.

53. <u>Settlement of Committee Objection</u>. In consideration of the withdrawal of the Committee Objection, and notwithstanding anything to the contrary set forth in this Final Order or the DIP Loan Documents, the DIP Agent and the DIP Lenders agree, and the Court finds and rules, as applicable, as follows:

(a) *Modification of Fees Owed to DIP Agent; Creation of GUC Trust*. The fees that are owed to the DIP Agent, or that have been paid to the DIP Agent as of the date hereof, are reasonable and approved as set forth herein; *provided, however*, that, upon entry of this Final Order, (i) the commitment or unused line fees and maintenance fees payable to the DIP

Agent under the DIP Credit Agreement shall be deemed waived in their entirety; and (ii) the closing fee paid to the DIP Agent upon closing of the DIP Credit Agreement in the amount of $200,000 shall be reduced by $180,000 (the "**Returned Closing Fee Amount**"). The Returned Closing Fee Amount shall be allocated as follows: (x) $105,000 shall be returned to the Debtor for the benefit of its estate, which funds shall be used in accordance with the Approved Budget; and (y) $75,000 shall be funded as a gift for the benefit of general unsecured creditors into a separate account held by the Debtor (the "**GUC Trust**") to be used to fund a trust or other vehicle for distributions to or for the benefit of general unsecured creditors; *provided, however*, that the rights of the United States Trustee, the Debtor, the Committee, and all parties in interest are reserved with respect to whether the funds must be reallocated for the payment of statutory fees, administrative expenses, or creditors whose claims are senior in priority to claims held by general unsecured creditors.

(b)     *Final Funding Obligations.*  Upon entry of this Final Order, in full and final satisfaction of their obligations to extend credit under the DIP Facility, the DIP Agent and the DIP Lenders shall make advances under the DIP Facility, or shall permit the Debtor to use Cash Collateral from the proceeds of the sale of inventory, as applicable, in an amount sufficient to satisfy the following budgeted disbursements (each as defined in the budget that is deemed the Approved Budget as of entry of this Final Order): (i) Store Payroll and Corporate and DC Payroll for the weeks ended August 30, 2019 and September 6, 2019 in the amount of $1,070,000; (ii) Store Occupancy ("stub rent") in the amount of $910,000; (iii) Property Tax in the amount of $747,833.88 and in accordance with paragraph 50 hereof, which amounts shall be funded into a segregated account to be established by the Debtor; and (iv) Professional Fees for the week ended August 30, 2019 in the amount of $160,000 (it being acknowledged that such amounts

have been funded prior to entry of this Final Order). Notwithstanding anything to the contrary set forth in this Final Order or the DIP Loan Documents, upon payment of these Final Funding Obligations, the DIP Agent and the DIP Lenders shall have no further obligation to extend credit under the DIP Facility, and the Debtor shall have no authority to request to borrow funds under the DIP Facility; *provided, however*, that, for the avoidance of doubt, such termination shall not impair the rights of the DIP Agent or any of the DIP Lenders or Prepetition Secured Creditors to collect any amounts that remain outstanding to such parties including, without limitation, on account of the Final Funding Obligations.

(c)     *Elimination of Certain Events of Default*.  Those certain Events of Default identified in section 3 of the Committee Objection (the "**Specified Events of Default**") are hereby deemed stricken from the DIP Credit Agreement; *provided, however*, that all Events of Default listed in the DIP Credit Agreement other than the Specified Events of Default shall remain in full force and effect.

54.     <u>Effect of this Final Order</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

55.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce the DIP Orders according to their terms.

