# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| A'GACI, L.L.C.,[1] | ) | Case No. 19-51919 |
| | ) | |
| *Debtor*. | ) | |
| | ) | |

## EXPEDITED MOTION OF SECOND AVENUE CAPITAL PARTNERS TO CONVERT CHAPTER 11 CASE TO CASE UNDER CHAPTER 7

Second Avenue Capital Partners, LLC ("Second Avenue" or the "DIP Agent"), by and through its undersigned counsel, hereby files this *Expedited Motion of Second Avenue Capital Partners to Convert Chapter 11 Case to Case under Chapter 7* ("Motion to Convert"). In further support of this Objection, Second Avenue respectfully states as follows:

### Preliminary Statement

1. At the first-day hearing, in response to a question from the Court as to what the Debtor planned to do following the conclusion of its inventory liquidation sales, the Debtor advised that it likely would seek conversion or dismissal of its chapter 11 case (the "Case"). At the hearing held on September 25, 2019, the Court inquired more directly, this time of the United States Trustee, why the Court should not convert the Case *sua sponte*, given the admission by the Debtor that its estate is administratively insolvent, as well as the many statements made by the United States Trustee to that effect.

2. The inventory liquidation sales have concluded, and, unfortunately, the Debtor has made clear that the estate is administratively insolvent. Second Avenue respectfully submits that the time is ripe, and "cause" exists, to convert the Case to one under chapter 7. In addition

---

[1] The last four digits of the Debtor's federal tax identification number are 9604.

to concerns raised by the Court, there are other, independent grounds for converting this Case. Among others, the Debtor has mismanaged its estate, failed to comply with one or more Orders of this Court, and failed to pay taxes that have come due after the Petition Date. Each of these examples of inaction or misconduct constitutes "cause" for converting the Case.

3. The Bankruptcy Code provides that if "cause" exists to convert or dismiss a chapter 11 case, such conversion or dismissal is mandatory unless (i) the appointment of a chapter 11 trustee or examiner would be in the best interests of the estate and its creditors or (ii) the conditions of Section 1112(b)(2) are satisfied, which require, among other things, proof (a) of "unusual circumstances" that warrant delaying or denying a request for conversion; (b) that a plan of reorganization can be timely confirmed; (c) that there is a reasonable justification for the inaction or misconduct that gave rise to "cause" for conversion; and (d) that such inaction or misconduct will be remedied within a reasonable period of time. Second Avenue respectfully submits that the appointment of a chapter 11 trustee or examiner would not be in the best interests of the estate and its creditors, as such appointment would only deepen the estate's insolvency by adding additional administrative costs, and there are no circumstances in this case under which the requirements of Section 1112(b)(2) can be satisfied.

4. Moreover, courts are instructed to consider the "totality of the circumstances" when determining whether a chapter 11 case should be converted or dismissed. As the Court is aware, Mr. David Won, the Debtor's principal, CEO, sole shareholder, and necessary signatory for any disbursements is currently unavailable to perform his corporate duties due to a medical emergency. Second Avenue understands that, before Mr. Won became medically unavailable, he refused to authorize the disbursement of millions of dollars that Second Avenue funded pursuant to the terms of the Final DIP Order. And, although no disbursements have occurred,

Second Avenue also understands that Mr. Won has caused funds designated for specific beneficiaries to be transferred to other accounts of the Debtor in violation of Orders issued by this Court. This inaction and misconduct of the Debtor's sole decision-maker, along with the reality that that decision-maker is medically unavailable and thus incapable of curing such inaction and misconduct, provides further grounds for the immediate conversion of the Case.

5. Also prior to becoming medically unavailable, Mr. Won made a number of baseless claims to the Committee concerning Second Avenue. Given its fiduciary duty to unsecured creditors, the Committee has begun investigating those meritless claims. By filing this motion, Second Avenue does not seek to quash that investigation. Although Second Avenue does not know the exact nature of the unsubstantiated claims made by Mr. Won, Second Avenue is confident that it will be exonerated by any investigation conducted by an estate fiduciary. Given the mounting administrative costs and the statutory mandate for dismissal, Second Avenue submits that the estate fiduciary who should conclude the investigation is a chapter 7 trustee.