###

# EXHIBIT A

**Approved Budget**

# EXHIBIT A

A'GACI
DIP Budget
Cash Flow Summary

| Forecast Week | 1 | 2 | 3 | 4 | 5 | | |
|---|---|---|---|---|---|---|---|
| Retail Week | 27 | 28 | 29 | 30 | 31 | Total | Post |
| Week Ending | 8/9/2019 | 8/16/2019 | 8/23/2019 | 8/30/2019 | 9/6/2019 | Through | Sale |
| ($ in 000s) | Actual | Actual | Actual | Forecast | Forecast | Sale | |
| **Cash Flow** | | | | | | | |
| **Cash Receipts** | | | | | | | |
| Cash Register Collections | - | - | - | - | 125 | 125 | - |
| Credit Card Collections | - | - | - | - | 1,182 | 1,182 | 328 |
| Inventory Proceeds | - | - | - | 3,019 | - | 3,019 | - |
| Furniture Fixtures & Equipment | - | - | 193 | 23 | 35 | 251 | 50 |
| Insurance Claim Proceeds | - | - | - | - | 205 | 205 | 1,620 |
| Visa / Mastercard Litigation | - | - | - | - | - | - | 115 |
| Potential Other Asset Sales (IP / CC) | - | - | - | - | - | - | 250 |
| Residual Balance Deposit Account | - | - | - | 65 | - | 65 | - |
| Gift Card Redemption | - | - | - | - | - | - | - |
| **Total Cash Receipts** | **1,832** | **3,151** | **3,407** | **3,107** | **1,547** | **13,043** | **2,363** |
| **Operating Disbursements** | | | | | | | |
| Store Occupancy | - | - | - | - | 900 | 900 | - |
| Store Payroll | - | 700 | - | 715 | 275 | 1,690 | - |
| Corporate and DC Payroll | 384 | 124 | 73 | 65 | 15 | 662 | 50 |
| Accrued Vacation | 61 | - | - | - | 100 | 161 | - |
| Corporate and DC Rent | - | - | - | - | 43 | 43 | 36 |
| AP - Merchandise | - | - | - | - | - | - | - |
| AP - Other | 62 | 75 | 3 | 40 | - | 180 | 50 |
| Freight | - | 111 | 28 | - | - | 138 | - |
| Pre-Petition Sales Tax | - | - | - | - | - | - | 1,823 |
| Sales Tax Penalties, Interest and Audit | - | - | - | - | - | - | 600 |
| Post-Petition Sales Tax | - | - | - | - | - | - | 765 |
| Property Tax | - | - | - | - | 748 | 748 | - |
| Credit Card Fees | - | - | - | 67 | 70 | 137 | - |
| Insurance | - | 30 | - | 40 | 50 | 120 | (39) |
| Advertising and Supervision | - | 99 | 95 | 75 | 50 | 319 | - |
| Other | - | - | - | - | 575 | 575 | (500) |
| **Total Operating Disbursements** | **507** | **1,139** | **198** | **1,002** | **2,826** | **5,672** | **2,785** |
| **Net Cash Flow from Operations** | **1,325** | **2,012** | **3,209** | **2,105** | **(1,279)** | **7,372** | **(422)** |
| Cumulative Net Cash Flow from Operations | 819 | 2,831 | 6,040 | 8,145 | 6,866 | 14,237 | 13,816 |
| **Non-Operating Disbursements** | | | | | | | |
| Professional Fees | 136 | 60 | 160 | 160 | - | 516 | 355 |
| Lender Professionals | 10 | - | 140 | - | - | 150 | - |
| Claims Agent | 40 | - | 20 | 10 | - | 70 | - |
| Liquidator Fees | - | 37 | 43 | 28 | 19 | 126 | - |
| **Total Non-Operating Disbursements** | **186** | **97** | **363** | **198** | **19** | **862** | **355** |
| **Net Cash Flow** | **1,139** | **1,915** | **2,846** | **1,907** | **(1,298)** | **6,509** | **(777)** |
| Cumulative Net Cash Flow | 1,139 | 3,054 | 5,900 | 7,808 | 6,509 | | 7,031 |
| **Borrowing Base** | | | | | | | |
| Inventory (Cost) | 7,085 | 4,859 | 3,204 | 1,817 | - | | |
| Less: Shrink Reserve | (238) | (304) | (387) | (446) | - | | |
| Total Eligible Inventory | 6,846 | 4,555 | 2,817 | 1,372 | - | | |
| Advance Rate | 81.9% | 63.0% | 52.0% | 25.0% | 100.0% | | |
| NOLV | 94.9% | 94.9% | 94.9% | 94.9% | 94.9% | | |
| **Net BB from Inventory** | **5,321** | **2,723** | **1,390** | **325** | **-** | | |
| Credit Card A/R | 1,153 | 1,093 | 1,367 | 1,182 | - | | |
| Less: Fees/Chargebacks | - | - | - | - | - | | |
| Less: Holdback Reserve | (328) | (328) | (328) | (328) | (328) | | |
| Total Eligible Credit Card A/R | 825 | 765 | 1,039 | 854 | (328) | | |
| Advance Rate | 95.0% | 95.0% | 95.0% | 95.0% | 95.0% | | |
| **Net BB from Credit Card A/R** | **784** | **727** | **987** | **811** | **(312)** | | |
| Total Borrowing Base, before Reserves | 6,105 | 3,450 | 2,377 | 1,136 | (312) | | |
| Less: Reserves | (572) | (572) | (572) | (572) | (572) | | |
| **Total Borrowing Base, net of Reserves** | **5,533** | **2,878** | **1,805** | **564** | **-** | | |
| **Debt Schedules** | | | | | | | |
| **DIP Loan** | | | | | | | |
| Beginning DIP Loan Balance | 6,019 | 5,091 | 3,175 | 329 | (1,758) | 6,019 | (421) |
| Less: Collections | (1,832) | (3,151) | (3,407) | (3,107) | (1,547) | (13,043) | (2,363) |
| Plus: Interest and Fees | 210 | - | - | (180) | 39 | 69 | - |
| Plus: Net Funding Request | 693 | 1,236 | 561 | 1,199 | 2,845 | 6,534 | 3,140 |
| **Ending DIP Loan Balance** | **5,091** | **3,175** | **329** | **(1,758)** | **(421)** | **(421)** | **356** |
| **DIP Availability** | **443** | **-** | **1,476** | **564** | **-** | | |
| **Projected Asset Coverage** | **1.09x** | **0.91x** | **5.49x** | **N/A** | **N/A** | | |
| **GUC Trust** | - | - | - | - | 75 | 75 | 75 |