6. For all these reasons and those stated herein, Second Avenue respectfully requests that the Court grant the Motion to Convert and appoint a chapter 7 trustee who can bring this Case to its rightful conclusion in as expeditious and just a manner as possible.

**Relevant Facts**

7. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. On August 8, 2019, the Court held a hearing on the DIP Motion and, on August 9, 2019, entered an interim Order [Docket No. 29] approving that motion.

9. Thereafter, objections were filed by the United States Trustee for the Western District of Texas (the "U.S. Trustee"), the Official Committee of Unsecured Creditors (the

"Committee") and the Comptroller of Public Accounts of the States of Texas (the "Comptroller"). *See* Docket Nos. 72, 100 & 108 (collectively, the "DIP Objections"). On August 28, 2019, Second Avenue filed its reply in support of entry of the Final DIP Order [Docket No. 117].

10. The Court held a hearing on the DIP Motion on August 28, 2019 (the "Final Hearing"). Prior to the Final Hearing, Second Avenue negotiated in good faith with the Committee, the U.S. Trustee, and the Comptroller concerning their respective DIP Objections. As a result of those negotiations, with exceptions not relevant to this motion, each of those parties withdrew their DIP Objections and the Court approved the DIP Motion on a final basis based on the global settlement read into the record by counsel to Second Avenue. The Final DIP Order was entered on September 9, 2019 [Docket No. 144].

11. Thereafter, in accordance with the terms of the Final DIP Order, Second Avenue funded its Final Funding Obligations.[2] On September 24, 2019, Second Avenue learned for the first time that none of the amounts that Second Avenue funded for the benefit of the Debtor's secured and administrative creditors have been disbursed to the intended beneficiaries. Second Avenue understands that Mr. Won, the only person who can authorize disbursements from the Debtor's estate, has refused to release funds to pay, among other obligations, payroll, "stub rent", and taxes.

---

[2] The Final Funding Obligations that Second Avenue has satisfied are set forth in Paragraph 53(b) of the Final DIP Order and are as follows:

(i) Store Payroll and Corporate and DC Payroll for the weeks ended August 30, 2019 and September 6, 2019 in the amount of $1,070,000; (ii) Store Occupancy ("stub rent") in the amount of $910,000; (iii) Property Tax in the amount of $747,833.88 and in accordance with paragraph 50 hereof, which amounts shall be funded into a segregated account to be established by the Debtor; and (iv) Professional Fees for the week ended August 30, 2019 in the amount of $160,000 (it being acknowledged that such amounts have been funded prior to entry of this Final Order).

Final DIP Order, ¶ 53(b).

4

24087554v.1 155476/00001

12. On September 20, 2019, the Committee filed the *Expedited Motion of the Official Committee of Unsecured Creditors to Reconsider the September 9, 2019 Final Order Approving the Motion* [Docket No. 168] (the "Motion to Reconsider"). Concurrently with the filing of this Motion to Convert, Second Avenue has filed its objection to the Motion to Reconsider.

13. On September 25, 2019 (the "September 25 Hearing") the Court held a hearing on various motions, including the Debtor's motion to employ SierraContellation Partners, LLC ("SCP"), to which the U.S. Trustee has objected. The Court continued the hearing on SCP's retention application to a hearing scheduled for October 2, 2019 (the "October 2 Hearing") but indicated that it would be unwilling to grant that application absent a settlement with the U.S. Trustee and Committee that would result in SCP disgorging some or all of the alleged preferential transfer it received prior to the Petition Date. To Second Avenue's knowledge, as of the filing of this Motion to Convert, SCP has not resolved the dispute. Accordingly, it is likely that the Court will sustain the U.S. Trustee's objection and the Debtor will no longer have the benefit of a financial advisor.

14. Also at the September 25 Hearing, the Court held a status conference on the Committee's Motion to Reconsider. That motion was continued to the October 2 Hearing because Mr. Won is currently unavailable due to a medical emergency. The Committee advised the Court that Mr. Won is a critical and necessary witness for the Motion to Reconsider.