# SCHEDULE 1

**List of Local Texas Taxing Authorities**

# SCHEDULE 1

| Creditor | Address | Representative | Representative Address | Representative Phone Number | Representative Email Address |
|---|---|---|---|---|---|
| Bexar County Tax Assessor Collector | 233 N. Pecos LA Trinidad San Antonio, Texas 78207 | Linebarger, Goggan, Blair and Sampson, LLP | 711 Navarro Street, Suite 300 San Antonio, Texas 78205 | (210) 225-6763 | sanantonio.bankruptcy@publicans.com |
| Alief Independent School District | P.O Box 368 Alief, Texas 77411 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | osonik@pbfcm.com |
| Arlington Indepensent School District | 500 East Border Street Suite 640 Arlington, Texas 76010 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 500 East Border Street Suite 640 Arlington, Texas 76010 | (817) 461-3344 | ecobb@pbfcm.com |
| Brazoria County Tax Office | 111 E Locust Angleton, Texas 77515 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | mdarlow@pbfcm.com |
| Cameron County | P.O. Box 17428 Austin, Texas 78760 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 17428 Austin, Texas 78760 | (512) 447-6675 | austin.bankruptcy@publicans.com |
| City of Eagle Pass | 100 S. Monroe Eagle Pass, Texas 78852 | Linebarger, Goggan, Blair and Sampson, LLP | 711 Navarro Street, Suite 300 San Antonio, Texas 78205 | (210) 225-6763 | sanantonio.bankruptcy@publicans.com |
| City of El Paso | P.O. Box 2992 El Paso, Texas 79999-2992 | Linebarger, Goggan, Blair and Sampson, LLP | 711 Navarro Street, Suite 300 San Antonio, Texas 78205 | (210) 225-6763 | sanantonio.bankruptcy@publicans.com |
| City of Grapevine | 500 East Border Street Suite 640 Arlington, Texas 76010 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 500 East Border Street Suite 640 Arlington, Texas 76010 | (817) 461-3344 | ecobb@pbfcm.com |
| City Of Harlingen | P.O. Box 17428 Austin, Texas 78760 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 17428 Austin, Texas 78760 | (512) 447-6675 | austin.bankruptcy@publicans.com |
| City of Houston | 1235 North Loop West Suite 600 Houston, Texas 77088 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | mdarlow@pbfcm.com |
| City of Katy | 1317 Eugene Heimann Circle Richmond, Texas 77469 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | mdarlow@pbfcm.com |
| City of Mercedes | 320 S. Ohio Mercedes, TX 78570 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | |
| City of McAllen | P.O. Box 17428 Austin, Texas 78760 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 17428 Austin, Texas 78760 | (512) 447-6675 | austin.bankruptcy@publicans.com |
| Crowley Independent School District | 500 East Border Street Suite 640 Arlington, Texas 76010 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 500 East Border Street Suite 640 Arlington, Texas 76010 | (817) 461-3344 | ecobb@pbfcm.com |
| Cypress Fairbanks ISD | 10494 Jones Road RM 106 Houston, Texas 77065 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 3064 Houston, Texas 77253 | (713) 884-3400 | houston.bankruptcy@publicans.com |
| Dallas County | 2777 N. Stemmons Freeway Suite 1000 Dallas, Texas 75207 | Linebarger, Goggan, Blair and Sampson, LLP | 2777 N. Stemmons Freeway Suite 1000 Dallas, Texas 75207 | (214) 880-0089 | dallas.bankruptcy@publicans.com |
| Eagle Pass ISD | 1420 Edison Road Eagle Pass, Texas 78852 | Linebarger, Goggan, Blair and Sampson, LLP | 711 Navarro Street, Suite 300 San Antonio, Texas 78205 | (210) 225-6763 | sanantonio.bankruptcy@publicans.com |
| Fort Bend County | 1317 Eugene Heimann Circle Richmond, Texas 77469 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 3064 Houston, Texas 77253 | (713) 884-3400 | houston.bankruptcy@publicans.com |