15. On September 30, 2019, without any objection by Second Avenue, the Committee requested that the Court again continue the hearing on its Motion to Reconsider because Mr. Won remains medically unavailable. As of the filing of this Motion to Convert, the Debtor's professionals cannot say if or when Mr. Won will be able to resume his corporate duties.

5

**Argument**

I. **There Are Multiple Bases Upon Which This Court Should Grant The Motion To Convert.**

   A. **Legal Standard for Conversion.**

16. Section 1112(b) of the Bankruptcy Code provides that, upon request of a party in interest, and after a notice and a hearing, the "Court *shall* convert a case to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. 1112(b) (emphasis supplied). The Bankruptcy Code does not define "cause", "but § 1112(b)(4) provides a non-exhaustive list of examples of 'cause' that would support dismissal or conversion. When determining 'cause,' the Court must also consider the totality of the circumstances." *In re Baribeau*, Case No. 19-51357-cag, 2019 Bankr. LEXIS 2666, at *7 (Bankr. W.D. Tex. Aug. 20, 2019).

17. Second Avenue submits that, when "consider[ing] the totality of the circumstances," the practical reasons to convert the Case to one under chapter 7 seem readily apparent. Furthermore, there are sixteen (16) enumerated examples of "cause" in the non-exhaustive list set forth in Section 1112(b)(4). *See In re TMT Procurement Corp.*, 534 B.R. 912, 917 (Bankr. S.D. Tex. 2015) ("Section 1112(b)(4) contains a nonexhaustive list of examples of cause meriting conversion or dismissal."). There are a number of specific, statutory examples enumerated in that non-exhaustive list that show conversion is appropriate here, including, among others: (i) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation (11 U.S.C. § 1112(b)(4)(A)); (ii) gross mismanagement of the estate (11 U.S.C. § 1112(b)(4)(B)); (iii) failure to comply with an Order of the Court (11 U.S.C. § 1112(b)(4)(E)); and (iv) failure to timely pay taxes owed after the Petition Date (11 U.S.C. § 1112(b)(4)(I)).

18. Once the movant establishes "cause," "then conversion or dismissal is mandatory *unless* [an objecting party] can meet its burden to establish the exception to conversion or dismissal provided in § 1112(b)(2)." *Id.* (emphasis in original). To avoid mandatory conversion or dismissal, an objecting party must (a) identify "unusual circumstances establishing that converting or dismissing the case is not in the best interest of creditors or the estate" *and* (b) "prove *all* of the following: '(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the "cause" for dismissal or conversion is something other than a continuing loss or diminution of the estate under § 1112(b)(4)(A); (3) there is reasonable justification or excuse for a debtor's act or omission; and (4) the act or omission will be cured within a reasonable time.'" *Baribeau*, 2019 Bankr. LEXIS 2666, at *7-8 (emphasis in original) (citation omitted). Alternatively, conversion is not required if "the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1102(b)(1).

**B. Bases for Conversion of the Debtor's Case.**

19. ***Continuing Diminution of the Estate and Absence of Likelihood of Rehabilitation (11 U.S.C. § 1112(b)(4)(A)).*** As the Court is aware, nearly every actively-involved party in interest has, at some point in the various proceedings in this Case, raised the specter of administrative insolvency. The Debtor conceded that fact at the September 25 Hearing. The Debtor even advised the Court at the first-day hearing that it believed conversion or dismissal would be warranted after the inventory liquidation sales concluded (which they now have). Section 1112(b)(4)(A) involves a two-party inquiry. "First, there must be a substantial or continuing loss to the estate; and second, there must be no likelihood of rehabilitation." *In re Israel Sand, LLC*, 569 B.R. 433, 440 (Bankr. S.D. Tex. 2017). Looking to the first inquiry,

7

"negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b)." *Id.* (citation and quotations omitted). The Approved Budget attached to the Final DIP Order shows negative net cash flow for the "Post Sale" period. This determination was made before the Debtor learned of additional administrative expenses that it has and will incur, further exacerbating the Debtor's cash flow troubles. As for the second inquiry, "[r]ehabilitation means to reestablish a business." *Id.* at 441. The Debtor has liquidated its inventory and is in the process of selling its intellectual property and liquidating all remaining assets. It does not seek in any way to reestablish its business. Given the projected (and unknown) administrative expenses that the estate continues to incur, along with the Debtor's own admission that there is no likelihood of rehabilitation, "cause" exists under Section 1112(b)(4)(A) for conversion.