| Grapevine- Colleyville Independent School Di | 500 East Border Street Suite 640 Arlington, Texas 76010 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 500 East Border Street Suite 640 Arlington, Texas 76010 | (817) 461-3344 | ecobb@pbfcm.com |
| Harlingen CISD | P.O. Box 17428 Austin, Texas 78760 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 17428 Austin, Texas 78760 | (512) 447-6675 | austin.bankruptcy@publicans.com |
| Hidalgo County | P.O. Box 17428 Austin, Texas 78760 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 17428 Austin, Texas 78760 | (512) 447-6675 | austin.bankruptcy@publicans.com |
| Humble Independent School District | 1235 North Loop West Suite 600 Houston, Texas 77088 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | csandin@pbfcm.com |
| Katy Management District #1 | 12841 Capricorn Street, Stafford, Texas 77477 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | csandin@pbfcm.com |
| Lubbock Central Appraisal District | P.O. Box 817 Lubbock Texas 79408 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | P.O. Box 817 Lubbock Texas 79408 | (806) 744-5092 | lmonroe@pbfcm.com |
| Maverick County | 370 N. Monroe St., Ste 3, Eagle Pass, TX 78852 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | csandin@pbfcm.com |
| Midland Central Appraisal District | P.O. Box 908002 Midland Texas 79708 | McCeary, Veselka, Bragg & Allen P.C. | P.O. Box 1269 Round Rock Texas 76780-1269 | (512) 323-3200 | tleday@mvbalaw.com |
| Midland County | P.O. Box 817 Lubbock Texas 79408 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | P.O. Box 817 Lubbock Texas 79408 | (806) 744-5092 | lmonroe@pbfcm.com |
| Harris County | P.O. Box 3547 Houston Texas 77253 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 3064 Houston, Texas 77253 | (713) 884-3400 | houston.bankruptcy@publicans.com |
| San Marcos CISD | P.O. Box 17428 Austin, Texas 78760 | Linebarger, Goggan, Blair and Sampson, LLP | P.O. Box 17428 Austin, Texas 78760 | (512) 447-6675 | austin.bankruptcy@publicans.com |
| Smith County | 2777 N. Stemmons Freeway Suite 1000 Dallas, Texas 75207 | Linebarger, Goggan, Blair and Sampson, LLP | 2777 N. Stemmons Freeway Suite 1000 Dallas, Texas 75207 | (214) 880-0089 | dallas.bankruptcy@publicans.com |
| Spring Branch Independent School District | 1235 North Loop West Suite 600 Houston, Texas 77088 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | 1235 North Loop West Suite 600 Houston, Texas 77008 | (713) 862-1860 | osonik@pbfcm.com |
| Tarrant County | 2777 N. Stemmons Freeway Suite 1000 Dallas, Texas 75207 | Linebarger, Goggan, Blair and Sampson, LLP | 2777 N. Stemmons Freeway Suite 1000 Dallas, Texas 75207 | (214) 880-0089 | dallas.bankruptcy@publicans.com |
| Tax Appraisal District of Bell County | P.O. Box 390 Belton, Texas 76513 | McCeary, Veselka, Bragg & Allen P.C. | P.O. Box 1269 Round Rock Texas 76780-1269 | (512) 323-3200 | tleday@mvblaw.com |
| The County of Hayes County | 712 S. Stagecoach Trail, Suite 1120 San Marcos Texas 78666 | McCeary, Veselka, Bragg & Allen P.C. | P.O. Box 1269 Round Rock Texas 76780-1269 | (512) 323-3200 | tleday@mvblaw.com |
| The County of Williamson Texas | 904 South Main Georgetown Texas 78626 | McCeary, Veselka, Bragg & Allen P.C. | P.O. Box 1269 Round Rock Texas 76780-1269 | (512) 323-3200 | tleday@mvblaw.com |
| Tyler Independent School District | P.O. Box 2007 Tyler Texas 75710 | Perdue, Brandon, Fielder, Collins & Mott, L.L.P. | P.O. Box 2007 Tyler Texas 75710 | (909) 597-7664 | tbeall@pbfcm.com |