20. ***Gross Mismanagement of the Estate (11 U.S.C. § 1112(b)(4)(B)).*** The Debtor's management has failed to properly administer the bankruptcy estate to the detriment of its creditors. *See In re Briggs-Cockerham, L.L.C.*, 2010 Bankr. LEXIS 4132, at *14 (Bankr. N.D. Tex. Nov. 23, 2010) ("§ 1112(b)(4)(B) focuses on the management of the estate and not on the debtor. The inquiry cannot include mismanagement of the debtor prior to the bankruptcy filing.") (citation and quotations omitted). The Final DIP Order was entered by this Court approximately three (3) weeks ago. Shortly thereafter, Second Avenue funded the Final Funding Obligations in satisfaction of its obligations under the Final DIP Order. Despite those amounts having been funded, Mr. Won, as the principal, CEO, and sole shareholder of the Debtor, has refused to authorize the payment of amounts owed to employees, landlords, and taxing authorities. The Debtor likewise has failed to establish an escrow account into which certain post-petition sales taxes could be deposited pursuant to the requirements of the Final DIP Order. These examples of the Debtor's gross mismanagement have led to motion practice and mounting

8

pressure on the Debtor's professionals to rectify the inaction and misconduct of the Debtor's management. And, although Second Avenue does not seek to exonerate itself through this motion, it does respectfully submit that many of the allegations leveled against it by the Committee through its Motion to Reconsider are the direct result of Mr. Won's misrepresentations to the Committee about Second Avenue's pre- and post-petition conduct. Those allegations, which Second Avenue looks forward to rebutting at the appropriate time, have caused the estate to incur substantial and unnecessary administrative costs. Even if Mr. Won had not become unavailable to perform his corporate duties due to a medical emergency, cause would exist to convert the Case on account of gross mismanagement. However, considering that the Debtor's professionals are unable to determine if and when Mr. Won will be able to return to his corporate duties, a chapter 7 trustee appears to be the only viable option for addressing and attempting to remedy these examples of gross mismanagement.

21. ***Failure to Comply with an Order of the Court (11 U.S.C. § 1112(b)(4)(E))***. The Debtor has failed to comply with a number of its obligations under various Orders issued by this Court. "This Section gives effect to the notion that compliance with court orders is a fundamental obligation of any party, and a debtor's failure to comply with a court order is a troubling matter indeed. . . . Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud." *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011). Looking solely to the Final DIP Order, the Debtor has failed to (i) comply and timely update the Approved Budget and to "use all proceeds received by the Debtor, from the sale of inventory or otherwise, in compliance with the terms of the Approved Budget" (¶¶ 10, 17) and (ii) establish and fund escrow accounts with certain post-petition sales taxes (¶ 51(b)). Regardless of whether the Debtor's non-compliance is "willful, or the product of bad faith or

9

fraud," such failure is irrefutable and constitutes "cause" for conversion.

22. ***Failure to Pay Taxes (11 U.S.C. § 1112(b)(4)(I))***. The Debtor has failed to pay post-petition sales taxes when they came due. *See Texas Comptroller of Public Accounts' Motion for Appointment of Trustee Pursuant to 11 U.S.C. § 1104(a)(1) and (2) or, in the Alternative, Motion to Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Docket No. 202] (the "<u>Motion to Appoint a Trustee</u>"), at ¶ 4 ("Debtor has collected post-petition trust fund sales taxes but has failed to remit them."). "Debtor's failure to pay postpetition taxes is a specifically enumerated example of cause for dismissal or conversion. Thus, the court must convert or dismiss unless the court determines that appointment of a trustee or examiner is in the best interests of creditors and the estate, or unless Section 1112(b)(2) applies." *In re Manda Ann Convalescent Home, Inc.*, Case No. 11-37950-H3-11, 2012 Bankr. LEXIS 3342, at *7 (Bankr. S.D. Tex. Jul. 20, 2012).

23. ***Totality of the Circumstances***. "When determining 'cause,' the Court must also consider the totality of the circumstances." *Baribeau*, 2019 Bankr. LEXIS 2666, at *7. Second Avenue respectfully submits that the totality of the circumstances warrant immediate conversion. There are multiple statutory bases for conversion and, as discussed more fully below, no viable exception to the requirement that such conversion be mandatory. Furthermore, as a practical matter, the Debtor's sole decision maker, Mr. Won, who is responsible for many if not all of the statutory bases for conversion, is medically unavailable to perform his corporate duties. And absent a resolution of the U.S. Trustee's objection to the retention of SCP, the Debtor may soon lose its financial advisors and have only its legal counsel to run this Case. Were the Debtor to have a viable business capable of reorganizing, the appointment of a chapter 11 trustee may be warranted. That is not the case. Therefore, Second Avenue respectfully submits that the totality

10

of the circumstances warrant the immediate conversion of this Case and appointment of a chapter 7 trustee.

## II. Appointment of a Trustee or Examiner is Not in the Best Interests of Creditors and the Estate, and the Exception to Mandatory Conversion or Dismissal Set Forth in Section 1112(b)(2) of the Bankruptcy Code Does Not Apply.

24. "[T]he court must convert or dismiss unless the court determines that appointment of a trustee or examiner is in the best interests of creditors and the estate, or unless Section 1112(b)(2) applies." *Manda Ann Convalescent Home*, 2012 Bankr. LEXIS 3342, at *7. Second Avenue respectfully submits that neither exception to mandatory conversion exists. Thus, the Case should be converted to a case under chapter 7.

25. Second Avenue shares in the concerns raised by the Comptroller through its Motion to Appoint a Trustee, including the "dishonest conduct" committed by management. Motion to Appoint a Trustee, at ¶ 8. However, Second Avenue respectfully submits that the reality of the Debtor's financial affairs and this Case warrant the alternative relief sought by the Comptroller – conversion.

> [T]o appoint a chapter 11 trustee under § 1104(a)(2), courts look to the practical realities and necessities of the case. It is not appropriate where, as here, there is no possibility of the case concluding as a chapter 11 case. Here, given the administrative insolvency of the Debtor, continuing losses to the estate, and impossibility of confirming even a liquidating plan . . . there is no practical reality that a trustee is needed. The appointment of a chapter 11 trustee would only serve to increase the administrative expenses of this already administratively insolvent case, and would not be in the interests of creditors.

*In re Acme Cake Co.*, 495 B.R. 212, 223 (Bankr. E.D.N.Y.) (internal citations and quotations removed).

26. The "practical reality" here is that the Debtor has made clear that its estate is administratively insolvent and "there is no possibility of the case concluding as a chapter 11 case." *Id.* Indeed, the Committee stated at the September 25 Hearing that its concern is not

11

whether, but when, the Case will convert. Appointing a chapter 11 trustee in this Case would only add to the mounting administrative expenses in this Case, which would fail to benefit even administrative claimants. A chapter 7 trustee would neutralize much of the mismanagement that prompted the Comptroller's request for appointment of a chapter 11 trustee. That individual could also continue the process of liquidating the Debtor's remaining assets, as well as investigate and pursue any avoidance actions or, indeed, any claims against Second Avenue that a trustee deems to have merit.[3] Second Avenue therefore submits that appointment of a chapter 11 trustee is not in the best interests of creditors and the estate.

27. The second exception to mandatory conversion is likewise unavailable. Under Section 1112(b)(2), any objecting party must first identify "unusual circumstances" that militate against conversion. "The Code does not define 'unusual circumstances,' but the phrase contemplates conditions that are not common in most chapter 11 cases." *Baribeau*, 2019 Bankr. LEXIS 2666, at *7 n.7 (citation and quotations omitted). Second Avenue submits that there are no "unusual circumstances" that would warrant denying or delaying conversion; this Case is just an unfortunate example of the Debtor's management impeding an orderly liquidation of the Debtor's assets.

---

[3] The Committee's stated concern for delaying conversion is that its Motion to Reconsider remains pending, and the Challenge Period has not yet lapsed. Second Avenue respectfully submits that these concerns can be addressed even if the Court grants its Motion to Convert and, in any event, do not constitute bases for denying or delaying mandatory conversion. With respect to the Motion to Reconsider, Second Avenue believes the Committee is not entitled to the relief requested therein for the reasons stated in Second Avenue's objection to that motion. However, there is no reason to believe that if such relief is, in fact, warranted, the chapter 7 trustee would not pursue it. If the Court is inclined to grant the Motion to Convert, Second Avenue is willing to stipulate to hold the Motion to Reconsider in abeyance to provide the chapter 7 trustee with a reasonable amount of time to determine whether to prosecute that motion. Furthermore, the Challenge Period Termination Date is currently scheduled to occur on October 31, 2019 but can be extended by consent of Second Avenue or upon Court Order. To the extent the Court is inclined to grant the Motion to Convert, Second Avenue will work with the newly-appointed chapter 7 trustee to provide the chapter 7 trustee with the opportunity to complete its investigation.

28. Furthermore, "Section 1112(b)(2) is phrased in the conjunctive, such that . . . there must be not only a reasonable likelihood of confirmation of a plan, but also a reasonable justification for the failure of Debtor to pay postpetition taxes [and justification for the other bases for conversion] that will be cured within a reasonable period of time." *Manda Ann Convalescent Home*, 2012 Bankr. LEXIS 3342, at *7. Second Avenue does not think any party believes, let alone has alleged, that there is a "reasonable likelihood of confirmation of a plan" or any reasonable justification for the Debtor's mismanagement, failure to follow the requirements of this Court's Orders, or failure to pay post-petition sales taxes. Second Avenue understands that those sales taxes should be paid through the liquidation of the Debtor's remaining assets, including the recovery of insurance proceeds and sale of the Debtor's intellectual property, but there is no assurance as to the timing of such payment. And there is no reason to continue the administrative burn of this Case while the parties pursue remaining proceeds. A chapter 7 trustee will limit the burn and be the best fiduciary to bring this Case to a swift and just conclusion.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the foregoing reasons, Second Avenue respectfully requests that the Court grant the Motion to Convert and such other relief as the Court deems appropriate under the circumstances.

Dated: October 1, 2019
      San Antonio, Texas

/s/ *J. Scott Rose*
J. Scott Rose (TX Bar No. 17252800)
Jennifer F. Wertz (TX Bar No. 24072822)
**JACKSON WALKER LLP**
112 East Pecan Street
Suite 2400
San Antonio, Texas 78205
Telephone:   (210) 978-7760

-and-

John F. Ventola (admitted *pro hac vice*)
Jonathan D. Marshall (admitted *pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, Massachusetts 02110
Telephone:   (617) 248-5000

*Counsel for Second Avenue Capital Partners, LLC*

# CERTIFICATE OF SERVICE

    I certify that on the 1st day of October 2019, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Western District of Texas upon all parties registered or otherwise requesting electronic notice in this case, and via regular first-class U.S. mail upon the parties listed below.

**Debtor**
A'GACI, LLC
4958 Stout Drive, Suite 113
San Antonio, TX 78219

**Counsel for Debtor**
Eric Terry
ERIC TERRY LAW, PLLC
3511 Broadway
San Antonio, TX 78209

**Counsel for Official Committee of Unsecured Creditors**
Shelly A. DeRousse
Freeborn & Peters LLP
3111 South Wacker Drive, Suite 3000
Chicago, Illinois 60606

**U.S. Trustee's Office**
US TRUSTEE OFFICE
PO Box 1539
San Antonio, TX 78295

                                            /s/ *J. Scott Rose*
                                            J. Scott Rose